1   MATTHEW D. POWERS (S.B. #212682)
    mpowers@omm.com
2   SARAH H. TRELA (S.B. #293089)
    strela@omm.com
3   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
4   San Francisco, CA  94111-3823
    Telephone:     (415) 984-8700
5   Facsimile:     (415) 984-8701

6   SUSAN ROEDER (S.B. #160897)
    sroeder@omm.com
7   O'MELVENY & MYERS LLP
    2765 Sand Hill Road
8   Menlo Park, CA  94025
    Telephone:     (650) 473-2600
9   Facsimile:     (650) 473-2601

10  Attorneys for Defendant
    APPLE INC.

11

12                   UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                         SAN JOSE DIVISION

15  PAUL ORSHAN and CHRISTOPHER          Case No.  5:14-CV-05659-EJD
    ENDARA, individually, and on behalf of
16  all others similarly situated,        **DEFENDANT APPLE INC.'S MOTION TO
                                          DISMISS CLASS ACTION COMPLAINT;**
17                    Plaintiffs,          **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT THEREOF**
18        v.

19  APPLE INC.,

20                    Defendant.          Hearing Date:   May 28, 2015
                                          Time:           9:00 a.m.
21                                        Judge:          Edward J. Davila
                                          Courtroom:      4, 5th Floor
22
                                          Complaint Filed:  December 30, 2014
23                                        Trial Date:       None set

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE THAT on May 28, 2015, at 9:00 a.m. or as soon thereafter as

4 the matter may be heard, in the United States District Court, Northern District of California,

5 San Jose Courthouse, located at 280 South 1st Street, Courtroom 4, before the Honorable Edward

6 J. Davila, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an order

7 dismissing all of the claims in Plaintiffs' Class Action Complaint (the "Complaint") pursuant to

8 Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

9      Specifically, Apple seeks an order:  (1) dismissing the entire Complaint because Plaintiffs

10 fail to identify any actionable misstatements or omissions; (2) dismissing the entire Complaint

11 because Plaintiffs fail to meet the heightened pleading standards of Rule 9(b); (3) dismissing

12 Plaintiffs' cause of action under the California Consumer Legal Remedies Act for failure to state

13 a claim; and (4) dismissing Plaintiffs' claims to the extent that they encompass products not

14 purchased by the Plaintiffs.  Apple respectfully requests that the Court dismiss the Complaint

15 with prejudice.

16      This Motion is based on this Notice of Motion and Motion, the accompanying

17 Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the

18 papers and records on file in this action, and such other written and oral argument as may be

19 presented to the Court.

20      Dated:  March 25, 2015

O'MELVENY & MYERS LLP
21                                                          MATTHEW D. POWERS

22                                                          By: /s/ Matthew D. Powers
                                                                  Matthew D. Powers
23                                                          Attorneys for Defendant
                                                           APPLE INC.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND FACTS .............................................................................................. 3

III.    LEGAL STANDARDS................................................................................................. 6

IV.     PLAINTIFFS FAIL TO PLEAD THE NECESSARY ELEMENTS OF THEIR
        FRAUD-BASED CLAIMS........................................................................................... 7

        A.      Plaintiffs Never Identify Any "False" Statements ................................... 7

        B.      No Actionable Omission ........................................................................... 8

V.      PLAINTIFFS FAIL TO PLEAD THEIR FRAUD-BASED CLAIMS WITH
        PARTICULARITY ..................................................................................................... 10

VI.     SOFTWARE IS NOT COVERED BY THE CLRA...................................................... 12

VII.    PLAINTIFFS CANNOT SUE OVER PRODUCTS THEY NEVER BOUGHT............. 12

VIII.   CONCLUSION ........................................................................................................... 15

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................ 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 6, 8

*Backhaut v. Apple, Inc.*,
  2014 U.S. Dist. LEXIS 162870, (N.D. Cal. Nov. 19, 2014) ................................. 13

*Balistreri v. Pacifica*,
  901 F.2d 696 (9th Cir. 1988) ................................................................................. 6

*Baltazar v. Apple, Inc.*,
  2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ..................................................... 8, 9

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) .............................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 6

*Berenblat v. Apple, Inc.*,
  2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) ....................................... 8

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................................................................... 13

*Bond v. United States*,
  131 S. Ct. 2355 (2011) ......................................................................................... 13

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................. 10

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ........................................................ 13

*Contreras v. Johnson & Johnson Consumer Companies, Inc.*,
  2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012) .................................. 14

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 82 (2006) .................................................................................. 8

*Donohue v. Apple Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................. 15

*Ferrington v. McAfee, Inc.*,
  2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) ..................................... 12

*Hairston v. S. Beach Beverage Co.*,
  2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................................................... 14

*Hoey v. Sony Elecs., Inc.*,
  515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................................................. 9

*In re Actimmune Mktg. Litig.*,
  2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir.
  2011) ........................................................................................................................ 7

1

**TABLE OF AUTHORITIES**
*(continued)*

2

**Page(s)**

3

*In re Tobacco II,*
46 Cal. 4th 298 (2009) ........................................................................... 7, 8

4

*Ivie v. Kraft Foods Global, Inc.,*
2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................................... 14

5

6

*Johns v. Bayer Corp.,*
2010 WL 476688 (S.D. Cal. Feb 9, 2010) ...................................... 8, 13, 14

7

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ............................................. 6, 8, 10, 11

8

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) ....................................................................... 7, 13

9

10

*Lanovaz v. Twinings N. Am., Inc.,*
2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ............................................. 8

11

*Larsen v. Trader Joe's Co.,*
2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................... 13, 14

12

*Laster v. T-Mobile,*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................... 8

13

*Lazebnik v. Apple, Inc.,*
2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ........................................ 12

14

*Low v. LinkedIn,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................... 8

15

16

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................... 12

17

*Marolda v. Symantec,*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................... 11

18

*McCrary v. Elations Co.,*
2013 WL 6403073 (C.D. Cal. July 12, 2013) ............................................ 8

19

20

*McGlinchy v. Shell,*
845 F.2d 802 (9th Cir. 1988) .................................................................... 6

21

*McMahon v. Take-Two Interactive,*
2014 WL 324008 (C.D. Cal. Jan. 29, 2014) ........................................... 12

22

*Meaunrit v. Pinnacle Foods Group, LLC,*
2010 WL 1838715 (N.D. Cal. May 5, 2010) ........................................... 13

23

*Mlejnecky v. Olympus Imaging America Inc.,*
2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) .......................................... 13

24

*Morgan v. Wallaby Yogurt Co.,*
2014 U.S. Dist. LEXIS 34548 (N.D. Cal. Mar. 13, 2014) ....................... 14

25

*Moss v. U.S.,*
572 F.3d 962 (9th Cir. 2009) .................................................................... 6

26

*O'Shea v. Epson Am., Inc.,*
2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011) ........................... 9

27

28

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Oregon v. Legal Servs. Corp.*,
   552 F.3d 965 (9th Cir. 2009) .................................................................................. 13

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
   2010 U.S. Dist. LEXIS 13908 (N.D. Ill. Feb. 8, 2010), *aff'd*, 631 F.3d 436 (7th
   Cir. 2011) .................................................................................................................. 11

*Princess Cruise v. Superior Court*,
   179 Cal. App. 4th 36 (2009) ...................................................................................... 8

*Rice v. Sunbeam Prods. Inc.*,
   2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7, 2013) .............................................. 9

*Shaw v. Hahn*,
   56 F.3d 1128 (9th Cir. 1995).................................................................................... 6

*Snyder v. Ford Motor Co.*,
   2006 U.S. Dist. LEXIS 63646 (N.D. Cal. Aug. 24, 2006)...................................... 11

*Stephenson v. Neutrogena Corp.*,
   2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) ...................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 6, 10, 11

*Wang v. OCZ Technology Group, Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011)............................................................................ 14

*Williamson v. Apple, Inc.*,
   2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ........................................................... 9

*Wofford v. Apple Inc.*,
   2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 8, 2011) ...................................... 12

**STATUTES AND RULES**

28 U.S.C. § 2072(b) ....................................................................................................... 15

Fed. R. Civ. P. 12(b)(6)......................................................................................... 6, 14

Fed. R. Civ. P. 23 .......................................................................................................... 15

Fed. R. Civ. P. 8(a).................................................................................................... 11

Fed. R. Civ. P. 9(b) ............................................................................................ 6, 10, 11

**OTHER**

Nick Bilton, "Apple Reveals iCloud Details and Pricing," *The New York Times*,
   Aug. 1, 2011................................................................................................................ 5

1    **I.      INTRODUCTION**

2         All of the claims in the Class Action Complaint ("Compl.") should be rejected as a matter

3    of law.  Plaintiffs have failed to allege the facts necessary to support key elements of their claim

4    that they were "misled" about the "size" of Apple's iOS 8 mobile operating system, and they have

5    omitted other critical (and judicially noticeable) facts that are fatal to their claims of "fraud."

6    Plaintiffs' claims should be dismissed with prejudice.

7         Here, Plaintiffs contend that it was "misleading" for Apple to advertise certain of its

8    mobile devices as having 8 GB or 16 GB of storage capacity.  But there is no dispute that Apple's

9    products do, in fact, have 8 GB or 16 GB of storage capacity, exactly as advertised.  Nor do

10   Plaintiffs allege that they expected to be able to use 100% of that capacity to store their personal

11   data.  Like all software ever written, Apple's iOS mobile operating system—which enables the

12   device to function—uses a portion of a device's resources, including its storage capacity.  This is

13   not unique to Apple's products.  Every other smart phone, tablet, or computer in existence today

14   also requires an operating system and other pre-installed software in order to provide the features

15   that customers use on such devices (email, games, playing music and videos, surfing the internet,

16   etc.).  Plaintiffs do not contend that they were unaware that iOS 8 would use at least *some* portion

17   of devices' storage capacity—and under the circumstances, they could not possibly make such an

18   allegation in good faith.  Instead, Plaintiffs contend that Apple's iOS 8 operating system was

19   "large[r]" than they "expect[ed]" it would be,[1] and that they could not have "reasonably

20   anticipate[d]" that iOS 8 would require "between 600 MB and 1.3 GB" of additional storage

21   space compared to an earlier version of iOS (iOS 7).[2]  Plaintiffs also contend that the "size" of

22   iOS 8 was part of some sort of scheme to "sell" customers additional storage space on Apple's

23   iCloud cloud storage service.[3]

24        These claims suffer from at least two fundamental flaws.  ***First***, Plaintiffs never come

25   close to identifying any facts to support their assertion that they "expected" that iOS 8 would

---

26   [1] *E.g.*, Compl. ¶ 1 ("iOS 8 uses an unexpectedly large percentage of the storage capacity …").

27   [2] *See* Compl. ¶ 26.

28   [3] *See* Compl. ¶ 30.

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1    require less than 0.6–1.3 GB of additional storage space compared to iOS 7.[4]  (Compl. ¶ 26.)

2    Plaintiffs never identify a single statement, by Apple or anyone else, that could support any

3    "expectation" about the relative sizes of iOS 8 and iOS 7—much less allege that they personally

4    saw such a statement and relied on it when they bought (or upgraded) their Apple devices.  If

5    Plaintiffs had some basis to believe that iOS 8 (which added numerous new features, including

6    Family Sharing, iCloud Drive, Continuity, Handoff and more) would *not* be 0.6–1.3 GB larger

7    than iOS 7, they should plead those facts.  They have not and cannot.

8         ***Second***, Plaintiffs neglect to mention that the monthly prices they quote for Apple's

9    iCloud storage service ("$0.99 to $29.99 *per month*") only apply to *upgraded* iCloud service

10   options.  In fact, iCloud provides a full 5.0 GB of storage to every Apple customer free of

11   charge—customers only pay if they want to store more than 5.0 GB.  (Request for Judicial Notice

12   ("RJN") Ex. G.)  Thus, Apple's free iCloud service already gives Plaintiffs (and everyone else)

13   more storage capacity than they contend was ever "used" by iOS 8.

14        In short, Plaintiffs have sued Apple for "fraud" because, they allege, they somehow

15   believed—based on some statement or information that Plaintiffs never identify, much less saw or

16   relied on—that iOS 8 would consume less than 0.6–1.3 GB more storage than iOS 7.  (*See*

17   Compl. ¶ 26.)  Yet they never identify a single fact—as opposed to conclusory boilerplate—to

18   support that allegation.  As the articles Plaintiffs cite in their Complaint make clear, information

19   about iOS 8 and the available storage space on Apple's devices was widely available.  And in

20   fact, as discussed below, the pre-installed software on Apple's devices (including iOS 8) uses far

21   *less* space than the software that comes pre-loaded on many of its competitors' devices.  In any

22   event, Apple already offers every user 5 GB of iCloud storage for free.  Thus, consumers who

23   bought an 8 or 16 GB device were actually provided with *more* than 8 or 16 GB to store their

24   personal data.

25

26   [4] Here, Plaintiffs do not clearly articulate how much total storage capacity they contend iOS 8
     requires, much less their supposed "expectations" about the size of iOS 8.  Plaintiffs contend that
27   the total "Capacity Unavailable to User" for various devices is as much as 3.7 GB.  (Compl.
     ¶ 23.)  For purposes of this motion, Apple assumes but does not admit the truth of Plaintiffs'
28   allegations regarding the "size" of iOS 8.

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1    Accordingly, all of Plaintiffs' claims—under California's Unfair Competition Law

2    ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA")—

3    should be dismissed with prejudice.  To the extent that Plaintiffs allege "misrepresentation"

4    claims, they never identify any particular false or misleading statements by Apple, nor do they

5    allege that they relied on any particular statements.  Plaintiffs' "omission" claims also fail

6    because Apple had no duty to disclose what Plaintiffs already knew: that iOS 8 would use some

7    portion of the storage capacity of their Apple devices.  And because Plaintiffs' allegations focus

8    on the iOS 8 software, their CLRA claim also fails because software is not a "good or service"

9    within the meaning of that statute.  Finally, Plaintiffs' allegations should be dismissed to the

10   extent they seek to pursue claims over products these Plaintiffs never bought.  Apple respectfully

11   requests that the Court dismiss the entire Complaint with prejudice.

12   **II.   BACKGROUND FACTS**

13   In the Complaint, Plaintiffs contend that Apple falsely advertises the amount of available

14   storage on its 8 GB and 16 GB mobile devices that run iOS 8, and that it does so in order to force

15   consumers to pay for additional storage space from Apple's iCloud service.  (*See* Compl. ¶¶ 2–3.)

16   But Plaintiffs do not contend that Apple's statements about the devices' storage capacities are

17   wrong—they appear to acknowledge (as they must) that the devices do, in fact, offer 8 GB or 16

18   GB of storage.  Instead, they assert that Apple "fails to disclose to consumers that as much as

19   23.1% of the advertised storage capacity of" 8 GB or 16 GB iPhones, iPads and iPods "will be

20   consumed by iOS 8 and unavailable for consumers when consumers purchase Devices that have

21   iOS 8 installed."  (*Id.* ¶ 2.)  Notably, Plaintiffs—who allegedly purchased various 16 GB iPhones

22   and iPads—never claim they have *personally* reached or approached the storage capacity of their

23   Devices.  Nor does either Plaintiff claim to have purchased iCloud storage, although they further

24   contend that "Apple exploits the discrepancy between represented and available capacity" by

25   "offering the purchaser the opportunity to purchase 'iCloud' cloud storage," for which Apple

26   allegedly "charges prices ranging from $0.99 to $29.99 *per month.*"  (*Id.* ¶ 30 (emphasis

27   original).)

28

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1    Plaintiffs also do not claim to have been unaware that the pre-installed software on their

2    devices (including the iOS operating system software) would use a portion of the devices' storage

3    capacity.  Nor do they contend that they were ever told (much less that they actually believed)

4    that they would be able to use 100% of the storage capacity of their devices to store personal data.

5    Indeed, they tacitly concede that consumers understand that the operating system on a device will

6    consume at least some system resources: Plaintiffs do not contend, for example, that Apple's sale

7    of devices with iOS 7—which also consumes storage space—was "fraudulent" or improper in any

8    way.[5]

9    Instead, Plaintiffs allege that iOS 8 uses "600 MB to 1.3 GB *more* storage than iOS 7 and

10   that this difference is more than "consumer[s] … anticipate[d]."  (Compl. ¶ 26; *see also, e.g.*, *id*. ¶

11   1 ("iOS 8 uses an unexpectedly large percentage of the storage capacity on 8 GB and 16 GB

12   iPhones, iPads, and iPods … .").)  But Plaintiffs never allege any facts to explain the basis of their

13   supposed "expectation" that the gap between iOS 7 and iOS 8 would be smaller.  They never

14   identify any representations from Apple about the relative sizes of iOS 7 and iOS 8, and certainly

15   never identify any statements to that effect that Plaintiffs personally saw or relied on.

16   Indeed, the few specific facts pled in the Complaint suggest precisely the opposite: that no

17   reasonable consumer could have possibly "expected" that iOS 8 would consume **less** than it

18   actually does.  The same articles Plaintiffs cite in their Complaint show that the available storage

19   capacities of many of Apple's devices were widely discussed on technology blogs and in the

20   press.[6]  Information about the storage requirements of Apple's pre-installed software was widely

21   available from many other sources as well.[7]  Indeed, as one of the articles Plaintiffs cite

---

[5] Plaintiffs also have not sued over mobile devices with larger storage capacities; their claims are limited to devices with only 8 or 16 GB of storage.

[6] *E.g.*, Compl. ¶ 24 (citing www.macworld.co.uk article that states: "a 16GB iPhone 5s offers 12.2GB of true capacity, and a 16GB iPhone 5c allows 12.6GB" and www.mcehlearn.com article that states: "those '16 GB' or the iPad mini are nothing of the kind.  The real capacity of the iPad is less than 13 GB.").

[7] *See also* RJN Ex. A, http://www.pcadvisor.co.uk/buying-advice/apple/3343192/new-ipad-is-16gb-enough-storage ("It's also important to remember that before you begin filling up your iPad, the operating system and related files will consume a certain amount of storage capacity.  Expect to find around 14GB of usable storage for your files on a 16GB iPad, for example."); Ex. B, http://store.apple.com/us/question/answers/iphone/how-much-space-is-initially-available-for-storage-on-16gb-iphone-6/QDUYDHYKJCUXKPUDF ("The formatted capacity of a 16GB

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

explained, "Apple's smartphones are actually among the most frugal in using up storage with initial installs … ." (*Id.* ¶ 24 (citing article from www.macworld.co.uk).)[8]  In other words, iOS devices often offer more available storage space than competitors' devices.

Next, for all their rhetoric about Apple's alleged "omissions," it is Plaintiffs who have avoided discussing a number of critical (and judicially noticeable) facts that are fatal to their claims.  For example, Plaintiffs contend that Apple charges "from $0.99 to $29.99 per month" for iCloud storage.  (*Id.* ¶ 30.)  But they fail to disclose that those prices only apply to *upgraded* iCloud services; since iCloud was introduced in 2011, Apple has offered the first 5 GB of iCloud storage to all users for free.[9]  And while Plaintiffs speculate that it "appear[s]" Apple blocks "access [to] cloud storage [services] from other vendors" (*id.*), a quick trip to Apple's online App Store shows that Plaintiffs' conjecture is false—many popular cloud storage services are freely available to iOS 8 users.[10]

Thus, Plaintiffs' position is that Apple committed "fraud" because iOS 8 used 0.6–1.3 GB more storage space than iOS 7 (*id.* ¶ 26), even though (1) Plaintiffs never explain why they "expected" iOS 8 to use less than that amount of storage, and (2) Apple gives all users 5 GB of iCloud storage space for free.  Nevertheless, based on those allegations, Plaintiffs assert claims under California's UCL, FAL, and CLRA, and seek certification of four nationwide classes under those California statutes, including (a) "Upgrade" classes covering all U.S. consumers who

---

iPhone is usually roughly 13GB.").

[8] *See also, e.g.*, RJN Exs. C-F, http://www.phonearena.com/news/16GB-Samsung-Galaxy-S5-actually-offers-10.7GB-of-usable-storage_id53383 (16 GB model of the Samsung Galaxy S5 has about 10.7 GB of usable space); http://www.gottabemobile.com/2014/10/12/5-tips-for-moto-x-2014-buyers/ (16GB Moto X has about 10GB of usable space); http://www.fonearena.com/blog/109524/lg-g3-review-ambitiously-regressive.html (16GB model of the LG G3 has about 11GB of usable space); http://blogs.which.co.uk/technology/phones-3/phone-storage-compared-samsung-s4-still-in-last-place ("Apple's more affordable (relatively) iPhone, the 5c, is the most generous of the 16GB phones we're recently tested, giving you 12.6GB of memory (79%) to play with.").

[9] RJN Exs. G-H, http://www.apple.com/icloud (pricing plans); Nick Bilton, "Apple Reveals iCloud Details and Pricing," *The New York Times*, Aug. 1, 2011 ("Apple said that customers would be given 5 gigabytes of storage for free.")  (available at http://gadgetwise.blogs.nytimes.com/2011/08/01/apple-reveals-icloud-details-and-pricing).

[10] RJN Exs. I-J, https://itunes.apple.com/us/app/dropbox/id327630330?mt=8 (Dropbox application); https://itunes.apple.com/us/app/google-drive-free-online-storage/id507874739?mt=8 (Google Drive application).

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1   bought 8/16 GB mobile devices that were originally sold with an earlier iOS version (and then

2   upgraded to iOS 8), as well as (b) "iOS 8 Purchaser" classes, which cover U.S. consumers who

3   bought 8/16 GB devices "with iOS 8 pre-installed … ."  (*Id.* ¶ 35.)

4   **III.   LEGAL STANDARDS**

5          Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where there is

6   either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

7   cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

8   And while the Court must accept well-pled facts as true, "conclusory allegations without more are

9   insufficient to defeat a motion to dismiss…." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810

10  (9th Cir. 1988).  Accordingly, the Court should not assume the truth of legal conclusions merely

11  because they are pled in the form of factual allegations, nor accept as true allegations contradicted

12  by judicially noticeable facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Shaw v. Hahn*, 56

13  F.3d 1128, 1129 n.1 (9th Cir. 1995).  As the Supreme Court has cautioned, "plaintiff's obligation

14  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

15  and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.

16  Twombly*, 550 U.S. 544, 555 (2007).  Instead, "for a complaint to survive a motion to dismiss, the

17  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

18  suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962,

19  969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

20         Next, fraud-based UCL, FAL, and CLRA claims must also meet the heightened pleading

21  standard of Rule 9(b), which requires Plaintiffs to "state with particularity the circumstances

22  constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Rule 9(b) standard applies with equal

23  force to allegations of fraud by omission. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27

24  (9th Cir. 2009).  Under Rule 9(b), Plaintiffs must plead the time, place, and content of the alleged

25  fraudulent representation or omission—"the who, what, when, where, and how"—as well as facts

26  demonstrating their reliance on the allegedly fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*,

27  317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *Kearns*, 567 F.3d at 1124.

28

## IV.   PLAINTIFFS FAIL TO PLEAD THE NECESSARY ELEMENTS OF THEIR FRAUD-BASED CLAIMS

Here, none of the affirmative statements Plaintiffs do describe (albeit in general terms) were false, and Plaintiffs do not claim to have relied upon any particular false or misleading statements in purchasing their devices.  Nor have they pled any facts to support their "omission" claims, which are all based on their supposed understanding (which, again, lacks any basis in fact) that upgrading to iOS 8 would require less than 0.6–1.3 GB.

### A.   Plaintiffs Never Identify Any "False" Statements

Plaintiffs broadly allege that they purchased their 16 GB iPhones and iPads "in reliance on [Apple's] claims, on its website, advertisements, product packaging, and other promotional materials, that the devices came equipped with 16 GB of storage space."  (Compl. ¶¶ 18, 20.)  But they do not dispute that the devices did, in fact, have the advertised amount of storage space.  And they certainly never identify any statement (by Apple or anyone else) that the software that comes with the iPhone (and with every other mobile device ever sold) would not consume any of that storage, or that Plaintiffs would be able to use the full 16 GB to store personal data such as photos or videos.

If Plaintiffs intend to proceed on the basis that Apple made a "false" statement to them, they should be required to plead—specifically—what that statement actually was.  Under both the UCL and CLRA, Plaintiffs must plead facts showing that they personally relied on some "false" statement by the defendant.  *See In re Tobacco II*, 46 Cal. 4th 298, 326 (2009) (because "reliance is the causal mechanism of fraud . . . [the UCL] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011) (applying *Tobacco II* to UCL and FAL misrepresentation claims); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) ("[A] plaintiff must plead 'actual reliance,' even if their [sic] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or deception."), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *Princess Cruise Lines,*

1    *Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (following *Tobacco II* and holding that

2    "reliance is required for CLRA actions").

3        Thus, for their "fraud" claims to proceed, Plaintiffs must allege facts to show that they

4    personally relied on some specific statement by Apple.  Vague references to Apple's advertising

5    (*see* Compl. ¶¶ 15, 21) are insufficient,[11] as are boilerplate allegations that everyone "relied" on

6    statements that were made in different places at different times.[12]  Here, because neither Plaintiff

7    ever identifies *what* specific statements he personally saw or heard, *when* or *where* he heard them,

8    or *which* (if any) statements induced him to purchase that specific product, the claims must be

9    dismissed.  *See Baltazar v. Apple, Inc.,* 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011)

10   ("Plaintiffs must identify the particular commercial or advertisement upon which they relied and

11   must describe with the requisite specificity the content of that particular commercial or

12   advertisement.").[13]

13       **B.    No Actionable Omission**

14       Nor have Plaintiffs alleged any actionable omission.  Consumers who claim to have been

15   "deceived" by some aspect of a product "must have had an expectation or an assumption about

16   the matter in question."[14]  Yet Plaintiffs never identify any basis for their alleged "expectations,"

17   _____

18   [11] *See Kearns*, 567 F.3d at 1126 (plaintiff did not specify "which sales material he relied upon in
     making his decision to buy"); *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 675929, at *2 (N.D.
     Cal. Feb. 25, 2013) (striking as immaterial claims related to a defendant's website because a

19   plaintiff "cannot expand the scope of his or her claims to include . . . advertisements not relied
     upon."); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (same); *McCrary*

20   *v. Elations Co.*, 2013 WL 6403073, at *7–8 (C.D. Cal. July 12, 2013) (dismissing claims based
     on statements on defendant's website when plaintiff only relied on product packaging).

21   [12] *See Iqbal*, 556 U.S. at 678 (court need not assume truth of conclusory allegations); *Laster v. T-

22   Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (plaintiffs failed to allege "that
     they saw, read, or in any way relied on" ads; "nor [did] they allege that they entered into the

23   transaction as a *result* of [the] advertisements") (emphasis original); *Low v. LinkedIn*, 900 F.
     Supp. 2d 1010, 1027 (N.D. Cal. 2012) ("Plaintiffs never alleged reliance on any specific

24   representation or advertising in registering for or using the LinkedIn website").

     [13] Plaintiffs are residents of Florida, but they sue for violations of California statutes.  Because
25   California law identifies the elements of Plaintiffs' claims—and establishes that Plaintiffs'
     allegations as pleaded fail to state a claim—for purposes of this Motion to Dismiss Apple cites

26   authority from courts within the Ninth Circuit.  Apple takes no position at this time as to what
     state's law governs the parties' dispute and reserves all rights in that regard.

27   [14] *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (citing *Bardin v.

28   DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006)); *see also Berenblat v. Apple, Inc.*,
     2010 U.S. Dist. LEXIS 46052, at *26 (N.D. Cal. Apr. 7, 2010) (alleged consumer expectations

1    and never clearly explain what, exactly, Apple should have disclosed.  Here, it appears that

2    Plaintiffs' theory is that since the additional space that iOS 8 allegedly required (as compared to

3    iOS 7) was more than they "expected," Apple was required to disclose how much storage iOS 8

4    would use.[15]  If that is Plaintiffs' theory, it fails as a matter of law.

5         Since Plaintiffs' claims depend on their supposed "expectations," Plaintiffs must allege

6    facts to justify those "expectations"—*i.e.*, identify the specific statements or other facts that led

7    them to reasonably believe that iOS 8 would require less than 0.6–1.3 GB of additional storage

8    space (compared to iOS 7).  *See Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6–7 (N.D. Cal.

9    Sept. 4, 2012)) (rejecting claim that Apple "failed" to disclose that "ultradurable" and "scratch

10   resistant" iPhone screens might break because reasonable consumers know that even reinforced

11   glass can break); *O'Shea v. Epson Am., Inc.*, 2011 U.S. Dist. LEXIS 85273, at *29 (C.D. Cal. July

12   29, 2011)) (rejecting alleged expectation that printers would operate like competitors' machines

13   where alleged expectations had no basis in the manufacturer's statements or warranties).  That is

14   particularly true here, where the information Plaintiffs apparently contend was "omitted" was

15   widely known and was certainly not "concealed," by Apple or anyone else.  (*See, e.g.*, Compl. ¶

16   24 (citing articles).  *See also* RJN Exs. A-B.)[16]

17        Here, the only concrete fact that Plaintiffs identify is the devices' advertised storage

18   capacity.  (*E.g.*, Compl. ¶¶ 10, 15.)  But again, Plaintiffs already knew that iOS 8 would use at

19   least some of that storage space—they certainly never contend that they "expected" to be able to

20   use the *entire* advertised capacity to save personal data.  Nor do Plaintiffs allege that Apple's iOS

21

22   about product must be reasonable).

23   [15] *See, e.g.*, Compl. ¶ 22 (Apple "conceals and fails to disclose . . . that the operating system and
     other pre-installed software consumes a substantial portion of the represented storage capacity of
24   each of the Devices.**"**).

     [16] *See also, e.g.*, *Baltazar*, 2011 U.S. Dist. LEXIS 96140, at *13–15 (allegation that iPad
25   advertisement showed outdoor use did not support alleged expectation that iPad would never
     overheat when used in direct sunlight over time); *Rice v. Sunbeam Prods. Inc.*, 2013 U.S. Dist.
26   LEXIS 7467, at *19–20 (C.D. Cal. Jan. 7, 2013);  (alleged expectation that the outside of a
     Crock-Pot would not get hot was unreasonable); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099,
27   1104 (N.D. Cal. 2007) (one-year express warranty was not  "a representation that the VAIO
     notebook [computers] are defect-free, such that a failure to disclose the alleged soldering defect
28   would constitute concealment").

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1   uses substantially "more" storage space than the operating systems on competitors' devices.

2   Instead, as Plaintiffs' own articles note, "Apple's smartphones are actually among the most frugal

3   in using up storage… ."  (Compl. ¶ 24, *citing* David Price, *What's an iPhone or iPad's True*

4   *Storage Capacity?*, MACWORLD (Apr. 14, 2014).)  In short, Plaintiffs do not allege any facts that

5   could lead a consumer—much less a reasonable consumer—to conclude that upgrading to iOS 8

6   would require less than 0.6–1.3 GB.

7        In any event, even if Plaintiffs could allege facts showing that they "expected" the

8   upgrade from iOS 7 to iOS 8 to use less space (they cannot), their claims would still fail because

9   Apple's free iCloud service more than makes up for any "excess" capacity consumed by iOS 8.

10  Here, Plaintiffs allege that iOS 8 can use "as much as 3.7 GB" of a device's maximum storage

11  capacity.  (Compl. ¶ 25.)  But, again, the first 5 GB of iCloud storage is provided free of charge—

12  meaning that Apple provides customers who bought an "8GB" device had access to *more* than 8

13  GB of user-available storage capacity.

14       In short, Apple had no obligation to "disclose" information that was available to (and

15  indeed known by) Plaintiffs and any reasonable consumer: that the iOS 8 operating system (like

16  all other software ever created) takes up a portion of devices' storage capacity.

17  **V.   PLAINTIFFS FAIL TO PLEAD THEIR FRAUD-BASED CLAIMS WITH
        PARTICULARITY**

18
19       As discussed above, there are critical elements of Plaintiffs UCL and CLRA claims that

20  they have failed to plead *at all*.  But even if the Court concludes that Plaintiffs have identified

21  some actionable statement or omission, their claims must still be dismissed because Plaintiffs

22  have failed to satisfy Rule 9(b).  Fed. R. Civ. P. 9(b).  *See Vess*, 317 F.3d at 1103 ("Rule 9(b)

23  applies to 'averments of fraud'"); *Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to UCL and

24  CLRA claims); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963–64 (N.D. Cal. 2013) (applying

25  Rule 9(b) to CLRA, FAL, and UCL claims).

26       Here, since all of Plaintiffs' claims are based in fraud (*see* Compl. ¶¶ 45–50, 55–58, 68–

27  69),[17] Rule 9(b) requires that Plaintiffs plead the time, place, and specific content of each alleged

28  ───────────────────
    [17] Plaintiffs' additional characterization of Apple's conduct as "unfair" does not save them from
    Rule 9(b)'s requirements.  "[I]f adding an allegation of 'unfairness' to every allegation of fraud

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1   misrepresentation or omission—along with facts demonstrating their personal reliance on those

2   statements or omissions.  *See Kearns*, 567 F.3d at 1124–25.  Thus, Plaintiffs must specifically

3   identify the circumstances of the alleged "fraud"—the who, where, what, when, and how of their

4   claims—as well as circumstances demonstrating their own reliance on the statements or

5   omissions.  *Vess*, 317 F.3d at 1106; *see also Kearns*, 567 F.3d at 1124.[18]  Here, the Complaint

6   refers to Apple's "advertising" (*see* Compl. ¶ 15), but does not identify the date, publication, or

7   content of any specific advertisement, and Plaintiffs never explain what advertisements or

8   statements (if any) they personally saw.  Nor do they plead *facts* regarding their own reliance (if

9   any), and they never articulate what, exactly, Apple should have disclosed to them (much less

10  where such a disclosure should have occurred, or that they would have seen such a disclosure and

11  changed their behavior).  *See Snyder v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 63646, at *9

12  (N.D. Cal. Aug. 24, 2006) (dismissing under Rule 9(b) for failure to describe the circumstances of

13  purchase and what the defendant should have disclosed).

14          If Plaintiffs contend that additional disclosures should have been made, they must explain

15  what, specifically, they believe Apple should have disclosed.  Do Plaintiffs contend that Apple

16  should have disclosed the fact that iOS 8 (like every other piece of software ever written) uses

17  storage?  That that iOS 8 was (allegedly) ~1GB larger than iOS 7?  That Apple's iOS devices

18  generally offer *more* available storage than competitors' devices?  Or what?  Since it is

19  impossible to determine what, exactly, Plaintiffs contend Apple "omitted," their UCL and CLRA

20  claims must be dismissed.

21

22

23  _____

    required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer
24  fraud cases would be pleaded with these words and be subject to the less stringent standard."
    *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2010 U.S. Dist. LEXIS 13908, at *20 (N.D. Ill.
25  Feb. 8, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011); *see also Kearns*, 567 F.3d at 1126.

    [18] To meet Rule 9(b)'s requirements with respect to their omission claims, Plaintiffs "must
26  describe the content of the omission and where the omitted information should or could have been
    revealed, as well as provide representative samples of advertisements, offers, or other
27  representations that plaintiff relied on to make her purchase and that failed to include the
    allegedly omitted information."  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D.
28  Cal. 2009).

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

## VI.    SOFTWARE IS NOT COVERED BY THE CLRA

According to Plaintiffs, "[t]his case challenges storage capacity misrepresentation and omissions relating to use of Apple's iOS 8 operating system." (Compl. ¶ 1.) But "Apple's iOS 8 operating system" is software, and software is not a "good" for purposes of the CLRA. *Ferrington v. McAfee, Inc*., 2010 U.S. Dist. LEXIS 106600, at *56–57 (N.D. Cal. Oct. 5, 2010) (excluding downloaded software from CLRA claims); *Lazebnik v. Apple, Inc*., 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (an iTunes television show "Season Pass is not a 'good' within the meaning of the CLRA because . . . it is either software or a license, not a 'tangible chattel.'"); *McMahon v. Take-Two Interactive Software, Inc.*, 2014 WL 324008, at *10 (C.D. Cal. Jan. 29, 2014) ("[S]oftware and online services fall outside the 'goods' and 'services' covered by the CLRA"). In addition, Plaintiffs cannot establish an upgrade class under the CLRA because the iOS 8 upgrade is free. *Wofford v. Apple Inc.*, 2011 U.S. Dist. LEXIS 129852, at *6 (S.D. Cal. Nov. 8, 2011)) ("[T]his Court finds that Plaintiffs fail to state a claim under the CLRA, because the free download of iOS4 on Plaintiffs' Third Generation iPhone does not meet the CLRA's 'sale or lease' requirement."). Accordingly, Plaintiffs' CLRA claim should be dismissed.

## VII.   PLAINTIFFS CANNOT SUE OVER PRODUCTS THEY NEVER BOUGHT

Here, Plaintiffs seek to bring claims over a wide array of different products—including the 8 and 16 GB versions of various models of the iPad, iPod, and iPhone. But the only products that the named Plaintiffs claim to have actually purchased are the 16 GB versions of the iPhone5s and iPhone 6, plus an unidentified model of the iPad. (Compl. ¶¶ 16–17, 19.) Since the named Plaintiffs only bought three of the many different products at issue here, they lack standing to bring claims on behalf of consumers who bought a product the Plaintiffs have never purchased or used.

It is axiomatic that Plaintiffs must have standing to bring claims in federal court, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992), and standing for each of Plaintiffs' claims requires them to show that they personally suffered injury in fact as a result of a breach of warranty or an allegedly misleading statement. *See Oregon v. Legal Servs. Corp.*, 552 F.3d 965,

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

969 (9th Cir. 2009) (standing is required for each claim and each form of relief), *abrogated on other grounds as stated in Bond v. United States*, 131 S. Ct. 2355, 2361 (2011).  But here, neither Plaintiff alleges that he parted with any money or was damaged in any way by the devices that he did not buy.  Put simply, Plaintiffs cannot conceivably have been injured by devices they did not purchase or use and, since Plaintiffs only bought three of the devices at issue in this case, the Court should dismiss all claims related to the products that they never bought.[19]

In fact, district courts in this Circuit have dismissed similar claims under precisely these circumstances.  *See, e.g.*, *Johns*, 2010 WL 476688, at *5 ("[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase. … The statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3–4 (N.D. Cal. Jan. 10, 2011) (dismissing claims over ice cream products the plaintiff did not purchase).  For example, in *Mlejnecky v. Olympus Imaging America Inc.*, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011), the plaintiff brought UCL claims over two "Stylus" camera models—even though she had only purchased one of the cameras at issue.  The court dismissed the plaintiff's claims regarding the camera model she had never purchased—even though the plaintiff alleged that both models had the same underlying defects and the defendant used the same advertisement for all Stylus cameras.  *Id.* at *4.  The court reached a similar conclusion in *Larsen v. Trader Joe's Cos.*, 2012 WL 5458396 (N.D. Cal. June 14, 2012), where Judge Susan Illston dismissed the plaintiffs' claims over a product they never purchased with prejudice, holding:

> At this stage plaintiffs must state a claim that can survive a Rule 12(b)(6) motion, irrespective of the future class.  The Court finds plaintiffs do not have standing to bring this claim because they did

---

[19]  In addition to the Article III constitutional requirement that applies to all claims in federal court, injury is also a required element of the California causes of action that Plaintiffs assert.  *See Kwikset*, 51 Cal. 4th at 322 (UCL standing requires Plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice that is the gravamen of the claim.") (emphasis original); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("[T]o plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct"); *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *2 (N.D. Cal. May 5, 2010) (same); *Backhaut v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 162870, at *29–30 (N.D. Cal. Nov. 19, 2014) (CLRA and UCL).

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1    not purchase the Crescent Rolls and therefore, as a matter of law,
     could not have suffered a particularized injury as required by
2    Article III.

3    *Id.* at *5. *See also Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *5 & n.5 (C.D. Cal.

4    May 18, 2012) (dismissing claims on statutory standing grounds because plaintiff "cannot expand

5    the scope of his claims to include a product he did not purchase") (quoting, in part, *Johns*, 2010

6    WL 476688, at *5); *Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099, at *3 (N.D.

7    Cal. July 27, 2012) (dismissing claims over products plaintiff did not purchase); *Ivie v. Kraft*

8    *Foods Global, Inc.*, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013) (dismissing claims based

9    on unpurchased products for lack of pecuniary injury); *Contreras v. Johnson & Johnson*

10   *Consumer Cos.*, 2012 U.S. Dist. LEXIS 186949, at *6 (C.D. Cal. Nov. 29, 2012) (same).[20]

11       Here, Plaintiffs should not be permitted to lump together claims related to so many

12   different devices.  iPads, iPhones, and iPods are hardly the same product—they are all distinct

13   and different devices, and Plaintiffs do not (and, of course, cannot) allege that the devices are all

14   the same.  Indeed, Plaintiffs openly admit that iPhones, iPods, and iPads can vary substantially in

15   terms of storage usage.  (Compl. ¶ 23.)  By definition, Plaintiffs have not suffered any injury

16   (economic or otherwise) as a result of the devices that they did not buy, and nothing about

17   Plaintiffs' claims here justifies deviating from the long line of cases rejecting claims over

18   products that Plaintiffs never bought.

19       More fundamentally, there is no question that Plaintiffs' claims over the devices that they

20   never bought would fail if brought on an individual basis, and Plaintiffs cannot avoid that result

21   by simply styling their Complaint as a putative class action.  It is a basic principle that Rule 23

22
23   [20] Some courts in the Ninth Circuit have allowed these kinds of claims to survive a motion to
     dismiss or a motion to strike, but these decisions are distinguishable.  *See, e.g.*, *Morgan v.
24   *Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548, at *27 (N.D. Cal. Mar. 13, 2014) (allowing
     claims based on unpurchased yogurt flavors because claims were based on the same alleged
25   misrepresentations about an identical ingredient in all flavors); *Wang v. OCZ Tech. Grp., Inc.*,
     276 F.R.D. 618, 633 (N.D. Cal. 2011) (declining to grant the defendant's motion to strike, but
26   acknowledging that "[plaintiff's] inability to allege injury based on products that he did not
     purchase may ultimately subject those claims to proper dismissal pursuant to a Rule 12(b) motion
27   or motion for summary judgment . . . .").  Moreover, those cases have not addressed the more
     fundamental question, discussed below, of whether the fact that a complaint is styled as a putative
28   class action can permit a plaintiff to proceed with a claim that would unquestionably fail if
     brought on an individual basis.

MOTION TO DISMISS COMPLAINT
NO. 5:14-CV-05659-EJD

1  cannot modify or enlarge any party's underlying substantive rights.  *See Amchem Prods., Inc. v.*

2  *Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with

3  Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure

4  'shall not abridge, enlarge or modify any substantive right.'") (quoting 28 U.S.C. § 2072(b)).

5  Were this not a class action, Apple would plainly be entitled to immediate dismissal of all claims

6  over the devices that Plaintiffs never bought, and the fact that Plaintiffs styled the instant action as

7  a putative class action cannot alter that ultimate outcome—all of Plaintiff's claims related to the

8  devices that they did ***not*** purchase should be dismissed.[21]

9  **VIII.   CONCLUSION**

10       For the reasons set out above, Apple respectfully requests that the Court dismiss the

11  Complaint with prejudice.

12

13       Dated: March 25, 2015                O'MELVENY & MYERS LLP

14                                            MATTHEW D. POWERS
                                              SUSAN ROEDER
15                                            SARAH H. TRELA

16                                            By: /s/ Matthew D. Powers
                                                  Matthew D. Powers
17                                            Attorneys for Defendant
                                              APPLE INC.

18

19

20

21

22

23

24

25  _____

26  [21] *Donohue v. Apple Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) is distinguishable and does not
    require a different result.  In *Donohue*, Apple had expressly admitted that the signal meters on the
    devices at issue were identical.  *Id.* at 922.  The court in *Donohue* thus did not need to analyze the
27  similarities and differences between the devices at issue, and failed to acknowledge—much less
    distinguish—the Supreme Court's clear holding in *Amchem Prod.*, 521 U.S. at 613, that Rule 23
28  cannot be used to expand the scope of a plaintiff's substantive rights.