MICHAEL MCSHANE (CA State Bar #127944)
JONAS P. MANN (CA State Bar #263314)
**AUDET & PARTNERS, LLP**
221 Main St., Suite 1460
San Francisco, CA 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
jmann@audetlaw.com

CHARLES J. LADUCA (to apply *Pro Hac Vice*)
MATTHEW E. MILLER (to apply *Pro Hac Vice*)
WILLIAM H. ANDERSON (to apply *Pro Hac Vice*)
**CUNEO GILBERT & LADUCA LLP**
507 C St., N.E.
Washington, DC 20002
Telephone: (202) 789-3960
charlesl@cuneolaw.com
mmiller@cuneolaw.com
wanderson@cuneolaw.com

JON M. HERSKOWITZ (to apply *Pro Hac Vice*)
**BARON & HERSKOWITZ**
9100 S. Dadeland Blvd., Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393
jon@bhfloridalaw.com

*Attorneys for Plaintiffs*
(Additional Counsel Listed in Signature Block)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAUL ORSHAN, CHRISTOPHER ENDARA, and DAVID HENDERSON, individually, and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**APPLE INC.,**<br><br>Defendant. | Case No.  5:14-cv-5659 EJD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT:**<br><br>**(1) CALIFORNIA'S UNFAIR COMPETITION LAW (§ 17200);**<br>**(2) CALIFORNIA'S FALSE ADVERTISING LAW (§ 17500 *ET SEQ.*);**<br>**(3) CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (§ 1750 *ET SEQ.*)**<br><br>**JURY TRIAL DEMANDED** |

1   Plaintiffs Paul Orshan ("Orshan"), Christopher Endara ("Endara"), and David Henderson
2   ("Henderson"), individually and on behalf of all others similarly situated (or collectively
3   "Plaintiffs"), file this class action against Defendant Apple Inc. ("Apple" or "Defendant").
4   Plaintiffs allege the following upon personal knowledge as to their actions and upon information
5   and belief based upon the investigation of their attorneys as to all other facts alleged in the
6   Complaint:

7                                          **INTRODUCTION**

8       1.      This case challenges storage capacity misrepresentations and omissions relating to
9   use of Apple's iOS 8 operating system.  As set forth in greater detail below, iOS 8 uses an
10  unexpectedly large percentage of the storage capacity on 8 GB and 16 GB iPhones, iPads and
11  iPods (the "Devices").

12      2.      Defendant fails to disclose to consumers that as much as 23.1% of the advertised
13  storage capacity of the Devices will be consumed by iOS 8 and unavailable for consumers when
14  consumers purchase Devices that have iOS 8 installed.  Apple also forces consumers to retain
15  applications that many consumers do not want, but are unable to delete.  Reasonable consumers,
16  such as Plaintiffs, do not expect this marked discrepancy between the advertised level of capacity
17  and the available capacity of the Devices, as the operating system and other storage space
18  unavailable to consumers occupies an extraordinary percentage of their Devices' limited storage
19  capacity.

20      3.      To compound the harm to consumers, after Defendant provides materially less
21  than the advertised capacity on the Devices, Defendant aggressively markets a monthly-fee-
22  based storage system called iCloud.  Using these sharp business tactics, Defendant gives less
23  storage capacity than advertised, only to later offer to sell that capacity in a desperate moment,
24  e.g., when a consumer is trying to record or take photos at a child or grandchild's recital,
25  basketball game or wedding.  To put this in context, each gigabyte of storage Apple shortchanges
26  its customers amounts to approximately 400-500 high resolution photographs.

27
28

FIRST AMENDED CLASS ACTION COMPLAINT                              5:14-cv-5659 EJD

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  The matter in controversy exceeds $5,000,000 exclusive of interests and costs, and this matter is a class action in which certain class members are citizens of States other than Defendant's state of citizenship.

5.     Venue is proper in this Court because Defendant resides in this District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims, including the dissemination of the false and misleading advertising alleged herein, occurred in and were directed from this District.

**THE PARTIES**

6.     Plaintiff Paul Orshan is a resident of Miami, Florida.  Plaintiff Christopher Endara is a resident of Miami, Florida.  Plaintiff David Henderson is a resident of Arlington, Virginia.

7.     Defendant Apple Inc. ("Apple") is a corporation organized under the laws of the State of California, and has its principal place of business in Cupertino, California.

**BACKGROUND**

8.     Storage capacity in computing and telecommunications is typically measured in a digital unit called a byte.  A kilobyte, or "KB," is typically defined as one thousand, or $10^3$, bytes.  A megabyte, or "MB," is typically defined as one million, or $10^6$, bytes.  A gigabyte, or "GB," is typically defined as one billion, or $10^9$, bytes.  The foregoing definitions of KB, MB, and GB are "decimal" definitions of the respective units, as recognized by the International System of Quantities ("ISQ").  The ISQ is a measurement system jointly promulgated by the International Organization for Standardization ("ISO") and the International Electrotechnical Commission ("IEC").

9.     An alternative to "decimal" units of storage are "binary"-based units.  Instead of being founded upon a base 10 system, it is predicated on a base 2 system.  In the binary system a kibibyte, or KiB, is 1024, or $2^{10}$ bytes.  A mebibyte, or MiB is 1,048,576, or $2^{20}$ bytes.  A gibibyte, or GiB, is 1,073,741,824, or $2^{30}$, bytes.  Sometimes, the decimal terms, such as megabyte or gigabyte, are used to describe quantities of bytes that would be more accurately

represented with binary units – for example, the term gigabyte is sometimes used, in practice, to represent either 1,000,000,000 or 1,073,742,824 bytes. Some devices containing storage capacity (including the Devices at issue in this action) will, for example, graphically represent to the user their total, and available, capacities using the term "GB," but use that term to denote 1,073,742,824 bytes.

10.    Defendant advertises the Devices using the decimal definition gigabyte, or GB. Therefore the capacity of 8 GB Devices is advertised by Defendant as 8 billion bytes. The storage capacity of 16 GB devices is advertised as 16 billion bytes.

11.    In reality, nothing close to the advertised capacity of the Devices is available to end users. Indeed, the discrepancy between advertised and available capacity is substantial and beyond any possible reasonable expectation. For the Devices, the shortfall ranges from 18.1-23.1%.

12.    As noted above, although Defendant advertised based upon the decimal-based system of measurement, upon information and belief, the Devices display available capacity based upon the binary definitions. This is confusing even to the technically savvy because it prevents consumers from making the proverbial "apples to apples" comparison. Exacerbating this confusion is the fact that rather than using the GiB representation, as suggested by the ISQ, the graphic interface used on the Devices uses the abbreviation GB, even though it is apparently referring to gibibytes, and not gigabytes.

13.    Once one converts the available capacity of the Devices from gibibytes back to gigabytes—a calculation few consumers are likely to make or understand—the capacity available is materially less than what is represented in Defendant's advertising. Further, it appears that Defendant segregates the storage space of the Devices into a media partition and a root partition. The media partition is the portion of the Device's storage that is available to the consumer. Control of the root partition rests exclusively with Apple and consumers have no ability to reduce the portion of the storage apportioned to Apple. It is important to note that the root partition is larger than it needs to be and viable storage capacity on the root partition side can remain unused even as the media partition becomes full and a consumer is instructed to

purchase iCloud space from Apple.  Further, several users have reported that, if a consumer "jailbreaks[1]" a Device, the root partition can be reduced in size to accommodate a greater storage allocation to the consumer.

## FACTUAL ALLEGATIONS

14.    Apple is in the business of, *inter alia,* manufacturing and marketing its line of "iPhone" cellular telephones, with the first model released on or about released on June 29, 2007. Apple currently markets and sells the iPhone 6 and 6+ introduced on or about September 9, 2014.  Predecessor models include the iPhone 5s and 5c introduced on or about September 10, 2013, and the iPhone 4s introduced on or about October 10, 2011.  Apple also manufactures and markets a line of "iPad" tablet devices, first introduced on April 3, 2010.  Apple also manufactures and markets a line of "iPod" audio players, first introduced on October 23, 2001. As noted above, 8 GB and 16 GB versions of the iPhones, iPods and iPads are collectively referred to herein as "the Devices."

15.    Apple explicitly represents in its website, advertisements, product packaging, and other promotional materials, that the iPhone 6 and 6+ are available with a storage capacity of 16 GB.  Apple made similar representations with respect to earlier models of the iPhone, albeit with respect to lesser storage capacities of 8 GB, as well.  Apple also makes, and has made at all times during the relevant time period, representations concerning the storage capacities of its 8 GB and 16 GB iPads and iPods.

16.    In February, 2014,  Plaintiff Orshan purchased two  iPhone 5s' represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity from the AT&T Store located in Coral Gables, Florida.  Orshan purchased the devices on a payment plan of $32.50 per month.  Orshan purchased devices primarily for personal, family or household use.  The iPhones were purchased with iOS 7 and recently upgraded to iOS 8.

17.    In November, 2012 Plaintiff Orshan also purchased two iPads represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity at the Apple Store in the

---

[1] The term "jailbreak" is used to describe the modification of a Device to remove some, or all, controls or limitations set by the manufacturer, and may include substitution of the operating system. Jailbreaking a Device typically voids the manufacturer's warranty, and is an option pursued only by the most technically sophisticated and/or adventurous users.

FIRST AMENDED CLASS ACTION COMPLAINT

1   Dadeland Mall. Orshan paid $639.86 for the devices.  The iPads were subsequently upgraded to
2   iOS 8.

3          18.     Plaintiff Orshan purchased his iPhones and iPads in reliance on Defendant's
4   claims, on its website, advertisements, product packaging, and other promotional materials, that
5   the devices came equipped with 16 GB of storage space.  Plaintiff Orshan viewed various
6   materials, including Apple's website before purchasing his iPhones and iPads, and packaging
7   materials in the store at the time of making the purchases, which specifically stated that the
8   Devices were available with 8 GB or 16 GB of storage capacity.  Plaintiff Orshan was willing to
9   – and did in fact – pay more to acquire devices with 16GB of storage capacity (rather than the
10  less expensive 8GB of storage capacity) because he wanted the greater capacity to store his
11  personal data.  In reliance on the fact that Apple specifically represented that the devices had 16
12  GB of storage capacity, Plaintiff Orshan expected that capacity would be available for his
13  personal use.  Absent that, it would not have been of the same monetary value to him.  Plaintiff
14  upgraded to iOS 8 with the belief that the upgrade would not substantially inhibit his available
15  storage capacity.  Defendant did not adequately disclose in conjunction with upgrades to iOS 8
16  the additional and substantial storage capacity that would be consumed by the upgrade.  Had
17  Plaintiff Orshan known that by upgrading to iOS 8 he would substantially inhibit – and in fact
18  decrease – his storage capacity, he would not have upgraded to iOS 8.

19         19.     In December, 2014, Plaintiff Endara purchased an iPhone 6 represented by Apple
20  to have 16 gigabytes ("16GB") of purported storage capacity from the AT&T store located in
21  Miami, Florida. Endara purchased the device on a payment plan of approximately $27 per
22  month.  Endara purchased the device primarily for personal use. The iPhone was purchased with
23  iOS8 pre-installed.

24         20.     Plaintiff Endara purchased his iPhone in reliance on Defendant's claims, on its
25  website, advertisements, product packaging, and other promotional materials, that his iPhone 6
26  came equipped with 16 GB of storage space. Plaintiff Endara viewed various materials,
27  including Apple's website before purchasing his iPhone and packaging materials in the store at
28  the time of making the purchase, which stated that the Device possessed 16 GB of storage

capacity.  In reliance on the fact that Apple specifically represented that the device had 16 GB of storage capacity, Plaintiff Endara expected that capacity would be available for his personal use. Absent that, it would not have been of the same monetary value to him.  Had he known that in reality, the operating system and other pre-installed software consumes a substantial portion of the represented storage capacity, Endara would not have purchased the 16GB of storage capacity or would not have been willing to pay the same price for it.

21.     On April 1, 2012, Plaintiff Henderson purchased an iPad2 represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity from the Apple Store located in Clarendon, Virginia.  Henderson purchased device primarily for personal, family or household use. Henderson paid $522.90  for the device after tax and a $99 payment for AppleCare support. The iPad was purchased with  a predecessor operating system to iOS 8.

22.      Once Henderson upgraded to iOS 8, his iPad, which had previously performed almost flawlessly for him, slowed to a snail's pace and was no longer useful for any purpose other than reading a book.  Henderson took the iPad to the Apple Genius Bar in the Apple Store in Clarendon, Virginia, and was told that they had received many complaints about iPads instantly becoming useless and that iPads with more memory seemed to fair better with the iOS 8.  Henderson made multiple efforts to resolve the crash and speed issues with his iPad in store, through AppleCare and even with an individual in Corporate Executive Relations at Apple's executive offices.  Ultimately, he was passed to an AppleCare iOS Senior Specialist who recommended that he jailbreak his device—an action that would void his warranty.  Because his iPad would not perform properly, Henderson was forced to purchase a new iPad mini represented by Apple to have 32 GB of storage capacity.

23.     Plaintiff Henderson purchased his iPad in reliance on Defendant's claims, on its website, advertisements, product packaging, and other promotional materials, that the device came equipped with 16 GB of storage space.  Plaintiff Henderson viewed various materials, including Apple's website before purchasing his iPad, and packaging materials in the store at the time of making the purchase, which specifically stated that the Device were available with 8 GB or 16 GB of storage capacity.  Plaintiff Henderson was willing to – and did in fact – pay more to

FIRST AMENDED CLASS ACTION COMPLAINT

acquire devices with 16GB of storage capacity (rather than the less expensive 8GB of storage capacity) because he wanted the greater capacity to store his personal data.  In reliance on the fact that Apple specifically represented that the devices had 16 GB of storage capacity, Plaintiff Henderson expected that capacity would be available for his personal use.  Absent that, it would not have been of the same monetary value to him.  Plaintiff upgraded to iOS 8 with the belief that the upgrade would not substantially inhibit his available storage capacity.  Defendant did not adequately disclose in conjunction with upgrades to iOS 8 the additional and substantial storage capacity that would be consumed by the upgrade.  Had Plaintiff Orshan known that by upgrading to iOS 8 he would substantially inhibit – and in fact decrease – his storage capacity, he would not have upgraded to iOS 8.

24.     Neither Plaintiff Orshan, Plaintiff Endara, Plaintiff Henderson, nor any reasonable consumer, expected (or could have reasonably expected) that a shortfall ranging between 18.1 – 23.1 % exists between the advertised and available capacity of the Devices they purchased.

25.     Storage capacity matters to reasonable consumers (including Plaintiffs and putative Class members) precisely because of how it translates into their ability to store personal information after purchase.  Storage capacity constitutes a substantial consideration that weighs into reasonable consumers' decision making processes.  Consumers purchase Devices with greater storage capacity with the expectation that they will be able to storage a greater amount of personal information on those Devices and delay having to purchase a replacement in the future. Indeed, this is why Apple makes representations regarding the storage capacity of its products and boasts to consumers that its Devices have 16GB of storage capacity.  To a consumer, the fact that a device has a particular storage capacity matters mostly because it impacts their ability to make use of that capacity.  The fact that a device has a storage capacity is not valuable to a reasonable consumer if that consumer cannot actually make use of that capacity.

26.     Apple should have disclosed the actual storage capacity available to users for its various Devices and that upgrading to iOS 8 would result in a substantial decrease in available storage capacity.  Had Plaintiffs known that the operating system and other pre-installed software

consumes a substantial portion of the storage capacity of the Devices, they would have reconsidered their decisions to purchase Devices, or would have paid less.

27.    Defendant employs false, deceptive and misleading practices in connection with marketing, selling; and distributing the Devices.  For example, in its advertising, marketing, and promotional materials, including Apple's Internet website, product packaging, and product displays, Defendant presently misrepresents the iPhone 6 as having 16 GB of storage capacity.

28.    Defendant knows, but conceals and fails to disclose in its advertising, marketing or promotional materials, that the operating system and other pre-installed software consumes a substantial portion of the represented storage capacity of each of the Devices.  The represented capacity, is not, therefore, storage space that the consumer can actually use to store files after purchase.  Defendant also fails to discuss that consumers will be forced to retain certain applications, which consume storage capacity, even if the consumer wishes to delete the application.  Thus, for a consumer who purchases a "16 GB" iPhone, iPad, or iPod with iOS 8 pre-installed, or who upgrades to iOS 8, as much as 23.1% of the represented storage capacity is inaccessible and unusable.

29.    The following table depicts the discrepancy between represented storage capacity, and storage capacity actually available to purchasers, on certain iPhones and iPads (with iOS 8 installed) that were recently examined by Plaintiffs' counsel:

| Device | Represented Capacity | Capacity Available to User | | Capacity Unavailable to User | |
|---|---|---|---|---|---|
| | (GB) | (GiB) | (GB) | (GB) | (%) |
| iPhone 6+ | 16 | 11.8 | 12.7 | 3.3 | 20.6% |
| iPhone 6 | 16 | 12.1 | 13.0 | 3.0 | 18.8% |
| iPhone 5s | 16 | 12.2 | 13.1 | 2.9 | 18.1% |
| iPad Air | 16 | 11.7 | 12.6 | 3.4 | 21.3% |
| iPad | 16 | 11.7 | 12.6 | 3.4 | 21.3% |
| iPod | 16 | 11.5 | 12.3 | 3.7 | 23.1% |

FIRST AMENDED CLASS ACTION COMPLAINT

1    30.    The foregoing actual capacities are further confirmed by reports from several

2    purchasers and bloggers reported on various websites.  For example, a purchaser complained that

3    his new iPhone 4 with a represented capacity of 8 GB had only 6.37 GB of storage.  An Apple

4    representative conceded that "that is normal" and suggested that, if the user did "not like it," to

5    "take it back."  See https://discussions.apple.com/thread/3558683.  A blogger, similarly, reported

6    that a "16 GB" iPad only affords 13 GB of usable storage, and noted that "selling a 16 GB iPad

7    that really only has 13 GB available (after iOS is installed) – is deceptive."  See

8    http://www.mcelhearn.com/apples-ios-apps-are-bloated-and-how-many-gigs-do-you-get-on-a-

9    16-gb-ios-device/  *See also* David Price, "What's an iPhone or iPad's true storage capacity?"

10   (April 10, 2014),  http://www.macworld.co.uk/feature/ipad/whats-iphone-or-ipads-true-storage-

11   capacity-3511773/ ("a 16GB iPhone 5s offers 12.2GB of true capacity, and a 16GB iPhone 5c

12   allows 12.6GB," apparently using the binary definition of gigabyte).  *See also*

13   http://www.imore.com/16gb-vs-64gb-vs-128gb-which-iphone-6-and-iphone-6-plus-storage-size-

14   should-you-get ("out of 16 GB of storage you get only 12~13").

15   31.    Apple's misrepresentations and omissions are deceptive and misleading because

16   they omit material facts that an average consumer would consider in deciding whether to

17   purchase its products, namely, that when using iOS 8, as much as 3.7 GB of the represented

18   storage capacity on a device represented to have 16 GB of storage capacity is, in fact, not

19   available to the purchaser for storage.  For example, Apple misrepresents that an iPhone 6+ with

20   the base level of storage has 16 GB of storage space while concealing, omitting and failing to

21   disclose that, on models with iOS 8 pre-installed, in excess 20% of that space is not available

22   storage space that the purchaser can access and use to store his or her own files.

23   32.    In addition to making material misrepresentations and omissions to prospective

24   purchasers of Devices with iOS 8 pre-installed, Apple also makes misrepresentations and

25   omissions to owners of Devices with predecessor operating systems.  These misrepresentations

26   and omissions cause these consumers to "upgrade" their Devices from iOS 7 (or other operating

27   systems) to iOS 8.  Apple fails to disclose that upgrading from iOS 7 to iOS 8 will cost a Device

28   user between 600 MB and 1.3 GB of storage space – a result that no consumer could reasonably

anticipate.  This is confirmed by our own comparison of devices with iOS 7 and iOS 8

installations, and reports by others.  *See* "iOS 8, thoroughly reviewed" (September 19, 2014),

available online at http://arstechnica.com/apple/2014/09/ios-8-thoroughly-reviewed/2/#install

33.    Rather ironically, Apple touts iOS 8 as "The biggest iOS release ever."  Of

course, Apple is *not* referring to the literal size of iOS 8, which appears to be entirely

undisclosed in its voluminous marketing materials extolling the purported virtues of iOS 8.

34.    At present, Apple does not enable users who have upgraded to iOS 8 to revert

back to iOS 7 or another operating system.  *See* "How to downgrade from iOS 8 to iOS 7: Apple

stops signing iOS 7.1.2, and blocks iOS downgrades (Sept. 29, 2014), available online at

http://www.macworld.co.uk/how-to/iosapps/how-downgrade-from-ios-8-ios-7-reinstall-ios-8-

3522302/;  "There's no turning back from iOS 8 if you upgrade from iOS 7.1.2" (Sept. 26,

2014), available online at http://bgr.com/2014/09/26/downgrade-from-ios-8-to-ios-7-1-2/).

35.    The most popular storage option, for each of the Devices, is presently, and has

been at all times, the base level of storage, currently represented to be 8 or 16 GB depending on

the Device.  At least a plurality (and perhaps a majority) of purchasers make the determination

that the storage afforded by the base model, which is priced lower than models with higher

storage capacity, will be sufficient for their purposes, based on Apple's representations as to the

Devices' storage capacities.  The shortfall in actual storage capacity is most acute, and most

material, on the base models, as the unexpected shortfall in storage will cause some purchasers to

exhaust the Devices' storage capacities, and/or to do so earlier than expected.

36.    Apple exploits the discrepancy between represented and available capacity for its

own gain by offering to sell, and by selling, cloud storage capacity to purchasers whose internal

storage capacity is at or near exhaustion.  In fact, when the internal hard drive approaches "full,"

a pop up ad opens up offering the purchaser the opportunity to purchase "iCloud" cloud storage.

For this service, Apple charges prices ranging from $0.99 to $29.99 *per month*.  It does not

appear that Apple permits users of its devices to access cloud storage from other vendors, nor do

any of the Devices (unlike certain competitors' smartphones, including most phones using the

Android operating system) permit the user to insert SD cards or other supplemental, non-Apple,

storage units.  Apple also does not permit users to freely transfer files between the Devices and a (notebook or desktop) PC using a "file manager" utility – an option available to most users of Android or Windows-based portable devices.

37.     Plaintiff Orshan purchased a 16 GB iPhone 5s on or about February 2014 with (a version of) iOS 7 pre-installed.  On or about October 2014, Plaintiff upgraded the operating system on his iPhone 5s to iOS 8 in reliance on Apple's misrepresentations and omissions.

38.     Plaintiff Endara purchased a 16 GB iPhone on or about December 2014 with iOS8 pre-installed.

39.     Plaintiff Henderson purchased a 16 GB iPad on April 1, 2012, and upgraded to iOS 8 in late 2014, with the catastrophic results described above.

40.     Plaintiffs hereby bring this class action seeking redress for Defendant's unfair business practices, false or deceptive or misleading advertising, and violations of the Consumers Legal Remedies Act ("CLRA").

## CLASS ACTION ALLEGATIONS

41.     This action may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.

42.     Plaintiffs bring this action as a class action on behalf of themselves and the following classes ("the Classes"):  (1) (a)  an "iOS 8 Purchaser Class" consisting of all persons or entities in the United States who purchased an iPhone, iPod or iPad with represented storage capacity of 16 GB or less with iOS 8 pre-installed for purposes other than resale or distribution, and (b) an "iOS 8 Purchaser CLRA Subclass" consisting of all persons in the United States who purchased an iPhone, iPod or iPad with represented storage capacity of 16 GB or less with iOS 8 pre-installed for personal, family or household use within the four years preceding the filing of this Complaint, (2)(a) an "Upgrade Class" consisting of all persons or entities in the United States who upgraded an iPhone, IPod or iPad with represented storage capacity of 16 GB or less to iOS 8, and (b) an "Upgrade CLRA Subclass" consisting of all persons or entities in the United States who upgraded an iPhone, IPod or iPad used for personal, family or household use with represented storage capacity of 16 GB or less to iOS 8,

FIRST AMENDED CLASS ACTION COMPLAINT

43.     Excluded from the Classes are the Defendant, and all officers, directors, employees, or agents of the Defendant.

44.     The members of the Classes are so numerous that joinder of all members would be impracticable.  Plaintiffs do not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendant.  Plaintiffs, however, believe that the Classes encompass at least tens of thousands of individuals.

45.     There are common questions of law or fact, among others, including

a.   The nature, scope and operations of the wrongful practices of Apple;

b.   Whether Defendant's advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive;

c.   Whether Defendant knew that its representations and/or omissions regarding the Devices' storage capacity were false or misleading, but continued to make them.

d.   Whether Defendant's failure to disclose the amount of storage space consumed by its operating system and other pre-installed software was a material fact;

e.   Whether, by the misconduct as set forth in this Complaint, Apple engaged in unfair or unlawful business practices, pursuant to California Business and Professions Code § 17200, *et seq.*;

f.   Whether Defendant's conduct violated the California Consumer Legal Remedies Act;

g.   Whether Defendant's conduct violated the California Business and Professions Code §  17500, *et seq.;*

h.   Whether, as a result of Apple's misconduct as set forth in this Complaint, Plaintiffs and the Classes are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief; and

i.   Whether Apple has acted on grounds generally applicable to the Class, making injunctive relief appropriate.

46.     Plaintiffs' claims are typical of the members of the Classes because Plaintiffs and all members of the Classes were injured by the same wrongful practices of Apple as described in

this Complaint.  Plaintiffs' claims arise from the same practices and course of conduct that gives rise to the claims of the Classes' members, and are based on the same legal theories.  Plaintiffs have no interests that are contrary to or in conflict with those of the Classes they seek to represent.

47.     Plaintiffs will fairly and adequately represent the interests of the members of the Classes.  Plaintiffs' interests are the same as, and not in conflict with, the other members of the Classes.  Plaintiffs' counsel is experienced in class action and complex litigation.

48.     Questions of law or fact common to the members of the Classes predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by Classes members are likely to be in the millions of dollars, the individual damages incurred by each Class member resulting from Apple' wrongful conduct are, as a general matter, too small to warrant the expense of individual suits.  The likelihood of individual members of the Classes prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Classes is proper.

49.     Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper on the additional ground that Apple has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of each Class as a whole.

# COUNT I

## California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

50.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

51.     Plaintiffs bring this cause of action individually and on behalf of the Class.

52.     Defendant has violated California Business and Professions Code § 17200 by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue, or misleading advertising as set forth above in this Complaint.

53.     Defendant's practices are likely to deceive, and have deceived, members of the public.

54.     Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

55.     Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

56.     By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

57.     Plaintiffs and all members of the Classes suffered injury in fact as a result of Defendant's unfair methods of competition.  As a proximate result of Defendant's conduct, Plaintiffs and members of the Classes were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these misrepresentations, and suffered monetary loss as a result.

58.     Plaintiffs, individually and on behalf of the Classes, seek an order of this Court against Defendant awarding restitution, disgorgement, injunctive relief and all other relief allowed under § 17200, *et seq.*, plus interest, attorneys' fees and costs.

5:14-cv-5659 EJD
FIRST AMENDED CLASS ACTION COMPLAINT

1

## <u>COUNT II</u>

2

## <u>California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*</u>

3      59.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained

4    herein.

5      60.     Plaintiffs bring this cause of action individually and on behalf of the Class.

6      61.     Apple is a California company disseminating advertising from California

7    throughout the United States.

8      62.     Defendant has engaged in a systematic campaign of advertising and marketing the

9    Devices as possessing specific storage capacities. In connection with the sale of the Devices, and

10   the promotion of iOS 8, Defendant disseminated or caused to be disseminated false, misleading,

11   and deceptive advertising regarding storage capacity to the general public through various forms

12   of media, including but not limited to product packaging, product displays, labeling, advertising

13   and marketing. However, Defendant knew or reasonably should have known that the Devices do

14   not make available to users the advertised storage space, and that the failure to disclose the

15   storage space consumed by iOS 8 (both to prospective purchasers of Devices with iOS 8 pre-

16   installed and to prospective upgraders) was a material omission.

17     63.     When Defendant disseminated the advertising described herein, it knew, or by the

18   exercise of reasonable care should have known, that the statements concerning iOS 8 and the

19   storage capacity of its Devices were untrue or misleading, or omitted to state the truth about the

20   Devices' storage capacity, in violation of the False Advertising Law, Cal. Bus. & Prof. Code §

21   17500, *et seq*.

22     64.     As a proximate result of Defendant's conduct, Plaintiffs and members of the Class

23   were exposed to these misrepresentations, omissions and partial disclosures, purchased the

24   Devices in reliance on these misrepresentations, omissions and partial disclosures, and suffered

25   monetary loss as a result. They would not have purchased the Devices, or would have paid

26   significantly less for them, and/or would not have upgraded their Devices to iOS 8, had they

27   known the truth regarding the actual storage capacities of the Devices when equipped with iOS

28   8.

FIRST AMENDED CLASS ACTION COMPLAINT

65.     Defendant made such misrepresentations despite the fact that it knew or should have known that the statements were false, misleading, and/or deceptive.

66.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

67.     Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ the above-described practices in advertising the sale of the Devices and promoting iOS 8.

68.     Likewise, Plaintiffs seek an order requiring Defendant to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures.

69.     On information and belief, Defendant has failed and refused, and in the future will fail and refuse, to cease its deceptive advertising practices, and will continue to do those acts unless this Court orders Defendant to cease and desist pursuant to California Business and Professions Code § 17535.

70.     Plaintiffs, individually and on behalf of the Class, seek restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

## COUNT III

### California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, *et seq.*

71.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

72.     Plaintiffs bring this cause of action individually and on behalf of the Purchaser and Upgrader CLRA Subclasses.

73.     The acts and practices described in this Complaint were intended to result in the sale of goods, specifically a cellular phone, in a consumer transaction.

74.     The Defendant's acts and practices violated, and continue to violate, the Consumer Legal Remedies Act ("CLRA") in at least the following respects:

a.      Defendant violated California Civil Code § 1770(a)(5) by representing that Devices and iOS 8 had characteristics, uses, and benefits that they did not have, including representations that they had specific storage capacities when that is not, in fact, the case.

b.      Defendant violated California Civil Code § 1770(a)(9) by advertising the Devices as having specific storage capacities with the intent not to sell them as advertised.

75.     Plaintiffs and the Class are entitled to equitable relief on behalf of the members of the Class in the form of an order, pursuant to Civil Code section 1780, subdivisions (a)(2)-(5), prohibiting Defendant from continuing to engage in the above-described violations of the CLRA, to provide restitution or actual damages in the form of all monies paid for storage capacity not realized, the inflated sale price of the Devices, punitive damages, and any other relief the Court deems proper.  Plaintiffs further seeks reasonable attorneys' fees under Civil Code section 1780(e).

76.     Pursuant to California Civil Code section 1782, on January 8, 2015, Plaintiffs sent a demand letter to Defendant via registered mail.  Defendant refused to respond to the demand letter, making the inclusion of damage claim appropriate under the CLRA.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray:

a.      That this matter be certified as a class action with the Class defined as set forth above under pursuant to Fed. R. Civ. P. 23 and that the Plaintiffs be appointed Class Representatives, and their attorneys be appointed Class Counsel.

b.      That the Court enter an order requiring Defendant to immediately cease the wrongful conduct as set forth above; enjoining Defendant from continuing to conduct business via the unlawful and unfair business acts and practices complained of herein; and ordering Defendant to engage in a corrective notice campaign;

1   c.  That judgment be entered against Defendant for restitution, including

2 disgorgement of profits received by Defendant as a result of said purchases, cost of suit, and

3 attorneys' fees, and injunction; and

4   d.  For such other equitable relief and pre- and post-judgment interest as the Court

5 may deem just and proper.

6            **<u>Jury Demand</u>**

7   Plaintiffs hereby demand a trial by jury.

8

9 Dated:  April 9, 2015     Respectfully submitted,

10           /s/ Jonas P. Mann

11           MICHAEL MCSHANE (SBN 127944)
            JONAS P. MANN (SBN 263314)

12           **AUDET & PARTNERS, LLP**
            221 Main Street, Suite 1460

13           San Francisco, CA 94105
            Telephone: (415) 568-2555

14           Facsimile: (415) 576-1776

15           mmcshane@audetlaw.com
            jmann@audetlaw.com

16

17           CHARLES J. LADUCA
            MATTHEW E. MILLER

18           WILLIAM H. ANDERSON

19           **CUNEO GILBERT & LADUCA LLP**
            507 C Street, NE

20           Washington, DC 20002
            Telephone: (202) 789-3960

21           Facsimile: (202) 789-1813

22           charlesl@cuneolaw.com
            mmiller@cuneolaw.com

23           wanderson@cuneolaw.com

24           JON M. HERSKOWITZ

25           **BARON & HERSKOWITZ**
            9100 S. Dadeland Blvd.

26           Suite 1704
            Miami, Fl. 33156

27           Telephone (305) 670-0101
            Facsimile. (305) 670-2393

28           jon@bhfloridalaw.com

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBERT SHELQUIST
**LOCKRIDGE GRINDAL NAUEN PLLP**
Suite 2200
100 Washington Avenue S
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT