1    MATTHEW D. POWERS (S.B. #212682)
     mpowers@omm.com
2    SARAH H. TRELA (S.B. #293089)
     strela@omm.com
3    O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
4    San Francisco, CA 94111-3823
     Telephone: (415) 984-8700
5    Facsimile: (415) 984-8701

6    SUSAN ROEDER (S.B. #160897)
     sroeder@omm.com
7    O'MELVENY & MYERS LLP
     2765 Sand Hill Road
8    Menlo Park, CA 94025
     Telephone: (650) 473-2600
9    Facsimile: (650) 473-2601

10    Attorneys for Defendant
     APPLE INC.

11

12 <center>**UNITED STATES DISTRICT COURT**</center>

13 <center>**NORTHERN DISTRICT OF CALIFORNIA**</center>

14 <center>**SAN JOSE DIVISION**</center>

| | |
|---|---|
| 15   PAUL ORSHAN, CHRISTOPHER ENDARA, and DAVID HENDERSON, individually, and on behalf of all others similarly situated, | Case No. 5:14-CV-05659-EJD |
| 16 | **DEFENDANT APPLE INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17 | |
| 18          Plaintiffs, | |
| 19     v. | |
| 20   APPLE INC., | Hearing Date: July 16, 2015<br>Time: 9:00 a.m. |
| 21          Defendant. | Judge: Edward J. Davila<br>Courtroom: 4, 5th Floor |
| 22 | Amended Complaint: April 9, 2015 |
| 23 | Trial Date: None set |

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 16, 2015, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Jose Courthouse, located at 280 South 1st Street, Courtroom 4, before the Honorable Edward J. Davila, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an order dismissing all of the claims in plaintiffs' First Amended Class Action Complaint (the "FAC") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Specifically, Apple seeks an order: (1) dismissing the entire FAC because plaintiffs fail to identify any actionable misstatements or omissions; (2) dismissing the entire FAC because plaintiffs fail to meet the heightened pleading standards of Rule 9(b); (3) dismissing plaintiffs' cause of action under the California Consumers Legal Remedies Act for failure to state a claim; and (4) dismissing plaintiffs' claims to the extent that they encompass products not purchased by the plaintiffs. Apple respectfully requests that the Court dismiss the FAC with prejudice.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated: May 15, 2015

O'MELVENY & MYERS LLP
MATTHEW D. POWERS

By: /s/ Matthew D. Powers
       Matthew D. Powers
Attorneys for Defendant
APPLE INC.

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND FACTS ............................................................................................... 5

III.    LEGAL STANDARDS.................................................................................................... 9

IV.     PLAINTIFFS FAIL TO PLEAD NECESSARY ELEMENTS OF THEIR
        FRAUD-BASED CLAIMS............................................................................................ 10

        A.      Plaintiffs Plead No Facts to Support Their Purported "Expectations" About
                the Size of iOS 8. ............................................................................................... 11

        B.      Plaintiffs' New Allegations Are Inconsistent with Apple's Disclosures and
                Defy Common Sense. ......................................................................................... 13

        C.      Apple's iCloud Service Already Provides 5GB of Free Cloud Storage to
                Every Apple User. .............................................................................................. 15

V.      PLAINTIFFS FAIL TO PLEAD THEIR FRAUD-BASED CLAIMS WITH
        PARTICULARITY ....................................................................................................... 15

VI.     SOFTWARE IS NOT COVERED BY THE CLRA......................................................... 18

VII.    PLAINTIFFS CANNOT SUE OVER PRODUCTS THEY NEVER BOUGHT............. 18

VIII.   CONCLUSION .............................................................................................................. 21

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. 20, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 10, 13, 17

*Backhaut v. Apple, Inc.*,
   2014 U.S. Dist. LEXIS 162870 (N.D. Cal. Nov. 19, 2014) .................................. 19

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ................................................................................. 9

*Baltazar v. Apple, Inc.*,
   2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) .................................. 17

*Baltazar v. Apple, Inc.*,
   2011 U.S. Dist. LEXIS 96140 (N.D. Cal. Aug. 26, 2011) ............................ 12, 15

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) ....................................................................... 11, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 10

*Berenblat v. Apple, Inc.*,
   2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) .............................. 11, 15

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................................. 19

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................. 16

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ..................................................... 19

*Contreras v. Johnson & Johnson Consumer Cos.*,
   2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012) .............................. 20

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ....................................................................... 11, 15

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ................................................................................. 10

*Donohue v. Apple Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................. 21

*Ferrington v. McAfee, Inc.*,
   2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) .............................. 18

- ii -

*Hairston v. S. Beach Beverage Co.*,
2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................................................... 20

*Hoey v. Sony Elecs., Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................... 12, 15

*In re Tobacco II*,
46 Cal. 4th 298 (2009) ......................................................... 16

*Ivie v. Kraft Foods Global, Inc.*,
2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ......................................................... 20

*Johns v. Bayer Corp.*,
2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ......................................................... 16, 19, 20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................... 10, 15, 16, 17

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ......................................................... 16, 19

*Lanovaz v. Twinings N. Am., Inc.*,
2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ......................................................... 16

*Larsen v. Trader Joe's Cos.*,
2012 WL 5458396 (N.D. Cal. June 14, 2012) ......................................................... 19, 20

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ......................................................... 17

*Lazebnik v. Apple, Inc.*,
2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ......................................................... 18

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ......................................................... 10

*Low v. LinkedIn*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................... 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................... 18

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................... 16

*McCrary v. Elations Co.*,
2013 WL 6403073 (C.D. Cal. July 12, 2013) ......................................................... 16

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ......................................................... 9, 13

*McMahon v. Take-Two Interactive Software, Inc.*,
2014 WL 324008 (C.D. Cal. Jan. 29, 2014) ......................................................... 18

3

*Meaunrit v. Pinnacle Foods Grp., LLC*,
2010 WL 1838715 (N.D. Cal. May 5, 2010) ........................................................ 19

4

*Mlejnecky v. Olympus Imaging Am. Inc.*,
2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ...................................................... 19

5

*Morgan v. Wallaby Yogurt Co.*,
2014 U.S. Dist. LEXIS 34548 (N.D. Cal. Mar. 13, 2014) .................................... 20

6

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ......................................................................... 10, 13

7

8

*O'Shea v. Epson Am., Inc.*,
2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011) .................................. 12, 15

9

*Oregon v. Legal Servs. Corp.*,
552 F.3d 965 (9th Cir. 2009), *abrogated on other grounds as stated in Bond v.
United States*, 131 S. Ct. 2355 (2011) .................................................................. 18

10

11

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
2010 U.S. Dist. LEXIS 13908 (N.D. Ill. Feb. 8, 2010), *aff'd*, 631 F.3d 436
(7th Cir. 2011) .................................................................................................. 16

12

13

*Princess Cruise Lines, Ltd. v. Superior Court*,
179 Cal. App. 4th 36 (2009) ............................................................................. 16

14

*Reddy v. Litton Indus.*,
912 F.2d 291 (9th Cir. 1990) ............................................................................ 10

15

16

*Rice v. Sunbeam Prods. Inc.*,
2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7, 2013) ...................................... 12, 15

17

*Seely v. White Motor Co.*,
63 Cal. 2d 9 (1965) ....................................................................................... 11, 15

18

19

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) ............................................................................ 10

20

*Smith v. Ford Motor Co.*,
749 F. Supp. 2d 980 (N.D. Cal. 2010) .............................................................. 11, 15

21

22

*Stephenson v. Neutrogena Corp.*,
2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012) .................................. 20

23

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................................. 10, 15, 16

24

*Wang v. OCZ Tech. Grp., Inc.*,
276 F.R.D. 618 (N.D. Cal. 2011) ..................................................................... 20

25

26

*Williamson v. Apple, Inc.*,
2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .................................................. 11, 15

27

28

*Wofford v. Apple Inc.*,
   2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 8, 2011) ...................................................... 18

**<u>STATUTES</u>**

28 U.S.C. § 2072(b) ................................................................................................................ 21

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 9

Fed. R. Civ. P. 23 .................................................................................................................... 20

Fed. R. Civ. P. 9(b) ......................................................................................................... 10, 15

## I.  INTRODUCTION

Plaintiffs' First Amended Class Action Complaint ("FAC") should be rejected as a matter of law.  Just as in their original complaint, plaintiffs have failed to allege facts necessary to support key elements of their claim that they were "misled" about the size of Apple's iOS 8 mobile operating system, and they have omitted other critical (and judicially noticeable) facts that are fatal to their claims of "fraud."  Plaintiffs' claims should be dismissed with prejudice.

As before, plaintiffs contend that it was "misleading" for Apple to advertise certain of its mobile devices as having 8 GB or 16 GB of storage capacity.  (*E.g.*, FAC ¶ 31.)  But plaintiffs still do not (and cannot) dispute that these devices do, in fact, have 8 GB or 16 GB of storage, exactly as advertised.  Like all software ever written, Apple's iOS mobile operating system—which enables these devices to function—uses a portion of the devices' resources, including their storage capacity.  This is not unique to Apple's products.  Every smartphone, tablet, or computer in existence today requires an operating system and other pre-installed software to provide the features customers use on such devices (email, games, playing music and videos, surfing the internet, etc.).  Hardware requires software to function—without an operating system and other supporting applications, plaintiffs' devices would be virtually useless.

Plaintiffs' new allegations in the FAC are somewhat unclear.  On the one hand, plaintiffs continue to base their claims on the size of iOS 8, which they apparently contend was larger than they "expected" it would be (although plaintiffs never explain the basis for those "expectations").  (*E.g.*, FAC ¶¶ 1, 20 ("iOS 8 uses an unexpectedly large percentage of the storage capacity on [8 and 16 GB devices.]").)  But on the other hand, plaintiffs' new allegations also suggest that their entire theory of the case has shifted.  Specifically, they now appear to contend that devices with advertised total capacities (*e.g.*, "16 GB") cannot use *any* of that advertised capacity to run the operating system—and that unless 100% of the device's capacity is available to use as personal data storage for the consumer, the consumer has been "defrauded."  (*E.g.*, *id.* ¶ 18 ("In reliance on the fact that Apple specifically represented that the devices had 16 GB of storage capacity,

Plaintiff Orshan expected that capacity would be available for his personal use.").)[1]

Regardless of what theory plaintiffs settle on, their claims fail as a matter of law and should be dismissed. *First*, plaintiffs never come close to identifying any facts to support their assertion that they "expected" that iOS 8 would require less than 0.6–1.3 GB of additional storage space compared to iOS 7. (*See* FAC ¶ 32.) Plaintiffs do not identify a single statement, by Apple or anyone else, that could support that expectation—much less allege that they personally saw such a statement and relied on it when they bought (or upgraded) their Apple devices. They have not and cannot identify any basis to believe that iOS 8, with its numerous new features and capabilities, would not be 0.6–1.3 GB larger than iOS 7.

*Second*, plaintiffs' assertion that they were entitled to use 100% of their devices' capacities to store personal data makes no sense. iPhones and iPads are not hard drives that customers buy for use solely as a storage medium. Instead, customers buy iPhones and iPads to *use* them—to make phone calls, send email, surf the internet, watch videos, and run a huge variety of software applications. The devices can also store plaintiffs' personal data, of course. But that is hardly their only function, and plaintiffs certainly do not allege that Apple ever claimed (to them or to anyone else) that a full 100% of the total advertised capacity would be available to store plaintiffs' photos, videos, or other personal data. Indeed, Apple already discloses—on the same product websites and packaging that plaintiffs claim they reviewed—that the "actual formatted capacity" of the devices will be "less" than the advertised amounts.[2] Here,

---

[1] Plaintiffs' allegations also appear to be internally inconsistent. If plaintiffs truly contend that selling devices with pre-loaded software constitutes "fraud"—*i.e.*, that a device with an advertised capacity of "16 GB" must provide 100% of that 16 GB to customers to use to store personal data, over and above the capacity needed to run the operating system—that theory, if adopted, would apply to literally every mobile computing device sold this century, including larger capacity devices as well as the many 16 GB iOS 7 devices that these same plaintiffs bought and used before upgrading to iOS 8. (*E.g.*, FAC ¶¶ 16–17, 21.) Of course, iOS 7 also consumed storage space, and plaintiffs' prior devices (like all computers) all suffered from the same "problem" that plaintiffs now claim exists here: they shipped with software that used part of the "advertised" storage capacity. Yet plaintiffs do not contend that the sale of those iOS 7 devices was "fraudulent" or improper in any way.

[2] *E.g.*, Request for Judicial Notice ("RJN") Ex. P, *available at* https://www.apple.com/iphone/compare (iPhone website); Ex. Q, *available at* http://store.apple.com/us/ipad/compare (iPad website); Ex. R, *available at* https://www.apple.com/ipod/compare-ipod-models/ (iPod website); Ex. S (iPhone 6 packaging); Ex. T (iPad 2 packaging); Ex. U (iPod touch packaging). As is shown in the screenshots attached

plaintiffs were entitled to receive devices that had 16 GB of capacity to run the software and applications that make Apple's devices some of the most popular in the world. And that is precisely what plaintiffs received. The fact that an operating system is necessary to make the devices function does not mean that the space it uses is "unavailable," useless, or even unused by the customer; rather, it is an integral part of his or her experience. That is why this action has been described as "one of the more ridiculous lawsuits Apple has been involved in,"[3] and "akin to complaining that a 25x25 hotel room isn't as large as advertised because there's a bed taking up part of the space."[4]

  ***Third***, plaintiffs persist in making allegations that they should know are demonstrably false.[5] For example, they continue to allege that "Apple charges prices ranging from $0.99 to $29.99 per month" for iCloud storage. (*See* FAC ¶ 36.) But as Apple pointed out in its Motion to Dismiss the original Complaint—and as is clearly indicated on the iCloud website—those prices apply only to *upgraded* storage. In fact, Apple's iCloud storage service provides a full 5 GB of storage to every Apple customer free of charge.[6] In other words, through iCloud, Apple already gives customers *more* free storage than plaintiffs contend is used by iOS 8. Plaintiffs also

---

to Apple's Request for Judicial Notice, the "Capacity and Price[1]" of each device is listed with a footnote that reads: "1GB = 1 billion bytes; actual formatted capacity less." (*Id.*)

[3] RJN Ex. F, "Apple Sued Over iOS 8 Hogging Storage: Does the Class Action Lawsuit Have Any Merit?", *Tech Times* (Jan. 5, 2015), *available at* http://www.techtimes.com/articles/24528/20150105/apple-sued-over-ios-8-hogging-storage-class-action-lawsuit.htm.

[4] RJN Ex. G, "Apple singled out for iOS 8 storage space on 16GB iPhone vs Samsung," *Stabley Times* (Jan. 4, 2015), *available at* http://www.stableytimes.com/news/apple-singled-ios-8-storage-space-16gb-iphone-6/23237 ("Apple is being sued for the fact that its iOS 8 system software takes up a portion of the advertised storage space on the 16GB iPhone 6 model, an odd occurrence in light of the fact that every modern smartphone, tablet and computer this century has shipped under the same conditions . . . .").

[5] Plaintiffs' allegation that Apple "did not adequately disclose in conjunction with upgrades to iOS 8 the additional and substantial storage capacity that would be consumed by the upgrade" (*e.g.*, FAC ¶ 18) is also blatantly false. In fact, every customer who upgraded their mobile device wirelessly was very clearly told during the upgrade process that iOS 8 would require a not insignificant amount of space to download and install the upgrade. *See* RJN Ex. W, *available at* https://support.apple.com/en-us/HT204204 (installation screen prominently states that iOS 8 download will be "1.9 GB").

[6] RJN Ex. X, *available at* http://www.apple.com/icloud (pricing plans); Ex. Y, Nick Bilton, "Apple Reveals iCloud Details and Pricing," *N.Y. Times*, Aug. 1, 2011 ("Apple said that customers would be given 5 gigabytes of storage for free.") (available at http://gadgetwise.blogs.nytimes.com/2011/08/01/apple-reveals-icloud-details-and-pricing).

continue to speculate that "[it] does not appear that Apple permits users of its devices to access cloud storage from other vendors." (*See id.* ¶ 36.) Plaintiffs' conjecture is misplaced. If plaintiffs had bothered to visit Apple's online App Store, they would have learned that many popular cloud storage services *are* available to iOS 8 users.[7]

In essence, plaintiffs contend that Apple committed "fraud" by "failing to disclose" something that has been a basic feature of all computing devices for decades, and their apparent assertion that as much as 4 GB is "too much" space for a cutting-edge, feature-filled operating system is untethered from reality. Information about the size of iOS 8 was widely available, including in disclosures from Apple itself[8] and from the same articles that plaintiffs cite in their FAC.[9] And plaintiffs certainly do not allege that the "size" of iOS 8 is out of line with the rest of the industry. Nor could they: iOS 8 is actually <u>more</u> storage-efficient than competitors' operating systems. As plaintiffs' own cited articles make clear, "Apple's smartphones are actually among the most frugal in using up storage with initial [software] installs . . . ."[10]

---

[7] *See, e.g.*, RJN Ex. Z, *available at* https://itunes.apple.com/us/app/dropbox/id327630330?mt=8 (Dropbox app); Ex. AA, *available at* https://itunes.apple.com/us/app/google-drive-free-online-storage/id507874739?mt=8 (Google Drive app). *See also* RJN Ex. BB, *available at* http://www.forbes.com/sites/eliseackerman/2014/12/31/ios-8-lawsuit-may-be-on-shaky-ground/# ("[P]laintiff's lawyers are on shaky ground when they assert that Apple doesn't appear to permit users of its devices to access cloud storage from other vendors. Apparently, they've never heard of Instagram, Dropbox, Flickr or Google +.").

[8] *See supra* notes 2 and 5; *see also* RJN Ex. H, "How OS X and iOS Report Storage Capacity, Learn Why the Storage Capacity Stated in a Product's Specification May Be Lower Than What Is Reported by OS X or iOS" (Nov. 27, 2014), *available at* https://support.apple.com/enus/HT201402 ("The storage media in your Apple product, like all storage devices, uses some of its capacity for formatting, so actual capacity available for applications and files will be less. In addition, other factors, such as preinstalled systems or other software and media, will also use part of the available storage capacity.").

[9] *See* articles cited in FAC ¶¶ 30, 32, 34. Indeed, the same article cited in Paragraph 34 of the FAC explicitly discusses the space required to upgrade to iOS 8. (*See* FAC ¶ 32 (citing http://arstechnica.com/apple/2014/09/ios-8-thoroughly-reviewed/2/#install)( "On average, it looks like you'll give up around 740MB on iPhones and 1.03GB on iPads just to install the update. Such is the price of progress.").) That article was published the same date iOS 8 was released, September 17, 2014—*i.e.*, long *before* Plaintiffs Orshan and Henderson claim to have upgraded their devices in "October 2014" and "late 2014." (FAC ¶¶ 37, 39.)

[10] *See* FAC ¶ 30 (citing article from www.macworld.co.uk stating "Apple's smartphones are actually among the most frugal in using up storage with initial installs . . . ."). *See also, e.g.*, RJN Ex. I, *available at* http://www.phonearena.com/news/16GB-Samsung-Galaxy-S5-actually-offers-10.7GB-of-usable-storage_id53383 (noting that a 16 GB Samsung Galaxy S5 has 10.7 GB of available storage); Ex. J, *available at* http://www.gottabemobile.com/2014/10/12/5-tips-for-moto-x-2014-buyers (on the Moto X 2014, "only 10 of that 16 GB is actually usable"); Ex. K, *available at* http://www.fonearena.com/blog/109524/lg-g3-review-ambitiously-regressive.html (on a 16 GB

Accordingly, plaintiffs' claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") should be dismissed with prejudice. To the extent that plaintiffs allege any sort of "misrepresentation," their claims fail because the only affirmative representations plaintiffs identify—that the devices have 16 GB of capacity—are unquestionably true. Plaintiffs' "omission" claims fail because they apparently depend on purported customer "expectations" that are baseless and unreasonable. And because plaintiffs' allegations focus on the iOS 8 software, their CLRA claim also fails because software is not a "good or service" within the meaning of that statute. Finally, plaintiffs' allegations should be dismissed to the extent they seek to pursue claims over products these plaintiffs never bought.

Under the circumstances, no reasonable consumer could have been "misled" or injured by anything Apple did or failed to do. Apple respectfully requests that the Court dismiss the FAC with prejudice.

## II.    BACKGROUND FACTS

Plaintiffs filed their original Complaint in this case on December 30, 2014. (Dkt. No. 1.) In that Complaint, all of plaintiffs' claims were based on their assertion that iOS 8 was bigger than consumers "expected" it to be. (Compl. ¶¶ 1, 3 ("iOS 8 uses an unexpectedly large percentage of the storage capacity on 8 GB and 16 GB iPhones, iPads and iPods.").) Specifically, plaintiffs contended that Apple had violated the UCL, FAL, and CLRA because (according to

---

LG G3, ("[t]here's about 11 GB of free space available to the user"); Ex. L, *available at* http://blogs.which.co.uk/technology/phones-3/phone-storage-compared-samsung-s4-still-in-last-place ("Apple's more affordable (relatively) iPhone, the 5c, is the most generous of the 16GB phones we're [*sic*] recently tested, giving you 12.6GB of memory (79%) to play with."); Ex. M, *available at* http://appleinsider.com/articles/15/01/04/despite-lawsuit-apples-ios-8-storage-is-actually-far-more-efficient-than-googles-android-samsungs-galaxy-microsoft-windows ("Sony's Xperia Z1, HTC's One Mini and LG's G2 flagship had between 10.3GB and 11.4GB free, while the most popular Android flagship of the year, Samsung's Galaxy S4, left just 8.56GB free to the user. That's right: the Galaxy S4 that Samsung advertised as having '16GB' actually left users with just slightly more available space than Apple's low end 8GB iPhone."); Ex. N, *available at* http://seekingalpha.com/article/2796065-the-storage-lawsuit-against-apple-is-beyond-frivolous ("the amount of usable storage on a 16GB iPhone, approximately 13GB, is significantly higher than most, if not all of Apple's competitors' 16GB smartphones."); Ex. O, *available at* http://tech.thaivisa.com/iphone-storage-better-than-most/1665 ("[I]t turns out that Apple is one of the most efficient users of storage space on its devices like the iPhone and iPad—much more so than Android phones, Samsung and especially Microsoft.").

plaintiffs) iOS 8 used "between 600 MB and 1.3 GB" *more* storage than iOS 7 and that this difference was more than consumers "could reasonably anticipate." (*Id.* ¶ 26.) Apple moved to dismiss the original Complaint on March 25, 2015 (Dkt. No. 14), and rather than responding to that Motion, plaintiffs filed their FAC on April 9, 2015. (Dkt. No. 18.)

With few exceptions, plaintiffs' new FAC makes the same allegations as the original Complaint—and suffers from the same flaws—highlighting the fact that leave to amend would be futile. Again, plaintiffs do not contend that any of Apple's statements about the devices are actually false—they appear to acknowledge (as they must) that the devices do, in fact, offer 8 GB or 16 GB of storage. Instead, they assert (as they did before) that Apple "fails to disclose to consumers that as much as 23.1% of the advertised storage capacity of" 8 GB or 16 GB iPhones, iPads and iPods "will be consumed by iOS 8 and unavailable for consumers when consumers purchase [d]evices that have iOS 8 installed." (FAC ¶ 2.) And although plaintiffs further contend that "Apple exploits the discrepancy between represented and available capacity" by "offering the purchaser the opportunity to purchase 'iCloud' cloud storage," for which Apple allegedly "charges prices ranging from $0.99 to $29.99 *per month*" (*id.* ¶ 36 (emphasis in original)), plaintiffs never claim they have *personally* reached or approached the storage capacity of their devices, and do not claim to have purchased iCloud storage from Apple.

Plaintiffs *do* allege—just as they did in their original Complaint—that iOS 8 uses "between 600 MB and 1.3 GB" more storage than iOS 7 and that this difference is more than "a consumer could reasonably anticipate." (FAC ¶ 32; *see also, e.g.*, *id.* ¶ 1 ("iOS 8 uses an unexpectedly large percentage of the storage capacity on 8 GB and 16 GB iPhones, iPads, and iPods . . . ."); ¶ 24.) Each of the plaintiffs also alleges that before they bought their devices, they "viewed various materials, including Apple's website . . . and packaging materials in the store . . . which specifically stated that the [d]evices were available with 8 GB or 16 GB of storage capacity." (*Id.* ¶¶ 18, 20, 23.) And in allegations that are new to the FAC, plaintiffs Orshan and Henderson also allege that they "pa[id] more to acquire devices with 16GB of storage capacity (rather than the less expensive 8GB of storage capacity) because [they] wanted the greater capacity to store [their] personal data" and that they each "expected that [16 GB] would be

available for [their] personal use." (*See id.* ¶¶ 18, 23.)

But just as before, plaintiffs do not allege any facts—as opposed to conclusory boilerplate—to explain the basis of their supposed "expectations" about the size of iOS 8. They still do not identify any representations from Apple about the relative sizes of iOS 7 and iOS 8. And their supposed "expectations" about the size of iOS 8 are inconsistent with Apple's actual disclosures. Every customer who upgraded their mobile device wirelessly was told that the download and installation of iOS 8 would require additional space. (*See* RJN Ex. W.) And as plaintiffs themselves highlight, Apple prominently advertised iOS 8 "as 'the biggest iOS release ever.'" (*See* FAC ¶ 33.)[11] No reasonable consumer could have reviewed Apple's marketing for iOS 8 and concluded that iOS (and its many new features) would not require any additional space to install.

In their FAC, plaintiffs also appear to take the new position that since Apple advertised its devices as having "16 GB" of capacity, they were entitled to devices that had a full 16GB of free capacity to store their personal data, over and above the portion needed to run the operating system. (*See, e.g.*, FAC ¶¶ 18, 20, 23.) But again, plaintiffs do not identify any representations from Apple (or from anyone else) that even suggest that the devices would be delivered without pre-installed software (it would be absurd to do so), or that Apple ever did or said anything to suggest that "16 GB" really meant "16 GB reserved for you to store your personal files" or "16 GB free and clear of the operating system and pre-installed software." Indeed, the few specific facts pled in the FAC suggest precisely the opposite. The same articles plaintiffs cite in their FAC, for example, show that available storage capacities of Apple's devices were widely discussed on technology blogs and in the press—devices' available capacities have been a regular feature of product reviews for the past several years.[12] In fact, Apple *affirmatively disclosed* that

---

[11] *See* RJN Ex. V, *available at* https://www.apple.com/ios (declaring, in huge font, that iOS 8 is "the biggest iOS release ever" and offers "big updates to apps you use every day" and "exciting new connections between apps and between devices.").

[12] *E.g.*, FAC ¶ 30 (citing www.macworld.co.uk article that states: "a 16GB iPhone 5s offers 12.2GB of true capacity, and a 16GB iPhone 5c allows 12.6GB" and www.mcelhearn.com article that states: "The real capacity of the [16 GB] iPad is less than 13 GB."). *See also* RJN Ex. A, *available at* http://www.pcadvisor.co.uk/buying-advice/apple/3343192/new-ipad-is-16gb-enough-storage ("It's also important to remember that before you begin filling up your iPad, the operating

the actual formatted capacities of its devices would be "less" than the advertised amounts. On every device package and on its website—which plaintiffs contend they reviewed before making their purchases—where Apple lists devices' capacities, it includes a disclaimer that the "actual formatted capacity [is] less."[13]

Next, for all their rhetoric about Apple's alleged "omissions," it is plaintiffs who have avoided discussing a number of critical (and judicially noticeable) facts that are fatal to their claims. As discussed above, plaintiffs continue to claim that "Apple charges prices ranging from $0.99 to $29.99 *per month*" for iCloud storage (*see* FAC ¶ 36)—when, in fact, the first 5 GB of iCloud storage is free, and thus Apple already provides customers with more than enough free cloud storage to "compensate" for the ~3–4 GB of capacity that plaintiffs contend is used by iOS 8.[14] Second, plaintiffs also repeat their speculative allegation that "[it] does not appear that Apple permits users of its devices to access cloud storage from other vendors" (*see id.*)—when a quick trip to Apple's online App Store shows that many popular cloud storage services are available at no cost to iOS 8 users.[15] And for all their complaining about the "size" of iOS 8, plaintiffs conveniently fail to mention that iOS 8 is generally *smaller* and uses *less* space than competitors' operating systems.[16]

Finally, plaintiff Henderson's personal allegations—which were newly added to the FAC—are somewhat unclear. In large part, Henderson appears to base his claims on allegations about the size of iOS 8 that are virtually identical to those of the other plaintiffs. (*Compare* FAC

---

system and related files will consume a certain amount of storage capacity. Expect to find around 14GB of usable storage for your files on a 16GB iPad, for example."); Ex. B, *available at* http://store.apple.com/us/question/answers/iphone/how-much-space-is-initially-available-for-storage-on-16gb-iphone-6/QDUYDHYKJCUXKPUDF ("The formatted capacity of a 16 GB iPhone is usually roughly 13GB."); Ex. C, *available at* http://arstechnica.com/civis/viewtopic.php?t=1162799 (discussing how a 16 GB iPhone 4s only had about 13.5 GB of storage available to users); Ex. D, *available at* http://heresthethingblog.com/2011/11/04/iphone-4s-running-storage-reader/ (iPhone 4s "reserves about 3 GB of storage for the iOS operating system itself."); Ex. E, *available at* http://www.macworld.com/article/1163799/iphone_buying_guide.html (on the 8 GB iPhone 4, "the phone's operating system and stock apps eat up some of that storage" and leave "no more than 7GB of usable storage").

[13] *E.g.*, RJN Exs. P, Q, R, S, T, and U.

[14] *See supra* note 6.

[15] *See supra* note 7.

[16] *See supra* note 10.

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-05659-EJD

¶ 23 *with id*. ¶¶ 18, 20.)  However, he also apparently contends that iOS 8 contributed to problems he alleges he was experiencing with his iPad's performance.  (*Id.* ¶¶ 22, 39.)  That said, Henderson does not appear to actually assert any claims based on those alleged problems.  For example, Henderson does not identify any statements that he relied on related to iOS 8's performance, and the generic allegations in plaintiffs' causes of action do not appear to apply to any of Henderson's alleged performance issues.  (*Compare, e.g.*, FAC ¶¶ 23, 26, *with id*. ¶¶ 52–55, 62–65, 73–74.)  Moreover, the "omissions" Henderson identifies only address the size of iOS 8, and, in any event, are identical to those alleged by the other named plaintiffs.  (*Compare, e.g.*, FAC ¶ 23 ("Plaintiff Henderson purchased his iPad in reliance on Defendant's claims . . . that the device came equipped with 16 GB of storage space . . . [and he] expected that capacity would be available for his personal use.") *with id*. ¶¶ 18, 20 (same).)  In short, Henderson does not appear to assert any causes of action based on the performance—as compared to the size—of iOS 8.[17]

Based on their allegations, plaintiffs continue to assert claims under California's UCL, FAL, and CLRA, and, as they did before, seek certification of four nationwide classes under those California statutes, including (a) "Upgrade" classes covering all U.S. consumers who bought 8/16 GB mobile devices that were originally sold with an earlier iOS version (and then upgraded to iOS 8), as well as (b) "iOS 8 Purchaser" classes, which cover U.S. consumers who bought 8/16 GB devices "with iOS 8 pre-installed . . . ."  (*Id.* ¶ 42.)

## III.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  And while the Court must accept well-pled facts as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss . . . ." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Accordingly, the Court should not assume the truth of legal conclusions merely

---

[17] If Henderson's claims *are* based on his alleged "performance" issues, then his claims are both insufficiently pled and inconsistent with those of the classes he purports to represent.  (*See, e.g.*, FAC at 42 (defining the classes).)

because they are pled in the form of factual allegations, nor accept as true allegations contradicted by judicially noticeable facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). As the Supreme Court has cautioned, "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Next, fraud-based UCL, FAL, and CLRA claims must also meet the heightened pleading standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Rule 9(b) standard applies with equal force to allegations of fraud by omission. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009). Under Rule 9(b), plaintiffs must plead the time, place, and content of the alleged fraudulent representation or omission—"the who, what, when, where, and how"—as well as facts demonstrating their reliance on the allegedly fraudulent conduct. *Id.* at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Finally, "[a] district court does not err in denying leave to amend where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (a district court need not grant leave to amend when "it determines that the pleading could not possibly be cured by the allegation of other facts.") (citations and internal quotation marks omitted). Any such amendment "may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus.*, 912 F.2d 291, 297 (9th Cir. 1990) (citation omitted).

## IV.   PLAINTIFFS FAIL TO PLEAD NECESSARY ELEMENTS OF THEIR FRAUD-BASED CLAIMS

As noted above, plaintiffs' position in the new FAC is somewhat unclear. Their original allegations—which they continue to make in the FAC—focus on the size of iOS 8, which they

contend was larger than customers could have "reasonably anticipated." (*E.g.*, FAC ¶ 32 ("Apple fails to disclose that upgrading from iOS 7 to iOS 8 will cost a Device user between 600 MB and 1.3 GB of storage space . . . .").) But plaintiffs' new allegations seem to suggest that their quarrel is not necessarily with iOS 8, but with the concept of pre-loaded software itself—*i.e.*, that plaintiffs contend that selling a device with any pre-loaded software (including the operating system) is an act of "fraud." (*See, e.g.*, *id.* ¶¶ 18, 20, 23 (plaintiffs "expected that [the full 16 GB] would be available for [their] personal use.").) Whatever claim plaintiffs are asserting, their claims all rely on purported "expectations" that lack factual support and that are directly contrary to the disclosures Apple actually made.

### A. Plaintiffs Plead No Facts to Support Their Purported "Expectations" About the Size of iOS 8.

Plaintiffs' contention that iOS 8 was larger than they "expected" it to be should be rejected because they have not pled any facts that could possibly support the assertion that they "expected" that iOS 8 would require less than 0.6–1.3 GB of additional storage space compared to iOS 7. (*See* FAC ¶ 32.) If that is plaintiffs' theory, it fails as a matter of law.

Consumers who claim to have been "deceived" by some aspect of a product "must have had an expectation or an assumption about the matter in question." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (citing *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006)).[18] And since plaintiffs' claims that iOS 8 was "too big" depend on their supposed "expectations" about the size of iOS 8, plaintiffs must allege *facts* to justify those "expectations"—*i.e.*, identify the specific statements or other facts that led them to reasonably believe that iOS 8 would require less than 0.6–1.3 GB of additional storage space (compared to iOS 7). *See Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6–7 (N.D. Cal. Sept. 4, 2012) (rejecting claim that Apple "failed" to disclose that "ultradurable" and "scratch resistant" iPhone

---

[18] *See also Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052, at *26 (N.D. Cal. Apr. 7, 2010) (alleged consumer expectations about product must be reasonable); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 988 (N.D. Cal. 2010) (consumer can "be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will") (*citing Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)).

screens might break because reasonable consumers know that even reinforced glass can break); *O'Shea v. Epson Am., Inc.*, 2011 U.S. Dist. LEXIS 85273, at \*29 (C.D. Cal. July 29, 2011) (rejecting alleged expectation that printers would operate like competitors' machines where alleged expectations had no basis in the manufacturer's statements or warranties). That is particularly true here, where the information plaintiffs apparently contend was "omitted" was widely known[19] and was certainly not "concealed," by Apple or anyone else. *See Baltazar v. Apple, Inc. ("Baltazar II")*, 2011 U.S. Dist. LEXIS 96140, at \*13–15 (N.D. Cal. Aug. 26, 2011) (allegation that iPad advertisement showed outdoor use did not support alleged expectation that iPad would never overheat when used in direct sunlight over time); *Rice v. Sunbeam Prods. Inc.*, 2013 U.S. Dist. LEXIS 7467, at \*19–20 (C.D. Cal. Jan. 7, 2013) (alleged expectation that the outside of a Crock-Pot would not get hot was unreasonable); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (one-year express warranty was not "a representation that the VAIO notebook [computers] are defect-free, such that a failure to disclose the alleged soldering defect would constitute concealment").

In fact, the statements that Apple did make about iOS 8 strongly suggested—if not outright declared—that iOS 8 was significantly *larger* than iOS 7. Apple's launch page for iOS 8 proudly declares, in a huge font, that iOS 8 is "[t]he biggest iOS release ever," with "big updates to apps you use every day," "a whole new way to share content with your family," and "exciting new connections between apps and between devices." (*See* RJN Ex. V, *available at* https://www.apple.com/ios.) No one who reviewed Apple's website or its statements about iOS 8 could possibly "expect" that iOS 8 (the "biggest iOS release ever") would not be any larger than prior versions of iOS. Nor do plaintiffs allege that Apple's iOS uses substantially "more" storage space than the operating systems on competitors' devices. Instead, as plaintiffs' own cited articles note, "Apple's smartphones are actually among the most frugal in using up storage . . . ." (FAC ¶ 30, *citing* David Price, *What's an iPhone or iPad's True Storage Capacity?*, MacWorld

---

[19] *E.g.*, FAC ¶ 32 (citing http://arstechnica.com/apple/2014/09/ios-8-thoroughly-reviewed/2/#install ("On average, it looks like you'll give up around 740MB on iPhones and 1.03GB on iPads just to install the [iOS 8] update. Such is the price of progress.")). *See also supra* notes 3 and 4.

DEF. APPLE'S MOTION TO DISMISS FAC
NO. 5:14-CV-05659-EJD

(Apr. 14, 2014).)[20] And, of course, every consumer who upgraded to iOS 8 wirelessly was actually told that the download and installation of iOS 8 would require available memory. (RJN Ex. W, *available at* https://support.apple.com/en-us/HT204204.)

In short, plaintiffs do not allege any facts that could lead a consumer, much less a reasonable consumer, to conclude that upgrading to iOS 8 would require less than 0.6–1.3 GB. Plaintiffs cannot simply rely on generic boilerplate to support their alleged "expectations." Instead, they must plead specific facts, *i.e.*, "non-conclusory 'factual content,'" to justify their claims. *Moss*, 572 F.3d at 969 (citing *Iqbal*, 556 U.S. at 678); *McGlinchy*, 845 F.2d at 810 ("conclusory allegations without more are insufficient to defeat a motion to dismiss . . . ."). They have not come close to doing so.

**B.     Plaintiffs' New Allegations Are Inconsistent with Apple's Disclosures and Defy Common Sense.**

Plaintiffs' new claim that they were entitled to use 100% of their devices' capacities to store personal data (if that is their new position) fails for the same reasons: everything Apple ever said about the devices is absolutely true, and plaintiffs' new position is fundamentally inconsistent with Apple's disclosures—and with common sense.

Again, iPhones, iPads, and iPods are not hard drives. Customers do not buy them solely because of their storage capacity. They buy them to play games, send email, surf the internet, watch videos, and run the more than one million different applications that are available on the App Store. To be sure, the devices are advertised as having a specific capacity, including "8 GB" and "16 GB." But that is exactly what the devices provide—there is no dispute that plaintiffs' devices actually delivered 16 GB of storage capacity. Instead, plaintiffs' complaint is that since the operating system—which, of course, is needed for the devices to function—also uses a portion of that 16 GB, "only" 80% or so is (allegedly) left to store customers' personal data. But Apple never promised that 100% of the total 16 GB capacity would be available to store plaintiffs' personal data (as opposed to running the operating system and other applications).

---

[20] *See also supra* note 10.

Indeed, these plaintiffs apparently knew that the operating system would use at least *some* storage space; for example, they do not contend that the sale of devices with iOS 7 or any predecessor system—which also consumed storage space—was fraudulent in any way. Again, plaintiffs were entitled to receive devices that had 16 GB of capacity to run the software and applications that make Apple's devices some of the most popular in the world. And that is what they got.

Indeed, plaintiffs' new arguments are particularly absurd in light of the disclosures they reviewed before buying their products. Here, each plaintiff acknowledges that he read Apple's website and product packaging before making his purchases. (*See* FAC ¶¶ 18, 20, 23 (each plaintiff bought products "in reliance on [Apple's] claims, on its website, advertisements [and] product packaging . . . that the devices came equipped with 16 GB of storage space.").) Those same webpages include a disclaimer that the actual formatted capacity of the device *will be less than the total advertised storage space*. (*See, e.g.*, RJN Ex. P, *available at* https://www.apple.com/iphone/compare ("1GB = 1 billion bytes; **actual formatted capacity less.**") (emphasis added). *See also* RJN Exs. Q, R (same).) This disclaimer is also included on the products' packaging (which again, plaintiffs all contend they also reviewed and "relied" upon). (RJN Exs. S, T, U.) Plaintiffs cannot simultaneously contend that they read and "relied" on the website and product packaging (both of which have this disclaimer) yet also contend they believed they would be able to use the full 16 GB to store their personal data—not when they were all explicitly told that the "actual formatted capacity [was] less."

In fact, other than plaintiff Henderson—whose claims are discussed above in section II— plaintiffs never actually contend that their own devices failed to perform as expected. Of course, they do contend that they expected their devices to have "16 GB" of storage. But plaintiffs do <u>not</u> allege that they had any particular understanding about what they would be able to store on their "16 GB" devices—much less that they were unable to do so because of the space used by iOS 8. In fact, none of the plaintiffs contend that they <u>ever</u> ran out of storage space on their devices. Rather, their claim is that they paid more for 16 GB devices because they "wanted the greater capacity to store [] personal data." (FAC ¶¶ 18, 23.) But of course that is what they received; the 16 GB devices do, in fact, provide significantly "greater capacity to store [] personal data" than

the 8 GB alternatives.

Again, consumers who claim to have been "deceived" by some aspect of a product must plead facts demonstrating their "expectation or . . . assumption about the matter in question." *Daugherty*, 144 Cal. App. 4th at 838 (citing *Bardin*, 136 Cal. App. 4th at 1275).[21] And a consumer "can be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Smith*, 749 F. Supp. 2d at 988 (citing *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)). But here, plaintiffs' claims are based on "expectations" that lack any identified factual basis and are inconsistent with Apple's own disclosures.

## C. Apple's iCloud Service Already Provides 5GB of Free Cloud Storage to Every Apple User.

As discussed above, plaintiffs have not alleged facts to show that they "expected" iOS 8 to use less space (they cannot) or that any reasonable consumer could have "expected" that Apple's devices would ship without any pre-loaded software. Even if they had, their claims would still fail because Apple's free iCloud service more than makes up for any capacity used by iOS 8. Here, plaintiffs allege that iOS 8 can use "as much as 3.7 GB" of a device's maximum storage capacity. (FAC ¶ 31.) But, again, the first 5 GB of iCloud storage is provided free. (*See* RJN Ex. X.)

## V. PLAINTIFFS FAIL TO PLEAD THEIR FRAUD-BASED CLAIMS WITH PARTICULARITY

As discussed above, there are critical elements of plaintiffs' UCL, FAL, and CLRA claims they have failed to plead *at all*. But even if the Court concludes plaintiffs have identified some actionable statement or omission, their claims must still be dismissed because plaintiffs have failed to satisfy Rule 9(b). Fed. R. Civ. P. 9(b). *See Vess*, 317 F.3d at 1103 ("Rule 9(b) applies to 'averments of fraud'"); *Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to UCL and CLRA claims);

---

[21] *See also, e.g.*, *Berenblat*, 2010 U.S. Dist. LEXIS 46052, at *26; *Williamson*, 2012 WL 3835104, at *6–7; *O'Shea*, 2011 U.S. Dist. LEXIS 85273, at *29; *Baltazar II*, 2011 U.S. Dist. LEXIS 96140, at *13–15; *Rice*, 2013 U.S. Dist. LEXIS 7467, at *19–20; *Hoey*, 515 F. Supp. 2d at 1104.

1  *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963–64 (N.D. Cal. 2013) (applying Rule 9(b) to

2  CLRA, FAL, and UCL claims).  Since all of plaintiffs' claims are based in fraud (*see* FAC ¶¶ 52–

3  57, 62–65, 73–74),[22] Rule 9(b) requires that plaintiffs plead the time, place, and specific content

4  of each alleged misrepresentation or omission—along with facts demonstrating their personal

5  reliance on those statements or omissions.  *See Kearns*, 567 F.3d at 1124–25.  Thus, plaintiffs

6  must specifically identify the circumstances of the alleged "fraud"—the who, what, when, where,

7  and how of their claims—as well as circumstances demonstrating their own reliance on the

8  statements or omissions.  *Vess*, 317 F.3d at 1106; *see also Kearns*, 567 F.3d at 1124.[23]

9      Here, that means that plaintiffs must plead what the "false" statement actually was and

10  how they personally relied on that misrepresentation.  *See In re Tobacco II*, 46 Cal. 4th 298, 326

11  (2009) ("[the UCL] imposes an actual reliance requirement on plaintiffs prosecuting a private

12  enforcement action under the UCL's fraud prong"); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

13  310, 326–27 (2011) (applying *Tobacco II* to UCL and FAL misrepresentation claims); *Princess

14  Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (applying *Tobacco II* to

15  CLRA actions).[24]  Vague references to Apple's advertising (*see* FAC ¶¶ 27–28) are insufficient,[25]

16

---

17  [22] Plaintiffs' additional characterization of Apple's conduct as "unfair" does not save them from
Rule 9(b)'s requirements.  "[I]f adding an allegation of 'unfairness' to every allegation of fraud

18  required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer
fraud cases would be pleaded with these words and be subject to the less stringent standard."

19  *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2010 U.S. Dist. LEXIS 13908, at *20 (N.D. Ill.
Feb. 8, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011); *see also Kearns*, 567 F.3d at 1126.

20  [23] To meet Rule 9(b)'s requirements with respect to their omission claims, plaintiffs "must
describe the content of the omission and where the omitted information should or could have been

21  revealed, as well as provide representative samples of advertisements, offers, or other
representations that plaintiff relied on to make her purchase and that failed to include the

22  allegedly omitted information."  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D.
Cal. 2009).

23  [24] Plaintiffs are residents of Florida, but they sue for violations of California statutes.  As pled,

24  their California claims should be dismissed as a matter of law, and Apple takes no position at this
time as to what state's law governs the parties' dispute (and reserves all rights in that regard).

25  [25] *See Kearns*, 567 F.3d at 1126 (plaintiff did not specify "which sales material he relied upon in
making his decision to buy"); *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 675929, at *2 (N.D.

26  Cal. Feb. 25, 2013) (striking as immaterial claims related to a defendant's website because a
plaintiff "cannot expand the scope of his or her claims to include . . . advertisements not relied

27  upon."); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (same); *McCrary
v. Elations Co.*, 2013 WL 6403073, at *7–8 (C.D. Cal. July 12, 2013) (dismissing claims based

28  on statements on defendant's website when plaintiff only relied on product packaging).

as are boilerplate allegations that everyone "relied" on those undefined statements made in different places at different times.[26]  *See Baltazar v. Apple, Inc.*("*Baltazar I*"), 2011 U.S. Dist. LEXIS 13187, at *6 (N.D. Cal. Feb. 10, 2011) ("Plaintiffs must identify the *particular* commercial or advertisement upon which they relied and must describe with the requisite specificity the content of that particular commercial or advertisement.")  (emphasis added).

In the FAC, plaintiffs apparently contend that they reviewed and relied on a wide array of materials, including Apple's "website, advertisements, product packaging, and other promotional materials."  (*See* FAC ¶ 18; *see also id*. ¶¶ 27–28, 62.)  But the only "representations" in those materials that plaintiffs identify with any specificity are the capacities of the devices, *i.e.*, "8 GB" and "16 GB."  (FAC ¶ 15; *see also id*. ¶¶ 18, 20, 23, 25, 27.)  As it stands, plaintiffs' generic recitations of "reliance" or "expectation" based on unspecified statements on a website or a product package are insufficient as a matter of law.  *See Kearns*, 567 F.3d at 1126 (plaintiff failed to specify "what the television advertisements or other sales material specifically stated . . . when [plaintiff] was exposed to them or which ones he found material . . . [and] which sales material he relied upon in making his decision to buy").

Plaintiffs' lack of specificity is particularly problematic for their assertions about the "expected" size of iOS 8.  As discussed above, although plaintiffs apparently contend that Apple "ma[de] misrepresentations" to them and to other owners of iOS 7 devices that "cause[d] these consumers to 'upgrade'" to iOS 8 (FAC ¶ 32), plaintiffs never explain *what* specific statements they personally saw or heard about iOS 8, *when* or *where* they saw them, or *which* (if any) statements induced them to upgrade to iOS 8 (or purchase an iOS 8 device.)  Similarly, although plaintiffs claim that "[n]either Plaintiff[s] . . . nor any reasonable consumer, expected" the difference between the "advertised and available capacity of the Devices they purchased" (*id*. ¶ 24), they never identify facts that could explain the basis for those "expectations."

---

[26] *See Iqbal*, 556 U.S. at 678 (court need not assume truth of conclusory allegations); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (plaintiffs failed to allege "that they saw, read, or in any way relied on" ads; "nor [did] they allege that they entered into the transaction as a *result* of [the] advertisements") (emphasis in original); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012) ("Plaintiffs never alleged reliance on any specific representation or advertising in registering for or using the LinkedIn website").

## VI.    SOFTWARE IS NOT COVERED BY THE CLRA

According to plaintiffs, "[t]his case challenges storage capacity misrepresentation and omissions relating to use of Apple's iOS 8 operating system."  (FAC ¶ 1.)  But "Apple's iOS 8 operating system" is software, and software is not a "good" for purposes of the CLRA. *Ferrington v. McAfee, Inc*., 2010 U.S. Dist. LEXIS 106600, at *56–57 (N.D. Cal. Oct. 5, 2010) (excluding downloaded software from CLRA claims); *Lazebnik v. Apple, Inc*., 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (iTunes television show "Season Pass is not a 'good' within the meaning of the CLRA because . . . it is either software or a license, not a 'tangible chattel.'"); *McMahon v. Take-Two Interactive Software, Inc.*, 2014 WL 324008, at *10 (C.D. Cal. Jan. 29, 2014) ("[S]oftware and online services fall outside the 'goods' and 'services' covered by the CLRA").  In addition, plaintiffs cannot establish an upgrade class under the CLRA because the iOS 8 upgrade is free. *Wofford v. Apple Inc.*, 2011 U.S. Dist. LEXIS 129852, at *6 (S.D. Cal. Nov. 8, 2011) ("[T]his Court finds that plaintiffs fail to state a claim under the CLRA, because the free download of iOS4 on plaintiffs' Third Generation iPhone does not meet the CLRA's 'sale or lease' requirement.").  Accordingly, plaintiffs' CLRA claim should be dismissed.

## VII.    PLAINTIFFS CANNOT SUE OVER PRODUCTS THEY NEVER BOUGHT

Plaintiffs seek to bring claims over a wide array of different products—including the 8 and 16 GB versions of various models of the iPad, iPod, and iPhone.  But the named plaintiffs claim to have actually purchased only three or four of the many different products at issue here: the 16 GB iPhone 5s and iPhone 6, the 16 GB iPad 2, and an unidentified 16 GB model of the iPad.  (FAC ¶¶ 16–17, 19, 21.)  They lack standing to bring claims on behalf of consumers who bought a product the plaintiffs have never purchased or used, such as any iPod or any 8 GB device.

It is axiomatic that plaintiffs must have standing to bring claims in federal court, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992), and standing for each of plaintiffs' claims requires them to show that they personally suffered injury in fact as a result of a breach of warranty or an allegedly misleading statement.  *See Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (standing is required for each claim and each form of relief), *abrogated on*

*other grounds as stated in Bond v. United States*, 131 S. Ct. 2355, 2361 (2011).  But here, no

plaintiff alleges that he parted with any money or was damaged in any way by the devices that he

did not buy.  Put simply, plaintiffs cannot conceivably have been injured by devices they did not

purchase or use and, since plaintiffs only bought three of the devices at issue in this case, the

Court should dismiss all claims related to the products that they never bought.[27]

In fact, district courts in this Circuit have dismissed similar claims under precisely these

circumstances.  *See, e.g.*, *Johns*, 2010 WL 476688, at *5 ("[Plaintiff] cannot expand the scope of

his claims to include a product he did not purchase. . . . The statutory standing requirements of the

UCL and CLRA are narrowly prescribed and do not permit such generalized allegations.");

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3–4 (N.D. Cal. Jan. 10, 2011)

(dismissing claims over ice cream products the plaintiff did not purchase).  For example, in

*Mlejnecky v. Olympus Imaging America Inc.*, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011), the

plaintiff brought UCL claims over two "Stylus" camera models—even though she had only

purchased one of the cameras at issue.  The court dismissed the plaintiff's claims regarding the

camera model she had never purchased—even though the plaintiff alleged that both models had

the same underlying defects and the defendant used the same advertisement for all Stylus

cameras.  *Id*. at *4.  The court reached a similar conclusion in *Larsen v. Trader Joe's Cos.*, 2012

WL 5458396 (N.D. Cal. June 14, 2012), where Judge Susan Illston dismissed the plaintiffs'

claims over a product they never purchased with prejudice, holding:

> At this stage plaintiffs must state a claim that can survive a Rule 12(b)(6) motion,
> irrespective of the future class.  The Court finds plaintiffs do not have standing to
> bring this claim because they did not purchase the Crescent Rolls and therefore, as

---

[27] In addition to the Article III constitutional requirement that applies to all claims in federal court, injury is also a required element of the California causes of action that plaintiffs assert.  *See Kwikset*, 51 Cal. 4th at 322 (UCL standing requires plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice that is the gravamen of the claim.")  (emphasis in original); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("[T]o plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct"); *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *2 (N.D. Cal. May 5, 2010) (same); *Backhaut v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 162870, at *29–30 (N.D. Cal. Nov. 19, 2014) (CLRA and UCL).

a matter of law, could not have suffered a particularized injury as required by Article III.

*Id.* at *5. *See also Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *5 & n.5 (C.D. Cal. May 18, 2012) (dismissing claims on statutory standing grounds because plaintiff "cannot expand the scope of his claims to include a product he did not purchase") (quoting, in part, *Johns*, 2010 WL 476688, at *5); *Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099, at *3 (N.D. Cal. July 27, 2012) (dismissing claims over products plaintiff did not purchase); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013) (dismissing claims based on unpurchased products for lack of pecuniary injury); *Contreras v. Johnson & Johnson Consumer Cos.*, 2012 U.S. Dist. LEXIS 186949, at *6 (C.D. Cal. Nov. 29, 2012) (same).[28]

Here, plaintiffs should not be permitted to lump together claims related to so many different devices. iPads, iPhones, and iPods are hardly the same product—they are all distinct and different devices, and plaintiffs do not (and, of course, cannot) allege that the devices are all the same. Indeed, plaintiffs openly admit that iPhones, iPods, and iPads can vary substantially in terms of storage usage. (FAC ¶ 29.) By definition, plaintiffs have not suffered any injury (economic or otherwise) as a result of the devices that they did not buy, and nothing about plaintiffs' claims here justifies deviating from the long line of cases rejecting claims over products that plaintiffs never bought.

More fundamentally, it is a basic principle that Rule 23 cannot modify or enlarge any party's underlying substantive rights. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or

---

[28] Some courts in the Ninth Circuit have allowed these kinds of claims to survive a motion to dismiss or a motion to strike, but these decisions are distinguishable. *See, e.g.*, *Morgan v. Wallaby Yogurt Co.*, 2014 U.S. Dist. LEXIS 34548, at *27 (N.D. Cal. Mar. 13, 2014) (allowing claims based on unpurchased yogurt flavors because claims were based on the same alleged misrepresentations about an identical ingredient in all flavors); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 633 (N.D. Cal. 2011) (declining to grant the defendant's motion to strike, but acknowledging that "[plaintiff's] inability to allege injury based on products that he did not purchase may ultimately subject those claims to proper dismissal pursuant to a Rule 12(b) motion or motion for summary judgment . . . ."). Moreover, those cases have not addressed the more fundamental question, discussed below, of whether the fact that a complaint is styled as a putative class action can permit a plaintiff to proceed with a claim that would unquestionably fail if brought on an individual basis.

modify any substantive right.'") (quoting 28 U.S.C. § 2072(b)). Were this not a class action, Apple would plainly be entitled to immediate dismissal of all claims over the devices that plaintiffs never bought, and the fact that plaintiffs styled the instant action as a putative class action cannot alter that ultimate outcome—all of plaintiffs' claims related to the devices that they did ***not*** purchase should be dismissed.[29]

## VIII. CONCLUSION

For the reasons set out above, Apple respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

Dated: May 15, 2015

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
SUSAN ROEDER
SARAH H. TRELA

By: /s/ Matthew D. Powers
Matthew D. Powers

Attorneys for Defendant
APPLE INC.

[29] *Donohue v. Apple Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012), is distinguishable and does not require a different result. In *Donohue*, Apple had expressly admitted that the signal meters on the devices at issue were identical. *Id.* at 922. The court in *Donohue* thus did not need to analyze the similarities and differences between the devices at issue, and failed to acknowledge—much less distinguish—the Supreme Court's clear holding in *Amchem Products*, 521 U.S. at 613, that Rule 23 cannot be used to expand the scope of a plaintiff's substantive rights.

