1 | MICHAEL MCSHANE (CA State Bar #127944)
2 | JONAS P. MANN (CA State Bar #263314)
**AUDET & PARTNERS, LLP**
3 | 221 Main St., Suite 1460
San Francisco, CA 94105
4 | Telephone: (415) 568-2555
5 | Facsimile: (415) 568-2556
mmcshane@audetlaw.com
6 | jmann@audetlaw.com

7 | *Attorneys for Plaintiffs*
8 | (Additional Counsel Listed in Signature Block)

9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **NORTHERN DISTRICT OF CALIFORNIA**

12 | **SAN JOSE**

13 |

14 | PAUL ORSHAN, et al., individually, and on behalf of all others similarly situated,

15 |         Plaintiffs,

16 |

17 |    v.

18 | APPLE INC.,

19 |         Defendant.

Case No. 5:14-CV-05659-EJD

**PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Hearing Date: July 16, 2015
Time: 9:00 a.m.
Judge: Hon. Edward J. Davila
Courtroom: 4, 5th Floor

Amended Complaint: April 9, 2015
Trial Date: Not Set

20 | 
21 | 
22 | 
23 | 
24 | 
25 | 
26 | 
27 | 
28 |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT .................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................................... 3

III. LEGAL STANDARD .................................................................................................. 6

IV.  ARGUMENT ............................................................................................................... 7

   A.   Plaintiffs' Claims Are Sufficiently Pleaded To Survive A Motion to
        Dismiss ............................................................................................................... 7

        1.   To the extent their expectations are relevant to their claims,
             Plaintiffs pleaded reasonable expectations. While Apple may
             disagree about the reasonableness of Plaintiffs' expectations, this
             case does not present the "rare situation" that can be resolved on a
             motion to dismiss. ..................................................................................... 8

        2.   When the pleadings are construed with all reasonable inferences in
             their favor, Plaintiffs alleged how the statements were misleading
             and Apple's disclosures only raise factual disputes regarding
             whether a reasonable person would be misled ......................................... 11

   B.   Plaintiffs' UCL, FAL, and CLRA claims are pleaded with the requisite
        level of particularity. .......................................................................................... 13

        1.   Plaintiffs' claims are not subject to Rule 9(b). ......................................... 13

        2.   The FAC satisfies Rule 9(b). ...................................................................... 15

   D.   Plaintiffs have standing to sue over all iOS products that were affected by
        iOS 8 in the same way. ........................................................................................ 17

V.   CONCLUSION ............................................................................................................. 19

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Cases:**

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1989)...........................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 6, 13

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ........ 18

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ...................................................... 18

*Baltazar v. Apple, Inc.*, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ..................................... 10

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) .................................................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 13

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...................................................... 16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) .................. 14

*Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ................................... 18

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663  (2006).................................... 9, 12

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) .................. 8, 9

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824 (2006) .......................... 14

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998).............................................................. 7, 15

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004)................................................. 6, 16

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...................................................................... 19

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ........................................................... 9

*Ham v. Hain Celestial Grp., Inc.*, 2014 U.S. Dist. LEXIS 141157 (N.D. Cal. Oct. 3, 2014) ...... 10

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).................................................................. 14, 15

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013).............................. 9

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ...................................................................... 8, 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................................... 13, 16

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (2012)..................................... 10

*Ladore v. Sony Computer Ent. Am., LLC*,
    2014 U.S. Dist. LEXIS 173766 (N.D. Cal. Dec. 16, 2014) ........................... 17

*Lanovaz v. Twinings N. Am.*, 2014 WL 1652338 (N.D. Cal. April 24, 2014) ........................... 18

*Larsen v. Trader Joe's Co.*, 2012 WL 5458396 (N.D. Cal. June 14, 2012)........................ 18, 19

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ................................................ 15

*Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115 (2007)........................... 9

*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002)............... 15

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ................................... 14, 15

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009) ................................... 8

*Nava v. JP Morgan Chase Bank, N.A.*, U.S. Dist. LEXIS 173261 (C.D. Cal. Nov. 25, 2014) ...... 8

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ................................................................... 6

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .............................................................. 16

*O'Shea v. Epson Am., Inc.*, 2011 WL 3299936 (C.D. Cal. July 29, 2011) ............................... 10

*Paduano v. Am. Honda Motor Co., Inc.,* 169 Cal. App. 4th 1453 (2009) ........................ 7, 9, 12

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2010 WL 624709 (N.D. Ill. Feb. 18, 2010) ....... 15

*Prata v. Superior Court*, 91 Cal. App. 4th 1128 (2001) ...................................................... 15

*Rice v. Sunbeam Prods. Inc.*, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ............................... 11

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ................................... 18

*Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994) .................................................. 14

*Schnall v. Hertz*, 78 Cal. App. 4th 1144 (2000)................................................................. 14

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001) ............................... 14

*South Bay Chevrolet v. General Motors Acceptance Corp.*, 23 Cal. 3d 442 (1979) ................... 14

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996) ................... 15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................................ 6, 16

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) ............................................................. 8

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 6, 13, 16, 17

*Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236 (N.D. Cal Oct. 2, 2013) ............... 18

*Williams v. Gerber Prods. Co.*, 523 F.3d 934 (9th Cir. 2008) ........................................ passim

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ........................................... 9

*Williamson v. Apple, Inc.*, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ............................ 10

*Wilner v. Sunset Life Ins. Co.*, 78 Cal. App 4th 952 (2000) ............................................. 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................. 13

Cal. Bus. & Prof. Code § 17500 ............................................................................. 13

Cal. Civ. Code § 1750 ........................................................................................... 13

Cal. Civ. Code § 1760 ............................................................................................. 8

Cal. Civ. Code § 1770(a) ..................................................................................... 7, 8

**Rules:**

Fed. R. Civ. P. 15 ................................................................................................. 19

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# I.    PRELIMINARY STATEMENT

This case concerns Defendant Apple Inc.'s ("Defendant" or "Apple") advertising conduct related to misrepresentations and omissions regarding storage capacities and the need to purchase supplemental storage for some of its most popular products, including its iconic iPhone. While the facts underlying Apple's scheme are somewhat complicated, the outcome of this motion turns upon two utterly simple questions: (1) would a reasonable consumer plausibly be deceived by Apple advertising its devices as possessing substantially more storage capacity than consumers actually receive; and (2) are Apple's targeted ads notifying consumers that they must purchase supplemental memory deceptive and misleading? To answer these questions does not require a sophisticated understanding of the law or the relevant technology, but a basic sense of fairness and honesty. As one proposed class member noted to Plaintiffs' counsel, "If I buy a box of 16 cookies, I expect there to be 16 cookies, not 12.5." Apple has sold boxes of cookies to millions of American consumers, who are now realizing their boxes are far from full—only to turn around and sell the remainder of the box back to consumers for an additional cost and on a monthly basis.

Plaintiffs Paul Orshan, Christopher Endara, and David Henderson brought this action against Apple on behalf of themselves and all similarly situated purchasers of 8 GB and 16 GB iPhones, iPads and iPods (the "Devices") who upgraded to iOS 8 or had iOS 8 preinstalled. Plaintiffs, like millions of others, bought Apple Devices with iOS 8, or upgraded their Devices to iOS 8, in reliance upon Apple's misleading statements and omissions. As detailed in the First Amended Complaint (ECF No. 18, "FAC"), Defendant Apple has, through misrepresentations and crucial omissions of material facts, hidden from consumers that the Devices, whether pre-installed with iOS 8, or "upgraded" to iOS 8 after their purchase, possess actual storage capacity that deviates from the advertised storage capacity by as much as 23.1%. Nor can iOS 8 be removed from a Device once is has been installed; its substantial limitation of a customer's storage capacity is irreversible. To add insult to injury, after providing less storage capacity than advertised, Defendant aggressively markets its iCloud monthly-fee-based storage, essentially forcing customers with depleted space on their Devices to buy, for a second time, and on an

ongoing basis, storage capacity they believed they already owned.

In its Motion to Dismiss First Amended Class Action Complaint ("Def.'s Mem."), Defendant does not contest that the Devices pre-installed with iOS 8 have far less storage capacity than the 8 or 16 GB advertised. Nor does Defendant contest that the installation of the iOS 8 upgrade permanently deprives customers of storage capacity for which they paid. Nonetheless, Defendant seeks dismissal of the FAC, arguing not so much that Plaintiffs fail to state a claim upon which relief can be granted, but rather that the more than two dozen documents it (improperly) attaches to its motion undermine the theory of Plaintiffs' case. For the reasons set forth below, Defendant's motion is without merit, and should be rejected in its entirety.[1]

First, Defendant argues that Plaintiffs have failed to plead the necessary elements of their fraud-based claims. Defendant's central argument is that to the extent Plaintiffs expected that iOS 8 would take up less than 18-23% of their Devices, that expectation was unreasonable. Plaintiffs' disagree with this contention, but more importantly, this factual dispute is not appropriate for resolution at this stage of the litigation. Neither is Defendant's assertion that Apple's free iCloud service "more than makes up for any capacity used by iOS 8" appropriate for resolution at the pleading stage. Def.'s Memo at 15. Discovery will demonstrate that storage on the iCloud is less valuable than storage capacity on a Device, because, among other things it is more difficult to utilize (i.e., requires WiFi or cellular service, which can consume costly data) and is subject to a variety of well-publicized security risks.

Defendant next argues that Plaintiffs cannot state a claim under the CLRA because the iOS 8 operating system is software and, therefore, not a "good" for purposes of the CLRA. This argument ignores the fact that the FAC focuses on the purchase of the Devices and the lack of

---

[1] Much of Defendant's motion to dismiss hinges upon the 28 documents Defendant attached to its motion. As Plaintiffs demonstrate in their accompanying opposition to Defendant's request for judicial notice, Defendant's attempt to create a detailed factual record at the motion to dismiss stage—rather than honoring the allegations set forth in the FAC—is highly improper. This Court should decline to take judicial notice of Defendant's exhibits or reject Apple's request that the Court accept the documents for the truth of the matter asserted.

storage ultimately available on the Devices, not any purchase of iOS 8, the upgrade to which is free.

Finally, Defendant contends that Plaintiffs lack standing to sue concerning those Devices they never bought. Again, Defendant is mistaken. It is well established in this Circuit that a plaintiff has standing to represent purchasers of substantially similar products, particularly at early stages of the litigation.

For these reasons, and others set forth below, this Court should deny Defendant's motion to dismiss.

## II.    FACTUAL BACKGROUND

Apple is a corporation organized under the laws of the State of California and has its principal place of business in Cupertino, California. It is one of the world's largest producers of technology for personal consumption. Its mobile phones ("iPhones"), tablet computers ("iPads"), and media players ("iPods") dominate the market, in the United States and worldwide. FAC ¶ 7.

During the relevant time period, Defendant made misrepresentations to consumers about the storage capacities of its 8 GB and 16 GB iPhones, iPads and iPods. Defendant currently markets and sells the iPad and the iPod, as well as the newest versions of its signature mobile phone, the iPhone 6 and 6+.[2] In its advertising, Defendant represents that iPhone 6 and 6+ are available with a base storage capacity of 16 GB, as are current models of iPod and iPad. By contrast, prior models offered during the Class Period had a base model of 8 GB. A plurality, if not a majority, of Apple devices are purchased at the lowest storage offering. And the primary (if not the only) differentiating feature among iPod, iPad and iPhone models is the storage capacity. FAC ¶¶ 14-15.

The newest versions of Apple's Devices come with Apple's newest operating system, iOS 8 and iOS 8 is installed onto earlier versions of the Devices by way of an "upgrade." As it turns out, however, Devices running Apple's iOS 8 lack nearly a quarter of their promised

---

[2] Predecessor models include the iPhone 5S and 5C introduced in or about September 2013, and the iPhone 4S introduced on or about October 10, 2011.

storage capacity. Nor is this known to consumers before they purchase their Devices and/or install iOS 8. Instead, Defendant employs false, deceptive and misleading practices in connection with marketing, selling, and distributing the Devices in order to conceal the fact that the Devices, once running iOS 8, have far less space than advertised.[3]

For example, consider Defendant's advertising of the iPhone 6 to interested consumers. In its advertising, marketing, and promotional materials—including Defendant's Internet website, product packaging, and product displays—Defendant misrepresents the iPhone 6 as having 16 GB of storage capacity. Defendant knows—but conceals and fails to disclose in its advertising, marketing and promotional materials—that the operating system and other pre-installed software consume a substantial portion of the represented storage capacity of each of the Devices. What's more, Defendant fails to disclose to consumers that pre-installed iOS 8 consumes up to 3.7 GB on a device represented to have 16 GB of storage capacity. In other words, Defendant represents that an iPhone 6 has 16 GB of storage space in its advertising, while concealing and failing to disclose that, on models with iOS 8 pre-installed, more than 20% of that space is unavailable to the consumer. And Defendant's marketing of the other Devices with pre-installed iOS 8 is similarly false and misleading.

In addition to misleading consumers who purchase Devices with pre-installed iOS 8, Defendant misrepresents and fails to properly disclose to consumers whose Devices run predecessor operating systems that an upgrade from iOS 7 to iOS 8 consumes between 600 MB and 1.3 GB of storage space, or that iOS 8 requires consumers to retain certain applications ("Apps") on their phones, which consume precious space, whether they want them or not.[4]

But the deception on the front end is only half the deception. Not only does it cheat its

---

[3] The Complaint sets forth the percent of the represented capacities of the Devices unavailable to users (when iOS 8 is installed) as follows: 20.6% for the iPhone 6+; 18.8% for the iPhone 6; 18.1% for the iPhone 5s; 21.3% for the iPad Air; 21.3% for the iPad; 23.1% for the iPod. Compl. at ¶ 22.

[4] In the wake of, and possibly in partial response to the filing of this litigation, Apple released a software update that materially decreased the storage space required to install the upgrade to iOS 8.

customers out of much of the storage capacity it promised them, but it then exploits customers' lack of storage space to bolster sales of its monthly-fee-based cloud storage system, iCloud. In short, Apple gets its clients coming and going. FAC ¶ 3.

Plaintiffs are three consumers deceived by Apples above-described practices. In February 2014, Plaintiff Paul Orshan, a resident of Florida, purchased two iPhone 5S' represented by Apple to have 16 GB of purported storage capacity from the AT&T Store located in Coral Gables, Florida. Then, in November, 2012, Plaintiff Orshan also purchased two iPads represented by Apple to have 16 GB of purported storage capacity at the Apple Store in the Dadeland Mall. Plaintiff Orshan subsequently upgraded his Devices to iOS 8, and consequently lost much of the storage capacity in his Devices, for which he paid a premium. FAC ¶¶ 6, 16-17.

Unlike Plaintiff Orshan, Plaintiff Christopher Endara purchased an Apple product—the iPhone 6—which came with iOS 8 pre-installed. Also a resident of Florida, Plaintiff Endara purchased his iPhone 6, which was represented as having 16 GB of storage capacity, from the AT&T store located in Miami, Florida in December 2014. Because the Device has iOS 8, it in fact contained significantly less storage capacity than the 16 GB advertised by Defendant. FAC ¶¶ 6, 19.

On April 1, 2012, Plaintiff David Henderson, a Virginia resident, purchased an iPad2 represented by Apple 16 GB of purported storage capacity from the Apple Store located in Clarendon, Virginia. Like Plaintiff Orshan's iPhone, Plaintiff Henderson's iPad2 came with a predecessor operating system. Subsequent to his purchase, Plaintiff Henderson installed iOS 8 and lost much of the storage capacity in his Device. Once Henderson upgraded to iOS 8, his iPad, which had previously performed almost flawlessly for him, slowed to a snail's pace and became essentially useless. FAC ¶¶ 6, 21-22.

Plaintiffs purchased their Devises in reliance on Defendant's claims, on its website, advertisements, product packaging, and other promotional materials, that their Devices labeled "16 GB" in fact came equipped with 16 GB of storage space, and Plaintiffs paid a premium for their Devices specifically based upon Apple's representation that they had a storage capacity of 16 GB. Plaintiff Endara would not have purchased a Device with pre-installed iOS 8 had he

known the Devices contained significantly less than 16 GB of storage space. FAC ¶ 20. Likewise, Plaintiffs Orshan and Henderson would never have upgraded to iOS 8 had they known it would so significantly erode their Devices' memory capacity and ultimate functionality. FAC ¶¶ 18, 23.

## III. <u>LEGAL STANDARD</u>

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal citations and quotation marks omitted). The Court must accept as true all of the plaintiffs' allegations of material fact and construe them in the light most favorable to the plaintiff. *See Williams v. Gerber Prods. Co.* (Gerber), 523 F.3d 934, 937 (9th Cir. 2008) . A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, although fraud claims are subject to a higher pleading standard, the standard is not as insurmountable as Defendant argues. Fed. R. Civ. P. 9(b). In other words, claims grounded in fraud need only "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "To avoid dismissal for inadequacy under Rule 9(b)," a "complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989)). The particularity required in pleading fraud must be "enough to give a defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## IV. ARGUMENT

### A. Plaintiffs' Claims Are Sufficiently Pleaded To Survive A Motion to Dismiss.

Apple asserts that all of Plaintiffs' claims fail for the same reason, without ever identifying their actual elements or the governing legal standards. As discussed below, after setting forth the appropriate legal standards and viewing the allegations in the light most favorable to Plaintiffs, it is evident that Plaintiffs have properly pleaded claims under the UCL, FAL, and CLRA, and that Apple prematurely contests the merits of Plaintiffs' claims, not the legal sufficiency of the FAC.

The UCL prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A cause of action under the UCL can be based upon "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Gerber*, 523 F.3d at 938 (internal citations and quotations omitted); *see also Paduano v. Am. Honda Motor Co., Inc.,* 169 Cal. App. 4th 1453, 1469 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (internal citations omitted).

The FAL makes it unlawful, in connection with the sale of goods or services, to make or disseminate "any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. To succeed on a cause of action for injunctive relief under the FAL, a plaintiff must show that "members of the public are likely to be deceived" by an advertisement. *Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998).

The CLRA forbids "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Such acts and practices include "[r]epresenting that goods or services have … characteristics, ingredients,

uses, benefits, or qualities which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods or services are of a particular standard, quality or grade … if they are of another." Cal. Civ. Code § 1770(a)(7). The CLRA is to "be liberally construed … to protect consumers … and to provide efficient and economical procedures." Cal. Civ. Code § 1760; *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971) ("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority.").

> **1. To the extent their expectations are relevant to their claims, Plaintiffs pleaded reasonable expectations. While Apple may disagree about the reasonableness of Plaintiffs' expectations, this case does not present the "rare situation" that can be resolved on a motion to dismiss.**

Apple argues that Plaintiffs failed to plead sufficient facts about their expectations for their products.[5] This argument fails for numerous reasons.

First, consumer expectations are not an element of Plaintiffs' UCL claim. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1256 (2009); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (superseded by statute on other grounds) ("Allegations of actual deception, reasonable reliance, and damage are unnecessary.") As one court recently observed, "[u]nlike claims of common law fraud, a UCL plaintiff need only allege that the defendant engaged in business practices likely to deceive the public, not that the public actually possessed particular expectations or assumptions." *Nava v. JP Morgan Chase Bank, N.A.*, CV 14-7601, 20, 2014 U.S. Dist. LEXIS 173261, at *9 (C.D. Cal. Nov. 25, 2014). To the extent Apple suggests the contrary, that argument should be rejected.

Turning to the FAL and the CLRA, both are governed by the "reasonable consumer" standard. *Gerber*, 552 F.3d at 938. Under this standard, a plaintiff "must show that members of

---

[5] Apple contends that Plaintiffs failed to plead "necessary elements" of their claims, yet never recites the elements of Plaintiffs' claims, nor specifies what element is missing. Its ensuing arguments focus exclusively on whether Plaintiffs had reasonable expectations. Def.'s Mem at 10-11. In doing so, Apple has waived the right to challenge the sufficiency of the pleadings with regard to any other element of Plaintiffs' claims.

the public are likely to be deceived." *Id.* A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances" and "is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006).

To the extent the reasonable consumer standard implicates consumer expectations, California courts have generally treated this as a question of fact, which cannot be resolved on a motion to dismiss. *See Comm. on Children's Television, Inc.*, 35 Cal. 3d at 214 ("Defendants' contention that the words and images used do not constitute such misrepresentations, and did not conceal material facts, frames an issue for trial, not demurrer."); *Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134-135 (2007) ("Whether a practice is deceptive, fraudulent or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made [at the pleading stage]."); *see also Paduano*, 169 Cal. App. 4th at 1469; *Jou v. Kimberly-Clark Corp.*, Case No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013).

Indeed, in Gerber, the Ninth Circuit noted that while "[d]ecisions granting motions to dismiss claims under the Unfair Competition Law have occasionally been upheld" due to the implausibility of the alleged fraud, these amounted to "rare situation[s]." *Gerber*, 523 F.3d at 938. The *Gerber* Court pointed to *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) as an example of the "rare situation" where it was appropriate to dismiss a consumer fraud case for failure to allege a plausible deception to a reasonable consumer. *Williams v. Gerber Prods. Co.*, (Williams) 552 F.3d 934, 939 (9th Cir. 2008). There, a plaintiff alleged that mailers he had received fraudulently suggested that he had won a million dollar sweepstakes. But the mailer explicitly stated multiple times that the plaintiff would win the prize only if he had the winning number. "Thus, it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. (citing *Freeman*, 68 F.3d at 285).

While Apple essentially concedes that it is a question of fact whether Plaintiffs'

expectations are reasonable (Def.'s Mem. at 11), Apple nevertheless asks this Court to make a substantive finding of fact that Plaintiffs' expectations are unjustified. But this is not a case, like *Freeman*, where the alleged deceptive practice could not plausibly deceive a reasonable consumer. Quite the contrary. Here, Plaintiffs alleged that, when they uploaded iOS 8 to their Devices (or purchased Devices with iOS 8 pre-installed), they did not expect the iOS 8 to inhibit use of the Devices or consume the storage space it does. FAC ¶¶ 18, 23. Plaintiffs further alleged that this expectation was based on Apple's failure to disclose the true impact that uploading iOS 8 would have on their Devices. *Id.* Indeed, Plaintiffs' expectations were based on the lack of an appropriate warning by Apple that on the Devices iOS 8 would significantly decrease their storage space, inhibiting use of the Devices. *Id.* ¶ 26. Plaintiffs also have pleaded that they did not expect to have to purchase additional and external storage capacity on a monthly subscription in order to store content that took up less space than the advertised storage capacity of the devices. These expectations are reasonable, and to the extent Defendant disagrees that a reasonable consumer would not find them deceptive, this issue cannot be decided on a motion to dismiss.[6] For these reasons, Plaintiffs have pleaded sufficient facts to support their claims under the FAL and the CLRA.

Apple's cases do not support a different conclusion. One was determined at summary judgment, not a motion to dismiss. *O'Shea v. Epson Am., Inc.*, CV 09-8063 PSG (CWx), 2011 WL 3299936, at *1 (C.D. Cal. July 29, 2011), aff'd in part, 566 F. App'x 605 (9th Cir. 2014). All others dealt with easily distinguishable facts, because—unlike here—none of the cases involved statements that Plaintiffs' could plausibly point to as being deceptive. *Baltazar v. Apple, Inc.*, Case No. CV-10-3231-JF, 2011 WL 3795013, at *5 (N.D. Cal. Aug. 26, 2011) (holding that advertisement *showing* iPad use outdoors did not create reasonable expectation of use in all weather conditions); *Williamson v. Apple, Inc.*, Case No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *6–7 (N.D. Cal. Sept. 4, 2012) (holding that where advertising made no claims

---

[6] *See also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380, (2012); *Ham v. Hain Celestial Grp., Inc.*, Case No. 14-cv-02044-WHO, 2014 U.S. Dist. LEXIS 141157, at *7 (N.D. Cal. Oct. 3, 2014) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss.").

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

at all about durability of glass, it would be "a suspension of logic" for a consumer to believe the phone was shatterproof); *Rice v. Sunbeam Prods. Inc.*, CV-12-7923-CAS (AJWx), 2013 WL 146270, at *5-6 (C.D. Cal. Jan. 7, 2013) (dismissing consumer fraud claims where a plaintiff failed to identify any material misrepresentations consumers relied upon in making their purchasing decisions).

> **2.** **When the pleadings are construed with all reasonable inferences in their favor, Plaintiffs alleged how the statements were misleading and Apple's disclosures only raise factual disputes regarding whether a reasonable person would be misled.**

Apple contends that its disclosures put Plaintiffs on notice of the Devices' limitations. Based on these disclosures, and without citing a single legal authority, Apple devotes almost two pages to attacking Plaintiffs' expectations and reasoning. Def.'s Mem. at 13-14. Once again, Apple asks this Court to consider a factual dispute—whether Plaintiffs had reasonable expectations—when it is black letter law that factual disputes cannot be decided on a motion to dismiss.

In its marketing, Apple ubiquitously highlighted device capacity (8 or 16 GB) in large print, while minimizing information about the actual "formatted capacity" of its devices. This issue was specifically addressed in *Gerber*. There, the court found that consumers "should not be expected to look beyond misleading representations on the front of the box to discover the truth" in "small print." *Gerber*, 552 F.3d at 939. Accordingly, the reasonableness of a consumer's understanding—best case for Defendant—is not appropriate for determination on a motion to dismiss. A sober read of *Gerber* find that Defendant's advertising and marketing is unquestionably misleading.

Now Apple takes the position that its vague disclaimer of "actual formatted capacity less" eviscerates Plaintiffs' case. Apple is mistaken. And this only highlights a factual dispute concerning the significance of the word "format." Merriam-Webster defines format, in the context of technology, as "a method of organizing data." Notwithstanding Apple's post-hac effort to redefine the term, formatting actually refers to the preparation and organization of the

storage medium. Thus, Apple's reliance on this disclaimer is misplaced because the inclusion of iOS 8, and accompanying impossible-to-delete applications, is not, technically speaking, formatting at all.

And the fact that some tech-world blogs took notice of the disclaimer, or managed to parse its meaning in some fashion, does not mean ordinary consumers understood. Indeed, as the cookie analogy in paragraph one of this memorandum makes clear, reasonable consumers did not understand. Under the reasonable consumer standard, specialized knowledge cannot be imputed to the Plaintiffs. *See Colgan*, 135 Cal. App. 4th at 682. And even if Apple's disclosures were technically accurate (they were not), "a perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer" remains fully actionable under the UCL. *See Paduano,* 169 Cal. App. 4th at 1469.

It also makes no difference that Apple called iOS 8 its "biggest release." A reasonable consumer could easily decide this statement was puffery, without drawing conclusions about the actual memory iOS 8 would consume. This factual argument has no merit.[7] By again attacking the reasonableness of Plaintiffs' expectations, Apple simply highlights a factual dispute about whether its statements misled consumers. When the FAC is construed with all reasonable inferences in Plaintiffs' favor, they have alleged omissions and statements that create an expectation that their Devices running on iOS 8 would provide the promised storage without having to purchase additional iCloud memory on a monthly subscription. As noted above, a reasonable consumer "is not versed in the art of inspecting." *See Colgan*, 135 Cal. App. 4th at 682. Apple cannot exploit Plaintiffs' lack of technical sophistication, nor denigrate their

---

[7] In a three-sentence argument, Apple contends that because it offers free storage on iCloud, Plaintiffs cannot say their device storage is deficient. Def.'s Mem. at 15. Because this argument relies exclusively on information outside the scope of the FAC, it must be rejected. But this argument would fail in any event. Apple has never claimed that its 8 GB or 16 GB Device storage included remote iCloud storage. And there is no reason to assume Device storage and remote cloud-based storage are fungible. A user does not own or control the devices that house cloud-based storage, and when information is put into cloud-based storage, it becomes subject to unique security hazards and accessibility is conditioned upon access to WiFi or cellular service which is subject to limited, and sometimes costly access. These issues preclude any consideration of iCloud at this stage of litigation.

intelligence, to preclude them from bringing suit. In short, this prohibits dismissal on any basis relating to consumer expectations.

**B.     Plaintiffs' UCL, FAL, and CLRA claims are pleaded with the requisite level of particularity.**

Plaintiffs' FAC contains well-pleaded claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code sec 17500, *et seq.*; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

Contrary to Apple's attempts to impose a higher burden, the Federal civil system remains subject to a notice pleading standard. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Iqbal*, 556 U.S. at 677-78 (2009). Proper pleading does "not require heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require 'detailed factual allegations …', Iqbal, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 55).

**1.     Plaintiffs' claims are not subject to Rule 9(b).**

Defendant incorrectly asserts that Plaintiffs' claims are subject to the heightened pleading standards of Rule 9(b). Only allegations sounding in fraud are subject to Rule 9(b). "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud …' Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1105 (9th Cir. 2003)) (internal quotations omitted). "To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Id.* Rule 8(a)(2) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Indeed, as the Ninth Circuit has recognized "fraud is not a necessary element of a claim under the CLRA and UCL…" *Kearns*, 567, F.3d at 1125.

Plaintiffs' UCL claim does not sound in fraud. "The UCL defines unfair competition as

'any unlawful, unfair or fraudulent business act or practice.' Therefore, under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (quoting *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837 (2006)) (internal quotations omitted). "[A] business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) (quoting *South Bay Chevrolet v. General Motors Acceptance Corp.*, 23 Cal. 3d 442, 449 (1979)). The FAC does not exclusively rely on the fraud prong.

Neither the requirements for the unlawful or unfair prongs of the UCL sound in fraud, nor do the allegations in the FAC related to the UCL claim. "Unlawful business acts or practices within the meaning of the UCL include anything that can properly be called a business practice and that at the same time is forbidden by law." *McKell*, 142 Cal. App. 4th at 1474 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). "A practice is forbidden by law if it violates any law, civil or criminal, statutory or judicially made, federal, state or local." *McKell*, 142 Cal. App. 4th at 1474 (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838 (1994)). "By extending to business acts or practices which are 'unlawful,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable. Even if the violation of another law does not create a private right of action, if the violation constitutes unfair competition, it is actionable." *McKell*, 142 Cal. App. 4th at 1474-75 (quoting *Kasky*, 27 Cal. 4th at 949-50) (internal quotations omitted).

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473 (quoting *Schnall v. Hertz*, 78 Cal. App. 4th 1144, 1166 (2000)). "The determination whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."

*McKell*, 142 Cal. App. 4th at 1473 (quoting *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App 4th 952, 965 (2000)) (internal quotations omitted). Defendant's attempt to negate the entire unfair prong of the UCL by citation to a single Illinois case is unavailing. The Court in *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, Case No. 09-C-046, 2010 WL 624709, at *6 (N.D. Ill. Feb. 18, 2010), considered a complaint so generalized that the court could not identify which specific state's consumer fraud statute applied.

Even if the Court were to consider Plaintiffs' UCL claim under the fraud prong, Rule 9(b) would not apply. "The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL." *In re Tobacco II Cases*, 46 Cal. 4th at 312 (citing *Day*, 63 Cal. App. 4th at 332 (1998); *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1105 (1996)). "A fraudulent business practice is one which is likely to deceive the public. It may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *McKell*, 142 Cal. App. 4th at 1471 (citing *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1290 (2002); *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1137 (2001); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)) (internal citations omitted). "The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." *McKell*, 142 Cal. App. 4th at 1471 (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003)).

## 2. The FAC satisfies Rule 9(b).

Even if Plaintiffs' claims were subject to the heightened pleading standards of Rule 9(b), the FAC easily meets those requirements. Rule 9(b) only requires "that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular

misconduct … so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)) (internal quotations omitted). Rule 9(b) does not require Plaintiffs to plead above and beyond providing Apple with notice of the alleged conduct giving rise to their claims. *See Swartz,* 476 F.3d at 764. The Ninth Circuit has explained that claims grounded in fraud must simply "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).

The FAC provides Apple with notice of the particular conduct giving rise to Plaintiffs' claims, *Swartz*, 476 F.3d at 764, and sets forth the time, place, and specific content of Apple's false representations. *Edwards*, 356 F.3d at 1066 (9th Cir. 2004). For Apple to argue that it is ignorant of the misconduct alleged in Plaintiffs' FAC is simply not credible, especially given that it has apparently scoured the Internet to find comments supporting its thinly-disguised summary judgment arguments.

The FAC alleges that Apple marketed and advertised the Devices with claims of 8 GB and 16 GB storage capacity, but failed to disclose to Plaintiffs and consumers that there would be shortfall of 18.1-23.1% between what was advertised and what consumers would actually receive after iOS 8 was installed [the "who" and "what"]. *See, e.g.*, FAC ¶ 24. The FAC discusses the timeframe for release of the Devices and iOS 8 [the "when"]. *See, e.g.*, FAC ¶¶ 14, 32-34. The FAC alleges that the contested allegations appeared on Apple's website, in its advertising, product packaging and other promotional materials [the "where"]. *See, e.g.*, FAC ¶¶ 15, 18, 20, 23, 27, 45. The FAC explains the technology at issue and the manner in which Apple misrepresented the information, gave consumers less than they bargained for and subsequently schemed to sell consumers iCloud storage on the back end ["how"]. FAC ¶¶ 25-36. Each count in the FAC incorporates by reference all preceding paragraphs therein. FAC ¶¶ 50, 59, and 71. The FAC also contains allegations regarding Plaintiffs' expectations, reliance on Apple's representations, and the resulting harm. *See, e.g.,* FAC ¶ 57. Apple's suggestion that Plaintiffs make no allegations regarding deceptive statements and that the FAC falls short of the Rule 9(b)

pleading requirements is simply not credible. The FAC contains ample allegations identifying the "who, what, when, where, and how" of each claim. *Vess*, 317 F.3d at 1106.

**C.     The Devices are "goods" for purposes of the CLRA.**

Apple's arguments that the CLRA does extend to the transactions at issue ignores the clear allegations in the FAC. As alleged in the FAC, "Plaintiff Orshan purchased two iPhone 5s represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity …" and Plaintiff Orshan also purchased two iPads represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity …" FAC ¶¶ 16-17. And "Plaintiff Endara purchased an iPhone 6 represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity …" FAC ¶19. "Plaintiff Henderson purchased an iPad2 represented by Apple to have 16 gigabytes ("16GB") of purported storage capacity …" Plaintiffs each purchased one or more Devices, which deceptively claimed to have more storage capacity than they did. And all of the Devices at issue constitute "goods" under the CLRA. While iOS 8 plays a critical part in Apple's alleged fraud, no Plaintiff alleges that they purchased iOS 8 and were harmed thereby. Rather, they purchased "goods" containing or requiring upgrades to iOS 8. Indeed, one cannot purchase iOS 8, because it is free.

As Defendant itself acknowledges, neither iOS nor the iPhone (or iPod or iPad) exist in a vacuum. It is essentially impossible to purchase an iPhone without iOS (today's version for sale is iOS 8). All of the cases cited by Defendant in support of its CLRA argument involve software alone, rather than software that comes free with a good. Accordingly, Apple's citations are inapposite. *Cf. Ladore v. Sony Computer Ent. Am., LLC*, No. C-14-3530 EMC, 2014 U.S. Dist. LEXIS 173766, at *20 (N.D. Cal. Dec. 16, 2014) (rejecting argument that a video game was not a "good" under the CLRA, as "received a tangible product—namely the Killzone game disc, which came in a Killzone box and was accompanied by various tangible pieces of documentation").

**D.     Plaintiffs have standing to sue over all iOS products that were affected by iOS 8 in the same way.**

Plaintiffs are seeking to represent a class and a subclass, both of which are composed of

purchasers of Devices that originally, or upon upgrade, are running iOS 8. While the Devices have some different functionalities, the way they were affected by iOS 8 remains the same: they lost an unreasonable and improperly disclosed amount of storage capacity. Apple's argument that the named Plaintiffs lack standing simply because they did not purchase each and every iteration of the Devices misconstrues the applicable standard. For this reason, the cases cited by Apple are inapposite.

In determining whether a plaintiff has standing to assert claims on behalf of users of other products, the "critical inquiry" is "whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC; No. C-11-3164, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012). Importantly, a plaintiff who brings a claim on behalf of persons who bought substantially similar products "is not asserting standing to sue over injuries he did not suffer. Rather, [he] asserts that he suffered the same injuries as a result of buying the Purchased Product that the unnamed class members suffered as a result of buying the Substantially Similar Products." *Werdebaugh v. Blue Diamond Growers*, Case No. 12-CV-02724-LHK, 2013 WL 5487236, at *13-14 (N.D. Cal Oct. 2, 2013). Thus, Plaintiffs are suitable representatives for the class even when they "did not purchase every accused product," so long as the offending representations made were the same for all the products in the class definition. *Lanovaz v. Twinings N. Am.*, Case No. C-12-02646-RMW, 2014 WL 1652338, at *4 (N.D. Cal. April 24, 2014); *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 539 (N.D. Cal. 2012); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010).

Here, the Devices are issue are all made by Apple, all claim to have 8 GB or 16 GB of storage capacity, and all have substantially less storage capacity as advertised. Thus, Plaintiffs have standing to sue on behalf of consumers of all Devices. The remaining cases cited by Apple are easily distinguishable. For example, in *Larsen v. Trader Joe's Co.*, No. C-11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012), the plaintiffs included wildly different products in their complaint regarding the defendant's alleged mislabeling of foods as "all natural," ranging from cookies to apple juice to ricotta cheese. *Id.* at *2-3. The court in *Larsen* dismissed the complaint

as to one product only – crescent rolls – because none of the plaintiffs had purchased them. *Id.* at *14.[8]

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that Defendant's motion to dismiss be denied in its entirety.[9]

Dated:  June 5, 2015                              Respectfully submitted,

                                                  /s/ Jonas P. Mann
                                                  MICHAEL MCSHANE (SBN 127944)
                                                  JONAS P. MANN (SBN 263314)
                                                  **AUDET & PARTNERS, LLP**
                                                  221 Main Street, Suite 1460
                                                  San Francisco, CA 94105
                                                  Telephone: (415) 568-2555
                                                  Facsimile: (415) 576-1776
                                                  mmcshane@audetlaw.com
                                                  jmann@audetlaw.com

                                                  CHARLES J. LADUCA
                                                  WILLIAM H. ANDERSON
                                                  **CUNEO GILBERT & LADUCA LLP**
                                                  507 C Street, NE
                                                  Washington, DC 20002
                                                  Telephone: (202) 789-3960
                                                  Facsimile: (202) 789-1813
                                                  charlesl@cuneolaw.com
                                                  wanderson@cuneolaw.com

                                                  JON M. HERSKOWITZ
                                                  **BARON & HERSKOWITZ**

---

[8] Moreover, to the extent *Larson* suggests a more narrow view of standing, it has been rejected by the majority of courts in this Circuit. *See, e.g.*, *Madenlian v. Flax USA Inc.*, SACV-13-01748 JVS (JPRx), 2014 U.S. Dist. LEXIS 181473 (C.D. Cal. Mar. 31, 2014) (explicitly rejecting *Larson*'s narrow view of the standing requirement).

[9] Alternatively, should the Court find persuasive any of Defendant's arguments, Plaintiffs request leave to amend the FAC to cure any deficiencies. Leave to amend should be "freely given" when the plaintiff could cure the pleading defects and present viable claims. Fed. R. Civ. P. 15 (a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, to the extent the Court deems any of the pleadings subject to dismissal, Plaintiffs have not unduly delayed any matter concerning this cause of action, and can present viable claims on all causes of action included in the FAC.

9100 S. Dadeland Blvd.
Suite 1704
Miami, Fl. 33156
Telephone (305) 670-0101
Facsimile. (305) 670-2393
jon@bhfloridalaw.com

ROBERT K. SHELQUIST
**LOCKRIDGE GRINDAL NAUEN, PLLP**
Suite 2200
100 Washington Avenue S
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class*