1  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
2  SARAH H. TRELA (S.B. #293089)
   strela@omm.com
3  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
4  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
5  Facsimile:    (415) 984-8701

6  SUSAN ROEDER (S.B. #160897)
   sroeder@omm.com
7  O'MELVENY & MYERS LLP
   2765 Sand Hill Road
8  Menlo Park, CA  94025
   Telephone:    (650) 473-2600
9  Facsimile:    (650) 473-2601

10 Attorneys for Defendant
   APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PAUL ORSHAN, CHRISTOPHER ENDARA, and DAVID HENDERSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:14-CV-05659-EJD<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  July 16, 2015<br>Time:          9:00 a.m.<br>Judge:         Edward J. Davila<br>Courtroom:     4, 5th Floor<br><br>Amended Complaint: April 9, 2015<br>Trial Date:        None set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. PLAINTIFFS CANNOT SUE FOR "FRAUD" WITHOUT EXPLAINING HOW THEY WERE "DEFRAUDED" ....................................................................................... 4
    A. Consumer "Expectations" Are a Necessary Component of These Claims ............. 5
    B. Plaintiffs Still Avoid Explaining What Their "Expectations" Actually Were ........ 6
    C. The "Reasonable Consumer" Standard Does Not Absolve Plaintiffs of the Need to Plead Their Own Claims ............................................................................ 8
III. RULE 9 APPLIES ............................................................................................................... 9
    A. Plaintiffs' Claims All "Sound in Fraud" .................................................................. 9
    B. Plaintiffs' Have Not Pled with the Requisite Level of Particularity ..................... 10
IV. IOS 8 SOFTWARE IS THE BASIS OF PLAINTIFFS' CLAIMS ................................... 12
V. IPHONES, IPADS, AND IPODS ARE NOT ALL "SUBSTANTIALLY SIMILAR" ........................................................................................................................ 13
VI. CONCLUSION ................................................................................................................. 15

| | **TABLE OF AUTHORITIES** | |
|---|---|---|
| | | **Page** |

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 4

*Baltazar v. Apple, Inc.*,
2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) ...................................................... 11

*Baltazar v. Apple, Inc.*,
2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) .................................................................... 3, 8

*Berenblat v. Apple, Inc.*,
2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) ......................................................... 5

*Californians for Disability Rights v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006) ............................................................................................................. 5

*Comm. on Children's Television, Inc. v. Gen. Foods*,
35 Cal. 3d 197 (1983) .............................................................................................................. 5

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) .................................................................................................. 2

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ................................................................................................ 10

*Haskins v. Symantec Corp.*,
2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ......................................................................... 12

*In re Apple In-App Purchase Litig.*,
855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................................. 10

*In re Google Phone Litig.*,
2012 U.S. Dist. LEXIS 108611 (N.D. Cal. Aug. 2, 2012) ..................................................... 10

*In re iPhone 4s Consumer Litig.*,
2013 WL 3829653 (N.D. Cal. July 23, 2013) ........................................................................ 13

*In re iPhone 4s Consumer Litig.*,
2014 U.S. Dist. LEXIS 19363 (N.D. Cal. Feb. 14, 2014) ...................................................... 11

*In re Sony Gaming Networks*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................................... 13

*In re Tobacco II*,
46 Cal. 4th 298 (2009) ..................................................................................................... 1, 5, 9

*Johns v. Bayer Corp.*,
2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................................................................ 15

*Kearns v. Ford*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 1, 10, 11

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011) .................................................................................................. 5

*Ladore v. Sony Computer*,
 2014 WL 7187159 (N.D. Cal. Dec. 16, 2014) ........................................................... 12

*Leonhart v. Nature's Path Foods, Inc.*,
 2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ......................................... 14

*Marolda v. Symantec Corp.*,
 672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................................................................... 11

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
 2010 U.S. Dist. LEXIS 13908 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436
 (7th Cir. 2011) ........................................................................................................... 10

*Princess Cruise Lines, Ltd. v. Superior Court*,
 179 Cal. App. 4th 36 (2009) ........................................................................................ 9

*Rice v. Sunbeam Prods., Inc.*,
 2013 WL 146270 (C.D. Cal. Nov. 27, 2012) ......................................................... 8, 11

*Rosal v. First Fed. Bank of Cal.*,
 671 F. Supp. 2d 1111 (N.D. Cal. 2009) ..................................................................... 10

*Smith v. Ford Motor Co.*,
 749 F. Supp. 2d 980 (N.D. Cal. 2010) ......................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ................................................................................... 10

*Werdebaugh v. Blue Diamond Growers*,
 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ............................................................. 14

*Williams v. Gerber Prods. Co.*,
 523 F.3d 934 (9th Cir. 2008) ....................................................................................... 8

*Williamson v. Apple, Inc.*,
 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) .............................................................. 8

*Williamson v. McAfee, Inc.*,
 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) .......................................................... 12

*Wofford v. Apple, Inc.*,
 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ............................................................. 12

*Yastrab v. Apple Inc.*,
 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015) ..................................... 5, 13

**STATUTES**

28 U.S.C. § 2072(b) ............................................................................................................ 15

**RULES**

Fed. R. Civ. P. 9(b) ......................................................................................................... 9, 10

## I. INTRODUCTION

Plaintiffs' Opposition confirms that their claims should be dismissed. Although Plaintiffs accuse Apple of "deceptive" and "misleading" conduct, it is Plaintiffs who ignore obvious facts, misstate the law, and mischaracterize their own allegations in the FAC—all in an apparent effort to conceal the fundamental implausibility of their claims.

Indeed, Plaintiffs' core theory of this case—that the size of iOS 8 was some sort of "scheme" to sell iCloud space[1]—is absurd on its face. The first 5 GB of iCloud storage has always been free, and that free 5 GB more than makes up for the 3-4 GB Plaintiffs contend is used by iOS 8.[2] But incredibly, Plaintiffs urge the Court to ignore that issue altogether, arguing that "any consideration of iCloud at this stage of the litigation" is "preclude[d]." (Opp. at 12 n.7.) Plaintiffs cannot have it both ways—their claim of a "scheme" to sell iCloud storage obviously implicates Apple's iCloud pricing and practices, and Plaintiffs cannot avoid dismissal by just pretending that inconvenient (and undisputed) facts do not exist.[3]

Plaintiffs' other positions are just as flawed. For example, they insist that their vague and inconsistent allegations about their own "expectations" are sufficient because (according to Plaintiffs) they can proceed on "fraud" claims without personally alleging reliance, causation, or damages. (*See* Opp. at 8-9.) Of course, that is not the law. *In re Tobacco II*, 46 Cal. 4th 298, 328 (2009) ("We conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of [the UCL]."). Next, Plaintiffs take the odd position that their "UCL claim does not sound in fraud" (Opp. at 13) even though the FAC is replete with allegations of

---

[1] Opp. at 1, 4-5 (citing FAC ¶ 3).

[2] RJN Exs. X-Y.

[3] Indeed, Plaintiffs' assertion that "the outcome of this motion turns upon … Apple's targeted ads notifying customers that they must purchase supplemental memory" (Opp. at 1) is essentially an admission that Apple's motion should be granted. Plaintiffs have never identified the supposedly misleading language in those "ads," and none of these Plaintiffs alleges that they saw (much less relied on) those "ads" before making a purchase. Since their claims apparently "turn[] upon" those ads, at an absolute minimum Plaintiffs should be required to plead that they actually saw and relied on them. *See Kearns v. Ford*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to "specify what the television advertisements or other sales material specifically stated ... when he was exposed to them or which ones he found material ... [and] which sales material he relied upon in making his decision to buy a [] vehicle").

1  "misrepresentations" and "omissions."[4] And Plaintiffs' attempts to explain away Apple's actual
2  disclosures—*e.g.*, that the "actual formatted capacity" would be "less" than 16 GB[5]—border on
3  the absurd. No matter how "formatted" is defined, the warning "actual formatted capacity less"
4  unquestionably communicates that the capacity of the device will be "less" than 16 GB, and is
5  fundamentally inconsistent with Plaintiffs "expectation" that they would be able to use 100% of
6  the 16 GB to store photos and personal data (if that is their position).

7  Central to Plaintiffs' Opposition is their argument that "consumer expectations are not an
8  element of Plaintiffs' UCL claim." (Opp. at 8.) First, Plaintiffs are wrong on the law. Such
9  "expectations" *are* a fundamental component of every consumer fraud claim, because (as Apple
10 pointed out in its opening brief) consumers who claim to have been "deceived" by a product
11 "must have had an expectation or an assumption about the matter in question." *Daugherty v. Am.
12 Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006). Second, putting aside whether allegations
13 about what the consumer "expected" are *always* necessary, there should be no question that *these*
14 Plaintiffs' claims depend heavily on their "expectation[s] and assumption[s]" about iOS 8.[6] And,
15 third, the "reasonable consumer" standard Plaintiffs cite does not excuse Plaintiffs from pleading
16 specific facts about their own, personal claims. Plaintiffs spend pages of the Opposition arguing
17 that their personal claims must proceed unless Apple shows that no reasonable consumer could
18 have ever been "misled" as a matter of law. (Opp. at 8-13). But that turns the standard on its
19 head. The "reasonable consumer" test does not absolve Plaintiffs of the need to plead facts about
20 their *own* claims, including what statements (if any) they relied on when they bought their devices

---

[4] *E.g.*, FAC ¶ 1 ("This case challenges storage capacity misrepresentations and omissions relating to use of Apple's iOS 8 operating system"); Opp. at 1 ("This case concerns [Apple's] advertising conduct related to misrepresentations and omissions regarding storage capacities and the need to purchase supplemental storage for some of its most popular products ….").

[5] *See* RJN Exs. P-U.

[6] *E.g.*, FAC ¶ 1 ("iOS 8 uses an *unexpectedly* large percentage of the storage capacity on 8 GB and 16 GB iPhones, iPad and iPods"); *id.* ¶ 2 ("Reasonable consumers, such as Plaintiffs, do not *expect* [a] marked discrepancy between the advertised level of capacity and the available capacity of the Devices"); *id.* ¶¶ 18, 20, 23 (Plaintiffs "*expected*" 16 GB "would be available for [their] personal use"); *id.* ¶ 25 ("Consumers purchase Devices with greater storage capacity with the *expectation* that they will be able to storage [sic] a greater amount of personal information on those Devices and delay having to purchase a replacement in the future"); *id.* ¶ 32 ("[N]o consumer could reasonably *anticipate*" that "upgrading from iOS 7 to iOS 8 will cost a Device user between 600 MB and 1.3 GB of storage space") (emphasis added).

and what, exactly, they expected those devices (and iOS 8) to provide. Instead, the "reasonable consumer" standard is a *limit*—it prevents plaintiffs from suing when a product fails to meet some subjective expectation that no reasonable consumer could possibly share. *See, e.g.*, *Baltazar v. Apple, Inc.*, 2011 WL 3795013, at *5-6 (N.D. Cal. Aug. 26, 2011) (plaintiffs allegedly expected iPad would operate "outdoors" or "under the conditions in [an] advertisement," but did not show "why a reasonable consumer would be deceived by the alleged misrepresentations."). It is not a substitute for allegations about what Plaintiffs personally expected their products to provide, including how, exactly, they failed to live up to those expectations (whatever they were).

In its opening brief, Apple pointed out that Plaintiffs' new allegations regarding their "expectations" about iOS 8 (and the devices) were vague and inconsistent.[7] Again:

- Did Plaintiffs understand that iOS 8 (like all software) would consume *some* of their devices' memory, but "expect" that it would use less than the ~3-4 GB they claim it actually requires? (*See* FAC ¶ 29.) If so, what facts or statements led them to believe that iOS 8 would be smaller than it is?
- Or did each named Plaintiff "expect" that a full 100% of the 16 GB would be available to store photos and other personal data? (*See id*. ¶¶ 18, 20, 23.) If so, what facts or statements led them to disregard Apple's disclosures (which Plaintiffs admit they read) that the "actual formatted capacity" was "less"?

Those two positions are in tension—a customer cannot simultaneously "expect" that iOS 8 would use both "some" and "none" of a device's storage. But Plaintiffs never mention those inconsistencies in their Opposition—much less explain them. The relevant facts are obviously in Plaintiffs' possession; it should be easy for them to explain what, exactly, they expected to receive. Their refusal to do so speaks volumes.

---

[7] *E.g.*, Mot. at 1 ("Plaintiffs' new allegations in the FAC are somewhat unclear" because "they apparently contend [iOS 8] was larger than they 'expected' it would be" yet "they now appear to contend that devices with advertised total capacities (*e.g.*, '16 GB') cannot use *any* of that advertised capacity to run the operating system."); *id.* at 10-11 ("Their original allegations—which they continue to make in the FAC—focus on the size of iOS 8 … But plaintiffs' new allegations seem to suggest that their quarrel is not necessarily with iOS 8, but with the concept of pre-loaded software itself.").

- 3 -

REPLY ISO DEF. APPLE'S
MOTION TO DISMISS FAC
NO. 5:14-CV-05659-EJD

1  Plaintiffs' remaining arguments fail as well.  Plaintiffs' claims all sound in fraud, but they still have not explained the specifics of their claims, as required under Rule 9(b).  And their assertion that their claims are "really" over the devices—not iOS 8—conflicts with their own allegations.  Plaintiffs themselves allege that the storage used by iOS 8 varied significantly across the devices (*see* FAC ¶ 29); on that critical issue, the devices are hardly "similar" to one another.

At the end of the day, it is undisputed that:  (1) Plaintiffs' devices have 16 GB of total storage capacity, (2) Apple's packaging and websites for the products (which Plaintiffs read and reviewed) explain that the "actual formatted capacity" of the devices can be "less" than 16 GB,[8] and (3) Apple advertised iOS 8 as its "biggest release ever."[9]  Yet in the face of those facts, Plaintiffs contend that Apple should be liable for "fraud" because iOS 8 did not meet their "reasonable expectations"—even though Plaintiffs have avoided explaining what, exactly, those "expectations" actually were.  Plaintiffs were required to allege *facts* (not just conclusory allegations) that plausibly entitle them to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).  They did not plead such facts in the FAC, and the Opposition confirms that they are unable to do.  Their FAC should be dismissed with prejudice.

## II. PLAINTIFFS CANNOT SUE FOR "FRAUD" WITHOUT EXPLAINING HOW THEY WERE "DEFRAUDED"

In their Opposition, Plaintiffs do not argue that their "expectations" about iOS 8 are consistent or well-pled.  Instead, they contend that their expectations for iOS 8 are irrelevant—according to Plaintiffs, "consumer expectations are not an element of Plaintiffs' UCL claim."  Instead, Plaintiffs argue, they need only show that a "reasonable consumer" is "likely to be deceived."  (Opp. at 8-9.)  Plaintiffs are wrong:  California law absolutely requires them to plead facts establishing the specific statements from Apple that each Plaintiff relied on, the expectations Plaintiffs personally formed as a result of those statements, and why iOS 8 (or their devices) failed to live up to Apple's promises (whatever they were).

---

[8] RJN Exs. P-U.

[9] FAC ¶ 33; *see also* RJN Ex. V.

**A.      Consumer "Expectations" Are a Necessary Component of These Claims**

Plaintiffs' argument that "[a]llegations of actual deception, reasonable reliance, and damages are unnecessary" (Opp. at 8) blatantly misstates California law.[10] It is black-letter law that named plaintiffs asserting UCL, CLRA, or FAL claims must plead and prove their own personal reliance and damages. *See Tobacco II*, 46 Cal. 4th at 328 ("We conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of [the UCL]."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (same). Thus, these named Plaintiffs *are* required to plead the specific sources and bases for their personal "expectations" (*i.e.*, what they saw and relied on) and explain why the product failed to satisfy those "expectations." *E.g.*, *Yastrab v. Apple Inc.*, 2015 U.S. Dist. LEXIS 37119, at *15-17 (N.D. Cal. Mar. 23, 2015) (holding that "[w]ithout more detail describing the marketing materials Plaintiff reviewed before purchase, left unanswered is whether it was reasonable for Plaintiff to believe" that an iPhone would meet his specific expectations); *Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052, at *26 (N.D. Cal. Apr. 7, 2010) (plaintiffs "must allege something more than the bare fact that Apple stated that the PowerBook could support 2 GB of memory" to establish "Plaintiffs' expectation regarding the ability to expand PowerBook computer memory"); *see also Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 988 (N.D. Cal. 2010) (consumer can "be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will").

In fact, *on their face* these Plaintiffs' claims explicitly depend on their personal expectations about iOS 8. The FAC opens with an assertion that "iOS 8 uses an unexpectedly large percentage of the [devices'] storage capacity" (FAC ¶ 1), and Plaintiffs repeatedly emphasize that they either "[did] not expect [a] marked discrepancy between the advertised level of capacity and the available capacity of the Devices" (*id.* ¶ 2) or "expected" 16 GB "would be

---

[10] Plaintiffs cite *Comm. on Children's Television, Inc. v. Gen. Foods*, 35 Cal. 3d 197, 211 (1983), with a note that the case was "superseded by statute on other grounds." But *Children's Television* was superseded by statute on *exactly those grounds*. In 2004, Proposition 64 amended the UCL to require precisely that: "allegations of actual deception, reasonable reliance, and damage …." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006) (after Proposition 64, UCL plaintiffs must allege injury in fact); *Tobacco II*, 46 Cal. 4th at 328.

available for [their] personal use" (*id*. ¶¶ 18, 20, 23). Even in their Opposition, Plaintiffs characterize their FAC as "alleg[ing] that, when [Plaintiffs] uploaded iOS 8 to their Devices (or purchased Devices with iOS 8 pre-installed), they did not expect the iOS 8 to inhibit use of the Devices or consume the storage space it does." (Opp. at 10.) Under the circumstances, the argument that Plaintiffs' "expectations" about iOS 8 are irrelevant should be rejected out of hand.

### B. Plaintiffs Still Avoid Explaining What Their "Expectations" Actually Were

Even though Plaintiffs' claims necessarily depend on what, exactly, they expected from iOS 8 (and their devices), Plaintiffs still do not clearly articulate what those expectations actually were—much less identify the bases for those expectations. Again, the *only* statement Plaintiffs specifically identify is "16 GB." (FAC ¶ 10.) But Plaintiffs do not (and cannot) dispute that their devices actually have 16 GB of total storage, or that they—by using the operating system to operate their phone or other device—can actually "use" all 16 GB.[11] Here, Plaintiffs have sued Apple for "fraud" because, they contend, iOS 8 (and/or their devices) did not live up to their "expectations." That claim necessarily requires Plaintiffs to explain what they expected, how iOS 8 and their 16 GB devices differed from what they "expected," and how (if at all) Apple was responsible for creating those "expectations."

But, again, Plaintiffs' descriptions of their "expectations" are (1) vague; (2) either inconsistent with Apple's disclosures (*compare, e.g.*, Opp. at 2 ("less storage capacity than the 8GB or 16GB advertised") *with* RJN Exs. P-U ("actual formatted capacity less")) or untethered from any supporting facts (*see* FAC ¶ 32 (consumers could not "anticipate" that iOS 8 would consume "600MB-1.3GB")); and (3) seem to be in fundamental tension with one another. If Plaintiffs' position is that iOS 8 was larger than they "expected" it to be, for example, they have

---

[11] Oddly, Plaintiffs argue "Defendant does not contest that the Devices pre-installed with iOS 8 have far less storage capacity than the 8 or 16 GB advertised." (Opp. at 2.) Of course, Apple stated repeatedly in its Motion the devices do have the advertised amount of storage capacity. (*See* Mot. at 1 ("plaintiffs still do not (and cannot) dispute that these devices do, in fact, have 8 GB or 16 GB of storage, exactly as advertised."); *id.* at 5 ("the only affirmative representations plaintiffs identify—that the devices have 16 GB of capacity—are unquestionably true.").) The dispute is not over the underlying facts—even Plaintiffs do not appear to contest that the devices actually possess 16 GB of storage. Instead, the dispute is over the interpretation of those facts, *i.e.*, whether it is "fraud" to ship a device with pre-installed software that uses a portion of the device's total storage capacity.

not pled any facts explaining how large they expected iOS 8 to be or why they expected that iOS 8 would require less than 0.6–1.3 GB of additional storage space compared to iOS 7. (*See* Opp. at 4 (arguing that Apple failed to disclose that upgrading from iOS 7 to iOS 8 consumes between 600 MB and 1.3 GB of storage space); FAC ¶ 32 (same).) Nor do Plaintiffs tie their expectations to any statement by Apple. Curiously, Plaintiffs—who themselves cited Apple's statement that iOS8 was its "biggest release ever" (*id*. ¶ 33)—now claim that statement is "puffery" that should not be considered on the issue of what a reasonable consumer would expect. (Opp. at 12.) But obviously, any reasonable consumer who reads the statement "biggest release ever" could not possibly be misled into thinking that iOS 8 was "smaller" than iOS 7. Under the circumstances, since Plaintiffs cannot identify any statements that formed the basis for their "expectations," or plead at least some facts that could justify their apparent "expectation" that iOS 8 would be smaller than it actually is, their claim fails as a matter of law.

On the other hand, if Plaintiffs' claim is that they "expected" to be able to use 100% of each device's 16 GB capacity to store personal data such as photos and music, that claim is both (1) extraordinary, in that Plaintiffs are apparently challenging the concept of pre-installed software itself; and (2) contrary to the disclosures Apple actually made on its website and product packaging, which Plaintiffs admit they read and relied upon. (*See* FAC ¶¶ 18, 20, 23.) Plaintiffs never mention that disclosure in their FAC, they do not explain how they interpreted that disclosure when they read it, and never say why they believed (if they did) they would be able to use "all" 16 GB for personal data, notwithstanding Apple's warning that the actual capacity would be "less."[12]

---

[12] Plaintiffs' attempts to avoid Apple's disclosure are incoherent. Plaintiffs argue that the term "format" is ambiguous and may not even refer to the inclusion of iOS8 and other pre-installed software. (Opp. at 11-12.) But the " actual formatted capacity less" disclosure is clearly linked (by a footnote on the website and by close proximity on the product packaging) to the statement regarding the device's 16 GB capacity. (*See* RJN Exs. P-U.) Contrary to Plaintiffs' argument, it is not Apple's reading of the disclosure that relies on "specialized knowledge." (Opp. at 12.) It is Plaintiffs' tortured interpretation that is premised on "specialized" knowledge—Plaintiffs interpretation: (1) disregards the context of the disclosure, and (2) relies on a specific definition of "formatting" as well as the assertion (unsupported by any allegations) that iOS 8 does not "technically" meet that specific definition.

### C. The "Reasonable Consumer" Standard Does Not Absolve Plaintiffs of the Need to Plead Their Own Claims

Plaintiffs' application of the "reasonable consumer" standard suffers from two key flaws. ***First***, Plaintiffs argue that "none of the cases" Apple cited in which UCL, FAL, and CLRA claims were dismissed "involved statements that Plaintiffs' [sic] could plausibly point to as being deceptive." (Opp. at 10-11.) But as discussed above, Apple actually disclosed that the devices' capacities would be "less" than 16 GB, and Plaintiffs never identify any statement (by Apple or anyone else) that could justify Plaintiffs' apparent belief that iOS 8 would be smaller than it actually is. Under the circumstances, Plaintiffs have not pled facts to establish that a "reasonable consumer" could have been "misled" by anything Apple said or did,[13] and Plaintiffs have not identified any representation or omission that would have led anyone to believe that iOS 8 would have consumed less or no storage. Where, as here, the "alleged misrepresentation would not deceive a reasonable consumer … then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss." *Baltazar*, 2011 WL 3795013, at *6.[14]

***Second***, the "reasonable consumer" standard is no help to Plaintiffs because they have

---

[13] See *Baltazar*, 2011 WL 3795013, at *6 (no allegation "why a reasonable consumer would be deceived" by advertisements showing outdoor use into believing that the iPad would not overheat when used in direct sunlight over time); *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *5 (N.D. Cal. Sept. 4, 2012) (Apple's statements that glass was used "front and back for optical quality and scratch resistance" was not "a specific commentary about the iPhone 4's durability, let alone one that is likely to mislead a 'reasonable consumer'"); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *6 (C.D. Cal. Nov. 27, 2012) ("[P]laintiff does not plausibly allege that a reasonable consumer would be deceived by any of the alleged representations," such as statements the product was "fit for household use and could be left unattended for extended periods of time," into expecting that the exterior of the Crock-Pot would not get hot).

[14] *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir. 2008), is distinguishable. First, *Gerber* was decided a year before the California Supreme Court held, in *In re Tobacco II*, that the named plaintiff in UCL cases must plead and prove reliance and injury. And the facts of *Gerber* are distinguishable in any event. In *Gerber*, plaintiffs claimed they were deceived by the packaging of defendant's "fruit juice snacks," which displayed pictures of fruit that was not actually included in the snacks. The *Gerber* plaintiffs were quite clear about what they expected from the snacks, and why the product failed to live up to those expectations, *i.e.*, that they thought the snacks contained juice from particular fruits displayed on the packaging, whereas in reality the snacks contained only sweetened grape juice. *Id.* at 936 (identifying plaintiffs' challenge to "five features" of product's packaging as deceptive, including juxtaposition of the words "fruit juice" alongside images of fruits such as oranges, peaches, strawberries, and cherries—where product contained no fruit juice from any of the fruits pictured—and statements that the snacks were "all natural" and "nutritious"—where the two most prominent ingredients were corn syrup and sugar).

1  failed to allege facts to support their *personal* claims.  Whatever the standard that applies to

2  absent class members (which is not yet at issue), Plaintiffs cannot save their own claims by

3  simply asserting that "reasonable consumers" are "likely to be deceived."  (*See* Opp. at 8-9.)

4  Instead, Plaintiffs "must plead and prove actual reliance," including what statements (if any) they

5  relied on when they bought their devices, and what, exactly, they expected those devices (and

6  iOS 8) to provide.  *Tobacco II*, 46 Cal. 4th at 328.  *See also Princess Cruise Lines, Ltd. v.*

7  *Superior Court*, 179 Cal. App. 4th 36, 46-47 (2009) (holding that reliance is required for CLRA

8  actions).  Here, the parties do not simply disagree about the reasonableness of consumer

9  expectations, as Plaintiffs contend.  (*See* Opp. at 9.)  Instead, the fundamental problem with

10  Plaintiffs' FAC is their failure to (1) clearly articulate what their "expectations" actually were, or

11  (2) plead facts sufficient to establish *any* basis for those expectations.

## III. RULE 9 APPLIES

### A. Plaintiffs' Claims All "Sound in Fraud"

In their Opposition, Plaintiffs insist that their claims "are not subject to Rule 9(b)" because they "do[] not sound in fraud."  (Opp. at 13.)  But that argument is impossible to square with Plaintiffs' FAC or the rest of their Opposition.[15]  In fact, on the first page of their Opposition, Plaintiffs argue that Apple engaged in a "scheme" of "misrepresentations and crucial omissions of material facts."  (Opp. at 1; *see also id.* ("This case concerns [Apple's] advertising conduct related to misrepresentations and omissions"; one of the two questions on which this motion "turns" is "would a reasonable customer be plausibly deceived").)  Under the circumstances, Plaintiffs' assertion that their "claims are not subject to Rule 9(b)" (Opp. at 13) is bizarre.

Next, Rule 9(b) applies with equal force to Plaintiffs' "unfair" and "unlawful" UCL claims. Where, as here, a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim ... the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the

---

[15] *E.g.*, FAC ¶ 1 ("This case challenges storage capacity misrepresentations and omissions"); ¶ 31 ("Apple's misrepresentations and omissions" are deceptive and misleading."); ¶ 57 (putative class members "were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these misrepresentations, and suffered monetary loss as a result.").

particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).[16] Since Plaintiffs' "unfair" and "unlawful" claims "are entirely dependent upon allegations that Defendant made misrepresentations and omissions that are 'grounded in fraud' ... those claims are subject to the heightened pleading requirement of Rule 9(b)." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012). *See also Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2010 U.S. Dist. LEXIS 13908, at *20 (N.D. Ill. Feb. 18, 2010) ("if adding an allegation of unfairness to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and be subject to the less stringent standard."), *aff'd*, 631 F.3d 436 (7th Cir. 2011).[17]

### B. Plaintiffs' Have Not Pled with the Requisite Level of Particularity

Plaintiffs agree that to meet Rule 9(b)'s heightened pleading standard, they must plead facts regarding "the who, what, when, where, and how of the misconduct charged" in a manner "specific enough to give defendants notice of the particular misconduct" so as to enable them "to defend against the charge." (Opp. at 15-16 (internal quotation marks and citations omitted).) But although Plaintiffs claim that they "set[] forth the time, place, and specific content of Apple's

---

[16] *See also In re Google Phone Litig.*, 2012 U.S. Dist. LEXIS 108611, at *25-26 (N.D. Cal. Aug. 2, 2012) (Rule 9(b) applies to UCL claims that are "dependent upon allegations that Defendants made misrepresentations, failed to disclose material facts, and concealed known information" regarding allegedly defective Google Phone."); *Kearns*, 567 F.3d at 1124, 1126 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).").

[17] In addition, the "unlawful" and "unfair" prongs of the UCL have their own specific elements that Plaintiffs make no attempt to satisfy. "Unlawful" UCL claims require a plaintiff to plead a violation of another federal, state, or local law; "[w]here a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either." *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1126 (N.D. Cal. 2009). But here, the only "law" Plaintiffs identify are violations of the FAL and CLRA (which fail for the reasons discussed above). And "unfair" UCL claims require that Plaintiffs plead facts to meet one of three potential tests: (1) the tethering test, which links unfair conduct to a violation of a "specific constitutional, statutory, or regulatory provision[]"; (2) the balancing test, which examines whether the challenged "business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim"; or (3) the Federal Trade Commission test, which requires that "the consumer injury must be substantial" and is "not outweighed by any countervailing benefits to consumers or to competition" and is not "an injury the consumers themselves could reasonably have avoided." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Here, Plaintiffs make no effort to plead facts directed at any of those tests; instead, their UCL allegations focus solely on Apple's allegedly "misleading and deceptive" conduct. (FAC ¶¶ 52-57.)

1  false representations" (*id*. at 16), they fail to point to where they did this or describe any statement
2  that was actually false.

3  Here, Plaintiffs' claims appear to be based on a wide array of "misrepresentations" in unspecified "advertisements" or on Apple's "website" or "product packaging." (*see* FAC ¶ 1.) Indeed, in their Opposition, Plaintiffs argue that "the outcome of this motion turns upon … Apple's targeted ads notifying customers that they must purchase supplemental memory." (Opp. at 1.) But Plaintiffs never identify any of those "targeted ads," they never explain what statements in those "ads" were false, and they certainly do not allege these Plaintiffs personally saw or relied on any such "ads" before making any purchase. Since their claims apparently "turn" on those ads, Plaintiffs must plead at least *some* facts about their personal reliance on those "ads." And Plaintiffs general statements in the FAC about "advertising" and Apple's "website" obviously are insufficient. *See, e.g.*, *Kearns v. Ford*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to "specify what the television advertisements or other sales material specifically stated ... when he was exposed to them or which ones he found material ... [and] which sales material he relied upon in making his decision to buy a [] vehicle"); *Baltazar v. Apple, Inc*., 2011 U.S. Dist. LEXIS 13187, at *6 (N.D. Cal. Feb. 10, 2011) ("Plaintiffs must identify the particular commercial or advertisement upon which they relied and must describe with the requisite specificity the content of that particular commercial or advertisement.").[18] Even if Plaintiffs' claims are based on alleged omissions (rather than misrepresentations), they still "must describe the content of the omission and where the omitted information should or could have been revealed." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Again, however, the FAC leaves Apple to guess at what specific information may have been "omitted."

---

[18] *See also Rice*, 2013 WL 146270, at *6 (granting motion to dismiss CLRA, UCL, and FAL claims for failure to state actionable claim under either a representation or omission-based theory where "plaintiff fails to allege with the requisite particularity which representations she and other consumers reasonably relied upon in making their purchasing decisions."); *In re iPhone 4s Consumer Litig*., 2014 U.S. Dist. LEXIS 19363, at *20-21 (N.D. Cal. Feb. 14, 2014) (dismissing UCL claim when Plaintiff did not identify a specific Apple statement that "expressly indicates" the iPhone would meet a particular expectation

## IV. iOS 8 SOFTWARE IS THE BASIS OF PLAINTIFFS' CLAIMS

There is no dispute that the CLRA does not apply to software. (*See* Mot. at 18); *see, e.g.*, *Williamson v. McAfee, Inc.*, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014). Instead, Plaintiffs contend their CLRA claim should survive because their claims are "really" about the purchase of various iPhones and iPads, rather than the iOS 8 software itself. (*See* Opp. at 17 ("Plaintiffs each purchased one or more Devices ... and all of the Devices constitute 'goods' under the CLRA").)

Specifically, Plaintiffs argue that the devices themselves "are 'goods' for purposes of the CLRA." But as currently pled, Plaintiffs' claims concern iOS 8, *not* the devices themselves. Indeed, the members of two of Plaintiffs' proposed classes—the "Upgrade" classes—have claims that are limited to users who downloaded iOS 8 (which is clearly software) to devices they purchased years earlier. The only reason those claims exist (according to Plaintiffs) is that the users downloaded iOS 8 software[19]—Plaintiffs do *not* contend that the sale of devices with iOS 7 was improper in any way. Thus, there should be no question that the CLRA claims of Plaintiffs Orshan and Henderson (whose claims are premised solely on iOS 8 upgrades, *see* FAC ¶¶ 18, 22), fail as a matter of law.[20]

The claims of Plaintiff Endara (who bought a device with iOS 8 pre-installed) are also inextricably tied to the size of iOS 8 software. (*See, e.g.*, FAC ¶ 1 ("This case challenges storage capacity misrepresentations and omissions relating to use of Apple's iOS 8 operating system"); Opp. at 10 ("Here, Plaintiffs alleged that, when they uploaded iOS 8 to their Devices (or

---

[19] As Plaintiffs admit, "one cannot purchase iOS 8, because it is free." (Opp. at 17.) This admission is fatal to the Upgrade Class's CLRA claim. *See Wofford v. Apple, Inc.*, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) (where an iOS software upgrade was "free of charge," the CLRA did not provide a cause of action).

[20] In the sole case Plaintiffs cite for their contention that the CLRA should apply to their software claims—*Ladore v. Sony Computer*, 2014 WL 7187159, at *6 (N.D. Cal. Dec. 16, 2014)—the court found that a video game was a "good" under the CLRA because plaintiff "did not simply buy or download 'intangible' software [but] rather … he paid for and received a tangible product," *i.e.*, a box which contained a physical game disk. *See also Haskins v. Symantec Corp.*, 2013 WL 6234610, at *9 (N.D. Cal. Dec. 2, 2013) (differentiating between software being purchased in a physical medium, rather than simply being downloaded). But as the Upgrade Class claims illustrate here, Plaintiffs' claims are entirely based on software that was downloaded or upgraded—not purchased in a tangible, physical medium.

- 12 -

REPLY ISO DEF. APPLE'S
MOTION TO DISMISS FAC
NO. 5:14-CV-05659-EJD

1  purchased Devices with iOS 8), they did not expect the iOS 8 to inhibit use of the Devices or
2  consume the storage space it does."); Opp. at 17 ("iOS 8 plays a critical part in Apple's alleged
3  fraud.").)  Where, as here, the central claims are over defects or misrepresentations about
4  *software*, the CLRA does not apply.  *See In re Sony Gaming Networks*, 903 F. Supp. 2d 942, 972
5  (S.D. Cal. 2012) (rejecting CLRA claim regarding online video game network, even if such
6  network was intended to be used with a device, because—by analogy to an iPhone and the iOS
7  operating system—a network, like software, is not a tangible good or service).[21]

## V. IPHONES, IPADS, AND IPODS ARE NOT ALL "SUBSTANTIALLY SIMILAR"

Finally, Plaintiffs argue that they have standing to sue over products they never purchased because, according to Plaintiffs, the key issue of whether the devices "have substantially less storage capacity [than] advertised" is the same across both purchased and unpurchased devices. (Opp. at 18.)  Once again, Plaintiffs are wrong.  The unpurchased devices offer different functions and, critically, have *different* percentages of their total capacities used by iOS 8—on that crucial point, Plaintiffs are wrong that "the way [the devices] were affected by iOS 8" is "the same." (*Id.*)

First, the portion of total storage used by iOS 8 varies substantially across the devices. One of Plaintiffs' key claims in this case is that iOS 8 required 600 MB-1.3 GB more storage space than iOS 7, and that this increase (*i.e.*, as little as 600 MB) was a material difference that "no consumer could reasonably anticipate." (FAC ¶ 32.)  But as Plaintiffs admit, the total storage used by iOS 8 across the various devices varied by an even greater amount—as much as 800 MB. (*Id.* ¶ 26 (alleging that iOS 8 requires between 2.9 GB for an iPhone 5s (one of the products Plaintiffs purchased) to 3.7 GB for an iPod (which none of the Plaintiffs purchased).)  Plaintiffs cannot have it both ways—if they contend that a "failure to disclose" a difference of as little as 600 MB is "fraud," Plaintiffs cannot seriously dispute that even larger variations across the devices (*i.e.*, 800 MB) are significant.  And, of course, 8 GB devices—which none of these

---

[21] *Cf. Yastrab*, 2015 U.S. Dist. LEXIS 37119, at *17 (noting that plaintiff's claims were "directed at the inoperability of his phone, not at problems with the iOS 7 software," and citing *In re iPhone 4s Consumer Litig.*, 2013 WL 3829653 (N.D. Cal. July 23, 2013), for its "distinction between cases alleging defects in software which do not support a CLRA claim, and those based on defects in the mobile device which do support a CLRA claim").

REPLY ISO DEF. APPLE'S
MOTION TO DISMISS FAC
NO. 5:14-CV-05659-EJD

Plaintiffs bought or used—had a far greater portion of their storage used by iOS 8 than any of the 16 GB devices Plaintiffs purchased.

In addition, the different Apple devices at issue in this case—iPods, iPads, and iPhones—are hardly the "same" device. As even Plaintiffs admit, the devices have "different functionalities" and are used for different purposes. (Opp. at 18.) That iOS 8 used ~3.0 GB on a 16 GB iPhone, for example, could be virtually irrelevant for a customer who primarily uses their iPhone for email and calls—whereas that same consumer might (at least in theory) not be able to store their entire music library on a 16 GB iPod because of the ~3.7 GB used by iOS 8.

These variations go to the heart of whether the devices (and iOS 8's impact on the devices) are all "substantially similar." As Plaintiffs acknowledge, the key focus of the "substantially similar" test is to ensure that the named plaintiff "suffered the same injuries as a result of buying the Purchased Product that the unnamed class members suffered as a result of buying the Substantially Similar Products." (*See* Opp. at 18 (citing *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at \*13-14 (N.D. Cal. Oct. 2, 2013).) But here, whether any particular device "lost an *unreasonable*" amount of storage capacity (Opp. at 18 (emphasis added)) depends on the size of the device (8 GB or 16 GB), the type of device (iPod, iPad, iPhone), the version of iOS 8 at issue, and the uses to which the consumer intended to put their device. What might have been "unreasonable" will depend in large part on the context of that particular device.[22]

There is also a more fundamental problem with asserting claims based on unpurchased products—an issue that neither Plaintiffs nor the cases they cite ever address: the class action procedure cannot be used to expand Plaintiffs' underlying substantive rights. *See Amchem*

---

[22] Plaintiffs also cannot establish the necessary "substantial similarity" between purchased and unpurchased products simply by asserting that "the offending representations made were the same for all the products in the class definition." (Opp. at 18.) Once again, Plaintiffs do not specifically identify the "offending representations" upon which their claims depend. And even if Plaintiffs could specifically identify a false "representation" regarding iOS 8 or the devices' storage capacity that was "the same" across all iPhones, iPod, and iPads encompassed in the proposed class definition, that alone is not sufficient to create standing. *See Leonhart v. Nature's Path Foods, Inc.*, 2014 U.S. Dist. LEXIS 46413, at \*14 (N.D. Cal. Mar. 31, 2014) (dismissing claims about unpurchased products when plaintiff "does not allege that the products are substantially similar beyond having the same labeling statements.").

*Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'") (quoting 28 U.S.C. § 2072(b)); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase .... The statutory standing requirements of the UCL ... are narrowly prescribed and do not permit such generalized allegations."). But that is exactly what Plaintiffs purport to do here: sue over products they never bought or used. There should be no question, for example, that Apple would be entitled to summary judgment on any claim by Mr. Orshan over an 8 GB iPod—since Orshan never bought such a device, if this case were not a class action Apple would be entitled to judgment on that claim as a matter of law. Under the circumstances, the Court should dismiss the claims Plaintiffs purport to bring over products that they never bought or used.

## VI. CONCLUSION

For the reasons set out above, Apple respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

Dated: June 19, 2015

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
SUSAN ROEDER
SARAH H. TRELA

By: /s/ Matthew D. Powers
      Matthew D. Powers

Attorneys for Defendant
APPLE INC.