1  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
2  ADAM M. KAPLAN (S.B. #298077)
   akaplan@omm.com
3  SARAH H. TRELA (S.B. #293089)
   strela@omm.com
4  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
5  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
6  Facsimile:    (415) 984-8701

7  Attorneys for Defendant
   APPLE INC.

8

   **UNITED STATES DISTRICT COURT**
9
   **NORTHERN DISTRICT OF CALIFORNIA**
10
   **SAN JOSE DIVISION**
11

12 PAUL ORSHAN, CHRISTOPHER          Case No.  5:14-CV-05659-EJD
   ENDARA, and DAVID HENDERSON,
13 individually, and on behalf of all others   **DEFENDANT APPLE INC.'S NOTICE OF**
   similarly situated,                **MOTION AND MOTION TO DISMISS**
14                                     **SECOND AMENDED CLASS ACTION**
                    Plaintiffs,       **COMPLAINT; MEMORANDUM OF**
15                                     **POINTS AND AUTHORITIES IN**
        v.                            **SUPPORT THEREOF**
16
   APPLE INC.,
17                                     Hearing Date:    September 20, 2018
                    Defendant.        Time:            9:00 a.m.
18                                     Judge:           Hon. Edward J. Davila
                                       Courtroom:       4, 5th Floor
19
                                       Second Amended Complaint:  May 1, 2018
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 20, 2018, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Jose Courthouse, located at 280 South 1st Street, Courtroom 4, before the Honorable Edward J. Davila, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an order dismissing the claims in Plaintiffs' Second Amended Class Action Complaint ("SAC") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Specifically, Apple seeks an order: (1) dismissing the SAC because Plaintiffs fail again to support their alleged "expectations" regarding the size of iOS 8 with sufficient particularity under Rule 9(b); (2) dismissing the SAC because Plaintiffs suffered no cognizable injury under California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), or False Advertising Law ("FAL"); and (3) dismissing Plaintiffs' CLRA claim for the additional reason that Plaintiffs' allegations regarding iOS 8 do not fall within the scope of the CLRA. Apple respectfully requests that the Court dismiss the SAC with prejudice.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, the Declaration of Matthew D. Powers, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated: June 14, 2018

O'MELVENY & MYERS LLP

By: ___/s/ Matthew D. Powers___
      Matthew D. Powers
Attorneys for Defendant
APPLE INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND FACTS AND PLAINTIFFS' ALLEGATIONS ................................... 4

    A.    Plaintiffs' First Amended Complaint ................................................................ 4

    B.    The Court's Dismissal Order ............................................................................ 6

    C.    Plaintiffs' Second Amended Complaint ............................................................ 7

III.  LEGAL STANDARDS .................................................................................................. 10

IV.   PLAINTIFFS' CLAIMS STILL FAIL AND MUST BE DISMISSED ......................... 11

    A.    Plaintiffs Still Do Not Plead Facts to Show Any "Expectation" About the
    Size of iOS 8 with Sufficient Particularity Under Rule 9(b) ............................ 12

    B.    Plaintiffs Suffered No Cognizable Injury as a Result of Their Mistaken
    "Expectation" About the Size of iOS 8 ............................................................ 15

V.    SOFTWARE IS NOT COVERED BY THE CLRA ....................................................... 15

VI.   CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

Page

<u>**CASES**</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................. 10

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) .................................................................................. 10

*Baltazar v. Apple, Inc.,*
    2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ................................................ 11, 14

*Bardin v. Daimlerchrysler Corp.,*
    136 Cal. App. 4th 1255 (2006) ............................................................................... 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 10

*Berenblat v. Apple Inc.,*
    2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ......................................................... 11

*Daugherty v. Am. Honda Motor Co.,|*
    144 Cal. App. 4th 824 (2006) ..................................................................... 11, 13, 14

*DeSoto v. Yellow Freight Sys., Inc.,*
    957 F.2d 655 (9th Cir. 1992) .................................................................................. 10

*Dickey v. Advanced Micro Devices, Inc.,*
    2016 WL 1375571 (N.D. Cal. Apr. 7, 2016) ......................................................... 11

*Ferrington v. McAfee, Inc.,*
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .......................................................... 15

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) .............................................................................. 11, 14

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .......................................................................... 10, 12

*Lazebnik v. Apple Inc.,*
    2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ...................................................... 15

*Marolda v. Symantec Corp.,*
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................... 12

*McGlinchy v. Shell Chem. Co.,*
    845 F.2d 802 (9th Cir. 1988) .................................................................................. 10

*McKinniss v. Sunny Delight Bevs. Co.,*
    2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ........................................................ 11

*McMahon v. Take-Two Interactive Software, Inc.,*
    2014 WL 324008 (C.D. Cal. Jan. 29, 2014) .......................................................... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .............................................................. 10

*Punian v. Gillette Co.*,
2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................................... 11, 14

*Red v. Kraft Foods*,
2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................... 11, 14

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) .............................................................. 10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................ 10, 12

*Wofford v. Apple Inc.*,
2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ...................................... 16

**STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................ 6

Cal. Bus. & Prof. Code § 17204 ..................................................... 3, 15

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................................ 6

Cal. Bus. & Prof. Code § 17535 ..................................................... 3, 15

Cal. Civ. Code § 1750 *et seq.* .............................................................. 6

Cal. Civ. Code § 1780 ................................................................... 3, 15

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 10

Fed. R. Civ. P. 8(a) ............................................................................ 12

Fed. R. Civ. P. 9(b) ............................................................... 10, 11, 12

**I.     INTRODUCTION**

Plaintiffs' SAC should be rejected for the same reasons that the Court dismissed the prior FAC: Plaintiffs still fail to allege any facts to plausibly support their supposed "expectations" about the size of Apple's iOS 8 mobile operating system, and ignore other important (and judicially noticeable) facts that are fatal to their claims of "fraud."

The only remaining theory of "fraud" in this case depends on Plaintiffs' assertion that Apple misled them into "expecting" that iOS 8 would use less than ~3-3.5 GB of storage space on their Apple devices (or, for those who upgraded from iOS 7, that the difference in size between iOS 7 and iOS 8 would be less than 0.6-1.3 GB). This Court rejected that theory in Plaintiffs' prior complaint because they pled no facts "that would make it plausible that they indeed held the belief" that iOS 8 would not use as much storage as it did. *See* March 27, 2018 Dismissal Order ("Order"), Dkt. 47, at 9-11. As the Court noted, Plaintiffs' claims failed because they never articulated what, exactly, they "expected" from iOS 8—*i.e.*, how much storage space they believed iOS 8 would actually use. Nor did they identify ***any*** statement—by Apple or anyone else—that could possibly have misled them into that supposed "expectation" (whatever it was) about the size of iOS 8. As the Court recognized, it would have been "absurd[ ]" for Plaintiffs to believe iOS 8 would not consume ***any*** storage on their devices at all. *Id.* at 8-9. Apple devices— like all smartphones, tablets, or computers—obviously require an operating system and other pre-installed applications to provide the features consumers use (*e.g.*, email, calendar, games, music and videos, internet). Without this software, Plaintiffs' devices would be virtually useless. And iOS 8, like all software ever written, uses a portion of the device's storage and resources. Thus, Plaintiffs' failure to plausibly allege any basis for their unspecified "expectation" about the size of iOS 8 required dismissal of their prior complaint.

When the Court dismissed Plaintiffs' last complaint, it stated it would "allow amendment" to plead facts to support the theory that Plaintiffs were "deceived into thinking that iOS 8 would not consume as much storage capacity as it did." Order at 12. But Plaintiffs have not done so. Instead, their new SAC is virtually identical to the prior complaint—and fails for the same

reasons.[1]  The SAC is based on the same core premise: that Plaintiffs supposedly "expected" iOS 8 would use some amount of storage space less than ~3-3.5 GB.  *E.g.*, SAC ¶ 1 (iOS 8 "used an unexpectedly large percentage of the storage capacity on 16 GB iPhones and iPads"), ¶ 11 ("the discrepancy between advertised and available capacity is substantial and beyond any possible reasonable expectation"), ¶¶ 29, 32.  But, just as before, Plaintiffs still never explain how much storage space they actually "expected" iOS 8 would use.  Nor do they allege facts—much less any misrepresentation or omission by Apple—to plausibly support that purported expectation at the time they bought their devices.  Indeed, Plaintiffs cannot plausibly make such allegations in light of what Apple ***did*** say about iOS 8.  For example, consumers who upgraded wirelessly to iOS 8 (including Orshan and Henderson) were told exactly how much space the iOS 8 download would use.[2]  And Apple's launch page for iOS 8 also touted in huge font that iOS 8 was "[t]he biggest iOS release ever," with "big updates to apps you use every day," "a whole new way to share content with your family," and "exciting new connections between apps and between devices." RJN, Ex. M.  In short, Apple never stated or even suggested that iOS 8 would be small or would consume less than ~3.5 GB of space.

The few "new" allegations in the SAC have nothing to do with Plaintiffs' "expectations" about the size of iOS 8.  In fact, most of the allegations relate to statements made years ***after*** Plaintiffs purchased or upgraded their devices (in 2012 and 2014) and thus could not possibly have affected their contemporaneous beliefs.  For example, the SAC alleges facts about the new iPhone X and iPad 10.5.  SAC ¶ 1.  But the iPhone X and iPad 10.5 were released in 2017—*i.e.*, 3-5 years after Plaintiffs' purchases.  They also cite Samsung's disclosure about the storage capacity of its Galaxy S8 smartphone.  *Id.* ¶ 2.  But what a different manufacturer says about its phones are irrelevant to what Plaintiffs expected about their Apple devices; and Plaintiffs never claim in any event to have seen or relied upon Samsung's disclosure anyway—of course, they could not have done so because the Galaxy S8, like the iPhone X and iPad 10.5, was released in

---

[1] A redline comparing the allegations in the FAC and SAC is attached as **Exhibit 1**.

[2] *See* Apple's Request for Judicial Notice ("RJN"), Ex. N.  The Court already granted Apple's request for judicial notice of Ex. N, and many others, in connection with Apple's prior motion to dismiss the FAC.  Order at 3-5; *see also* Apple's prior RJN, Dkt. 25.

2017.  Plaintiffs further cite the "Apple Watch" as an example of a pre-installed application that cannot be deleted.  *Id.*  But in dismissing the prior complaint, the Court held consumers already "know and expect" that devices come pre-installed with operating systems "and applications."  Order at 8.  And the allegations about the Apple Watch in particular are irrelevant to Plaintiffs' purported "expectations" because the Apple Watch was not released as part of iOS 8.2 until 2015 (SAC ¶ 2)—again, years ***after*** Plaintiffs bought or upgraded their devices to iOS 8 in 2012 and 2014.

Plaintiff's prior complaint also suffered from additional deficiencies, although the Court did not reach them in its Order.  And those same deficiencies persist in Plaintiffs' new amended complaint.  For example, Plaintiffs still fail to articulate any cognizable injury (a necessary element of their claims), regardless of whether they stated facts to support their purported "expectations" about iOS 8.  *E.g.*, Cal. Bus. & Prof. Code § 17204 (permitting UCL claim by any "person who has suffered injury in fact and has lost money or property"); *id.* § 17535; Cal. Civ. Code § 1780.  And Plaintiffs continue to ignore the fact that Apple provides consumers with 5 GB of additional storage space ***free of charge***.  RJN, Ex. S.  This far exceeded the ~3-3.5 GB of storage Plaintiffs alleged was used by iOS 8.  In other words, Apple gives customers ***more*** than 16 GB of storage on 16 GB devices—exceeding Plaintiffs' alleged storage "expectations."

Under the circumstances, no reasonable consumer could have been "deceived" or injured by anything Apple did or failed to do.  In short, Plaintiffs accuse Apple of "fraud" based on assertions regarding their "expectations" about the size of iOS 8.  Yet they still never articulate how much space they "expected" iOS 8 to use, the basis for those "expectations" (whatever they were), or how Apple did anything to create them.  These unsupported claims are particularly meritless because, as the cited articles in their own complaint confirm, iOS in reality is <u>more</u> storage-efficient and "among the most frugal in using up storage" compared to competitors' operating systems.  *See* SAC ¶ 30 (citing David Price, "What's an iPhone or iPad's true storage capacity?" (April 10, 2014)).[3]  Plaintiffs' claims should be dismissed with prejudice.

---

[3] *See also, e.g.*, RJN Ex. F, available at http://www.phonearena.com/news/16GB-Samsung-Galaxy-S5-actually-offers-10.7GB-of-usable-storage_id53383 (16 GB Samsung Galaxy S5 has 10.7 GB of available storage); Ex. G, available at http://www.gottabemobile.com/2014/10/12/5-

## II.    BACKGROUND FACTS AND PLAINTIFFS' ALLEGATIONS

### A.    Plaintiffs' First Amended Complaint

Plaintiffs filed their original complaint on December 30, 2014, and their FAC on April 9, 2015.  Dkts. 1, 18.[4]  In their FAC, Plaintiffs brought fraud claims based on allegations that Apple "misled" consumers about the storage capacity of certain 8 GB and 16 GB iPhones, iPads, and iPods installed with (or upgraded to) Apple's iOS 8 operating system—*i.e.*, Plaintiffs claimed that iOS 8 was bigger and used up more storage space than they "expected."  *E.g.*, FAC ¶¶ 1 ("iOS 8 uses an unexpectedly large percentage of the storage capacity on 8 GB and 16 GB iPhones, iPads, and iPods."), 11, 18, 20, 23.  In particular, Plaintiffs alleged two similar, but distinct, theories of fraud: (1) that "Apple specifically represented that the devices … had 16 GB of storage capacity," and thus they "expected that capacity would be available for personal use"; and (2) that Apple "did not adequately disclose … the additional and substantial storage capacity that would be consumed by [iOS 8]" and thus that Plaintiffs did not expect iOS to use such a "substantial" portion of their devices' storage capacity.  Order at 7; FAC ¶¶ 18, 20, 23.  In other words, Plaintiffs claimed Apple deceived them into believing that "100% of the storage capacity (i.e., 8 GB or 16 GB) of their devices would be available for personal use," or that "consumers expected that iOS would not take up as much storage space as it did."  *Id.*

---

tips-for-moto-x-2014-buyers (on the Moto X 2014, "only 10 of that 16 GB is actually usable"); Ex. H, available at http://www.fonearena.com/blog/109524/lg-g3-review-ambitiously-regressive.html (on a 16 GB LG G3, "[t]here's about 11 GB of free space available to the user"); Ex. I, available at http://blogs.which.co.uk/technology/phones-3/phone-storage-compared-samsung-s4-still-in-last-place ("Apple's more affordable (relatively) iPhone, the 5c, is the most generous of the 16GB phones we're [sic] recently tested, giving you 12.6GB of memory (79%) to play with."); Ex. J, available at http://appleinsider.com/articles/15/01/04/despite-lawsuit-apples-ios-8-storage-is-actually-far-more-efficient-than-googles-android-samsungs-galaxy-microsoft-windows ("Sony's Xperia Z1, HTC's One Mini and LG's G2 flagship had between 10.3GB and 11.4GB free, while the most popular Android flagship of the year, Samsung's Galaxy S4, left just 8.56GB free to the user.  That's right: the Galaxy S4 that Samsung advertised as having '16GB' actually left users with just slightly more available space than Apple's low end 8GB iPhone."); Ex. K, available at http://seekingalpha.com/article/2796065-the-storage-lawsuit-against-apple-is-beyond-frivolous ("the amount of usable storage on a 16GB iPhone, approximately 13GB, is significantly higher than most, if not all of Apple's competitors' 16GB smartphones"); Ex. L, available at http://tech.thaivisa.com/iphone-storage-better-than-most/1665 ("**[I]t turns out that Apple is one of the most efficient users of storage space on its devices like the iPhone and iPad—much more so than Android phones, Samsung and especially Microsoft**.").

[4] Apple moved to dismiss Plaintiffs' original complaint on March 24, 2015 (Dkt. 14); rather than respond to that motion, Plaintiffs filed their FAC on April 9, 2015.

In their FAC, Plaintiffs did not contend that any of Apple's statements about the storage capacity of the devices were actually false—they appeared to acknowledge (as they must) that the devices did, in fact, offer 8 GB and 16 GB of storage. Instead, they alleged that Apple "fail[ed] to disclose that as much as 23.1% of the advertised storage capacity" (~18.1–23.1%) of the devices was "consumed by iOS 8 and unavailable for consumers [who] purchase[d] [d]evices that have iOS 8 installed," and that Apple "forces consumers to retain applications that many consumers do not want, but are unable to delete." FAC ¶¶ 2, 24, 28-30. According to Plaintiffs, "[r]easonable consumers, such as Plaintiffs, [did] not expect this marked discrepancy between the advertised level of capacity and the available capacity of the [d]evices, as the operating system and other storage space unavailable to consumers occupies an extraordinary percentage of the [d]evices' limited storage capacity." *Id.*; *see also id.* ¶¶ 11, 32 (iOS 8 used "between 600 MB and 1.3 GB" more storage than iOS 7, which "no consumer could reasonably anticipate"). Plaintiffs alleged that before they bought their devices they "viewed various materials, including Apple's website … and packaging materials in the store … which specifically stated that the [d]evices were available with 8 GB and 16 GB of storage capacity." *Id.* ¶¶ 18, 20, 23.[5]

Plaintiffs also alleged that Apple "exploit[ed] the discrepancy between represented and available capacity" by "offering the purchaser the opportunity to purchase 'iCloud' cloud storage," for which Apple allegedly "charge[d] prices ranging from $0.99 to $29.99 per month." *Id.* ¶ 36 (emphasis omitted). But Plaintiffs never claimed to have personally reached (or even approached) the storage capacity limits on their devices; nor did they claim to have purchased additional iCloud storage from Apple.

Based on these allegations, Plaintiffs asserted claims under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, Unfair Competition Law ("UCL"), *id.* § 17200 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* *See* FAC, Counts I-III.

---

[5] To be sure, Plaintiff Henderson also made a few allegations suggesting that iOS 8 apparently contributed to certain performance issues he was experiencing with his iPad. *See* FAC ¶¶ 22, 39. But Henderson did not actually assert any claims based on these separate allegations (as opposed to claims about the size of iOS 8), and in any event he never alleged that he relied on any representations or omissions about performance.

## B. The Court's Dismissal Order

On March 27, 2018, the Court dismissed Plaintiffs' FAC in its entirety, with partial leave to amend. Order, Dkt. 47. Specifically, the Court explained that to state a claim under the UCL, FAL, and CLRA, Plaintiffs "must allege that Defendant's representations are likely to deceive a reasonable consumer," and that "where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.* at 6-7. The Court then addressed Plaintiffs' two fraud theories, each of which turned on Plaintiffs' alleged "expectations" about the storage capacity of their devices.

*First*, the Court held that Plaintiffs' theory that "they were deceived into thinking that all of the advertised storage capacity would be available for personal use" failed "as a matter of law." *Id.* at 8. The Court explained that "Apple clarified that the 'actual formatted capacity' of the[] devices would be 'less' than the full 16 GB," and that "no reasonable consumer could have read these materials [on Apple's website, product packaging, etc.] and concluded that the entire 16 GB would be available for personal use on a 16 GB iPhone." *Id.* More fundamentally, the Court underscored the "absurdity of Plaintiff's theory":

> iPhones and iPads are not hard drives; they are fully functional devices that come pre-installed with an operating system and applications. Consumers know and expect this. No reasonable consumer would buy an iPhone or iPad and not expect that it would not already include this software. Although an average consumer is not an engineer, software and computers are pervasive enough in the modern world that a reasonable consumer would at least expect that software would require some storage space.

*Id.* Accordingly, the Court held that since "no reasonable consumer would have expected that all of the advertised storage capacity would be available for personal use," Plaintiffs' theory "fails as a matter of law." *Id.* at 9. The Court explained that "amendment would be futile," and thus did not provide Plaintiffs leave to amend this theory. *Id.* at 12.

*Second*, the Court held Plaintiffs' theory that "they were deceived into thinking that iOS 8 would not consume as much storage capacity as it did" also failed. *Id.* at 9-11. Specifically, the Court "agree[d] with Apple" that all of Plaintiffs' claims sounded in fraud and that Plaintiffs "failed to allege their UCL, FAL, and CLRA claims with sufficient particularity" under Rule 9(b). *Id.* The Court held that the few Apple statements that Plaintiffs actually identified (including that

the devices "came equipped with 16 GB of storage space") did not give "rise to the alleged mistaken expectations which underlie Plaintiffs' theory of deception—*i.e.*, that Apple deceived [them] into thinking that iOS 8 would not consume as much storage capacity as it did." *Id.* Thus, "Plaintiffs' allegations do not allow Apple to defend these charges of fraud with any particularity and fall short of the pleading standard under Rule 9(b)." *Id.* The Court also held that Plaintiffs' claims would fail "even if [the Court] were to analyze these allegations under Rule 8(a)," because "Plaintiffs allege no facts that would make it plausible that they indeed held the belief that iOS 8 would not consume a 'substantial' amount of storage." *Id.* at 11 n.2. Instead, the Court held that Plaintiffs' allegations about their purported "beliefs" were "merely conclusory statements, which do not raise [their] right to relief above a speculative level." *Id.*

Because Plaintiffs' alleged legal theories failed outright, the Court did not address Apple's other arguments for dismissal, including that (1) Plaintiffs' CLRA claim failed because the CLRA does not cover claims based on software (here, the storage capacity of iOS 8); and (2) Plaintiffs could not sue over products they never purchased.

### C. Plaintiffs' Second Amended Complaint

Plaintiffs filed their SAC on May 1, 2018. Dkt. 48. The SAC asserts the same UCL, FAL, and CLRA claims premised on the same core allegations as in the FAC—*i.e.*, that Apple allegedly "misled" Plaintiffs about the "substantial" size of iOS 8 and that Plaintiffs did not "expect" iOS 8 to use between 3-3.5 GB of space. *E.g.*, SAC ¶¶ 1 (iOS 8 used "inordinate amount of space" and consumed "an unexpectedly large percentage of the storage capacity on 16 GB iPhones and iPads"), 24, 18, 20, 23.[6] Plaintiffs also continue to allege iOS 8 used "between 600 MB and 1.3 GB" more storage than iOS 7 and that this difference was more than they "could reasonably anticipate." *Id.* ¶ 32; *see also id.* ¶ 11 ("[T]he discrepancy between advertised and available capacity is substantial and beyond any reasonable expectation."). They also allege, as before, that Apple "failed to disclose to consumers that as much as 21.3% of the advertised storage capacity" of the devices "was consumed by iOS 8 and unavailable for consumers [who] purchase[d] [d]evices that have iOS 8 installed" (*id.* ¶¶ 2, 11), and that Apple "exploits the

---

[6] Plaintiffs dropped their claims related to iPods and all 8 GB devices. SAC ¶ 1; *see also* Ex. 1.

discrepancy between represented and available capacity" by "offering the purchaser the opportunity to purchase iCloud" storage—although they still do not allege they personally reached their storage limit or purchased any extra iCloud storage. *Id.* ¶ 36.[7]  Plaintiffs also continue to allege that they "viewed various materials, including Apple's website … and packaging materials in the store" before their purchases, which "stated that the [d]evices possessed 16 GB of storage capacity." *Id.* ¶¶ 18, 20, 23.

But Plaintiffs still offer no ***facts***—as opposed to "conclusory" assertion—to plausibly explain their mistaken "expectations" about the size of iOS 8.  To the contrary, Plaintiffs confirm in their SAC that the "principle [sic] false representation" they supposedly "relied upon" was that the devices had "a storage capacity of 16 GB" (*id.* ¶ 15)—despite the fact that the Court already held that this allegation could not support a claim.  *See* Order at 11.  Plaintiffs still do not, for example, identify any statement by Apple about the relative size of iOS 8 compared to iOS 7, or otherwise suggesting that iOS 8 would be smaller than ~3-3.5 GB.  In fact, what Apple (and others) did say about iOS 8 undermines Plaintiffs' purported expectations.  As Plaintiffs acknowledge, Apple advertised iOS 8 as "the biggest iOS release ever," offering many new features and applications (SAC ¶ 33; RJN, Ex. M), and Apple disclosed on its website and product packaging that the actual formatted capacity of its devices was "less" than 16 GB.  *See* Order at 8-9.  (*See also* RJN, Exs. O-R.)  Moreover, customers who upgraded their devices wirelessly were told *exactly* how many GB of space the iOS 8 download would require as part of the upgrade process.  *See* RJN, Ex. N.  And the articles Plaintiffs themselves cite in their SAC show that the available storage capacity of Apple devices was widely discussed on technology blogs and in the press.[8]

---

[7] Plaintiffs also ignore (and could not dispute) that the first 5 GB of iCloud storage is ***free***, and thus Apple already gives consumers more than enough free cloud storage to compensate for the ~3-3.5 GB of storage space that Plaintiffs allege is consumed by iOS 8.  RJN, Exs. S, T ("Apple Reveals iCloud Details and Pricing," *N.Y. Times*, Aug. 1, 2011 ("Apple said that customers would be given 5 gigabytes of storage for free.")).  Plaintiffs also overlook that other cloud storage services are available to iOS 8 users at no cost as well.  *Id.*, Exs. U (Dropbox), V (Google Drive).

[8] *E.g.*, SAC ¶ 30 (citing https://www.macworld.co.uk/feature/ipad/whats-iphone-ipod-ipads-true-formatted-storage-capacity-3511773/; http://www.mcelhearn.com/apples-ios-apps-are-bloated-and-how-many-gigs-do-you-get-on-a-16-gb-ios-device/); *see also* RJN, Ex. A, *available at* http://www.pcadvisor.co.uk/buying-advice/apple/3343192/new-ipad-is-16gb-enough-storage ("It's also important to remember that before you begin filling up your iPad, the operating system

The few "new" allegations in the SAC focus on Apple's (and competitors') products and statements in 2017—*i.e.*, several years after Plaintiffs purchased or upgraded their devices to iOS 8. For example, Plaintiffs allege that in 2017 Apple increased the "base memory" for its newly released devices (including the iPhone X and certain iPads) to 64 GB and decreased the size of its newest iOS 11 operating system. SAC ¶¶ 1, 24. They also cite a statement by Samsung about its Galaxy S8 phone, which says "[u]ser memory is less than the total memory due to the storage of the operating system and software used to operate the features." *Id.* ¶ 2. But Plaintiffs bought their devices in 2012 and 2014 and never claim to have seen or relied upon information about these newer 2017 models. *Id.* ¶¶ 16-17, 19, 21. Plaintiffs do not (and clearly could not) allege that information from 2017 actually affected their prior purchase decisions.

Finally, Plaintiffs cite the "Apple Watch" as an example of a pre-installed application that, as they alleged before, consumers are "forced to retain" and are "unable to delete." *Id.* ¶¶ 2, 28. But the Apple Watch was released in 2015—again, years after Plaintiffs purchased their devices. And Plaintiffs never explain how the inability to delete certain applications supports their "expectation" that iOS 8 would not consume ~3-3.5 GB of space—particularly since the Court held that consumers "know and expect" that "iPhones and iPads are … fully functionally devices that come pre-installed with an operating system and applications." Order at 8.[9]

---

and related files will consume a certain amount of storage capacity. Expect to find around 14GB of usable storage for your files on a 16GB iPad, for example."); Ex. B, *available at* http://store.apple.com/us/question/answers/iphone/how-much-space-is-initially-available-for-storage-on-16gb-iphone-6/QDUYDHYKJCUXKPUDF ("The formatted capacity of a 16GB iPhone is usually roughly 13GB."); Ex. C, *available at* http://arstechnica.com/civis/viewtopic.php?t=1162799 (16 GB iPhone 4s only had about 13.5 GB of storage available to users); Ex. D, *available at* http://herthethingblog.com/2011/11/04/iphone-4s-running-storage-reader/ (iPhone 4s "reserves about 3 GB of storage for the iOS operating system itself"); Ex. E. *available at* http://www.macworld.com/article/1163799/iphone_buying_guide.html (on the 8 GB iPhone 4, "the phone's operating system and stock apps eat up some of that storage" and leave "no more than 7GB of usable storage").

[9] The SAC also includes remnant allegations from the FAC that Plaintiffs expected the full 16 GB would be available for personal use. SAC ¶¶ 18, 20, 23. But the Court already held that those allegations failed "as a matter of law" and dismissed them without leave to amend. Order at 8 (explaining the "absurdity of Plaintiffs' theory"); *id.* at 12 ("[A]mendment is futile as to Plaintiffs' first theory (that they were deceived into thinking that all of the advertised storage capacity would be available for personal use) because it fails as a matter of law.").

## III.   LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While the Court must accept well-pled facts as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Thus, the Court must not assume the truth of legal conclusions merely because they are pled in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Next, as the Court already held, all of Plaintiffs' claims must satisfy the heightened pleading standard under Rule 9(b).  Order at 10 ("All of Plaintiffs' claims must meet the Rule 9(b) standard because they all stem from one basic claim grounded in fraud[.]").  Under Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud" in order to "give [Apple] notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done nothing wrong." Fed. R. Civ. P. 9(b); *see also* Order at 3 (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  Specifically, Plaintiffs must plead the time, place, and content of the alleged fraudulent representation or omission—the "who, what, when, where, and how"—as well as facts showing their reliance on the allegedly fraudulent conduct.  Order at 3; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126-27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Finally, leave to amend should be denied where "amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); Order at 12 (explaining that "[l]eave to amend a complaint … is properly denied when the amendments would be futile" and denying in part leave to amend).

**IV.    PLAINTIFFS' CLAIMS STILL FAIL AND MUST BE DISMISSED**

Plaintiffs' lone remaining theory in this case—that Apple somehow "deceived" them into believing iOS 8 would be smaller than ~3-3.5 GB (or, for their "upgrade" claims, would not be 0.6-1.3 GB larger than iOS 7)—should be rejected.  As this Court held, to state a claim under the UCL, FAL, or CLRA, Plaintiffs "must allege that [Apple's] representations are likely to deceive a reasonable consumer."  Order at 6; *Red v. Kraft Foods*, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  The term "likely" means that the "deception must be probable, not just possible."  *Red*, 2012 WL 5504011, at *2; *McKinniss v. Sunny Delight Bevs. Co.*, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (citing *Freeman*, 68 F.3d at 289).  And consumers who claim to have been "deceived" by product packaging "must have had an expectation or an assumption about the matter in question."  *E.g.*, *Punian v. Gillette Co.*, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016) (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006)); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006); *Berenblat v. Apple Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (expectations must be reasonable); *Dickey v. Advanced Micro Devices, Inc.*, 2016 WL 1375571, at *3 (N.D. Cal. Apr. 7, 2016).  Where the Court can conclude as a matter of law "that members of the public are not likely to be deceived"—or, here, that the expectations underlying the alleged deception have no basis—then "dismissal is appropriate."  Order at 7; *Baltazar v. Apple, Inc.*, 2011 WL 3795013, at *6 (N.D. Cal. Aug. 26, 2011) ("[I]f an alleged misrepresentation would not deceive a reasonable consumer …, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss.").[10]  In this case, Plaintiffs have failed again to allege any facts—much less with specificity under Rule 9(b)—to show that Apple deceived them into believing that iOS 8 would consume less than ~3-3.5 GB.

---

[10] The Court already rejected Plaintiffs' argument as contrary to established law that "consumer expectations are not an element" of their UCL claim.  Order at 6 n.1 (stating that the "Ninth Circuit has explicitly held otherwise" and that "California courts have consistently applied the reasonable consumer test to UCL claims").

**A.** **Plaintiffs Still Do Not Plead Facts to Show Any "Expectation" About the Size of iOS 8 with Sufficient Particularity Under Rule 9(b)**

Plaintiffs' assertion that iOS 8 was larger than they "expected" should be rejected because they still have not pled any facts that could possibly support their "expectation" that iOS 8 would use less than ~3-3.5 GB of storage space. *E.g.*, SAC ¶¶ 1, 11, 29, 32. As before, Plaintiffs never articulate how much of the 16 GB of storage space they expected iOS 8 to use—saying only that iOS 8 used an "unexpectedly large percentage" of storage. *Id.* Nor do they ever attempt to tie those expectations—whatever they were—to any specific statement by Apple about the size of iOS 8. And as the Court made clear, it would be absurd to believe that iOS 8 would use none of the 16 GB (again, iPhones and iPads are not hard drives and require software and applications to function). *See* Order at 8.

In short, the SAC is based on the same core allegations that the Court already held did not "g[i]ve rise to the alleged mistaken expectations" about the size of iOS 8 and thus failed to satisfy Rule 9(b) (and even Rule 8(a)). *Id.* at 11.[11] In fact, Plaintiffs confirm in their SAC that the primary Apple statement underlying their "fraud" claims is the generic assertion that the devices had "16 GB" of storage space. SAC ¶ 15 ("Apple explicitly represented on its website, advertisements, product packaging, and other promotional materials, that the iPhone 6 and 6+ were available with a storage capacity of 16 GB. This is the principle [sic] false representation made by Defendants and relied upon by [Plaintiffs]"); *id.* ¶¶ 18, 20, 23. Not only is this representation 100% true—the devices **do** have 16 GB of storage—but the Court already expressly rejected it as a basis to support Plaintiffs' claims. Order at 11.

Here, the statements that Apple did make about iOS 8 also strongly suggested—if not outright declared—that iOS 8 was significantly larger than iOS 7. Apple's launch page for iOS 8

---

[11] The Court was clear that Rule 9(b) applies to Plaintiffs' claims. *See* Order at 10 ("[T]he Court agrees with Apple" that "[a]ll of Plaintiffs' claims must meet the Rule 9(b) standard because they all stem from one basic claim grounded in fraud, specifically, that Apple misrepresented the storage capacity of iPhones and iPads running iOS 8."); *Kearns*, 567 F.3d at 1125; *Vess*, 317 F.3d at 1106. To satisfy Rule 9(b), Plaintiffs must plead the time, place, and specific content of each alleged misrepresentation or omission—along with facts demonstrating their personal reliance on those statements or omissions. *Id.*; *see also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) (applying Rule 9(b) to omissions claims).

advertised in huge font that iOS 8 was "[t]he biggest iOS release ever," with "big updates to apps you use every day," "a whole new way to share content with your family," and "exciting new connections between apps and between devices."  RJN, Ex. M.  No reasonable consumer who viewed Apple's website or its statements about iOS 8 could possibly "expect" that iOS 8 (the "biggest release ever") would not be any larger than prior iOS versions.  Nor do Plaintiffs allege that iOS uses substantially "more" space than competing operating systems.  Indeed, as Plaintiffs' own cited articles confirm, "Apple's smartphones are actually among the most frugal in using up storage."  SAC ¶ 30 (citing David Price, *What's an iPhone or iPad's True Storage Capacity?*, MacWorld (April 14, 2014)).  And these articles discuss generally the available storage capacity of Apple (and competing) devices.  *See supra* n.4.  And, of course, every consumer who upgraded to iOS 8 wirelessly was told that downloading and installing iOS 8 would require substantial memory.  RJN, Ex. N.[12]  Thus, nothing that Apple said or did could lead Plaintiffs—or any consumer—to reasonably believe iOS would be smaller than it was.  Again, consumers who claim to have been "deceived" by Apple into an "expectation" about a product must identify specific facts supporting that "expectation or … assumption …."  *See Daugherty*, 144 Cal. App. 4th at 838; Order at 6-7.  Since Plaintiffs' purported expectations about the size of iOS 8 lack any identified factual basis, and are inconsistent with Apple's actual statements, they must be rejected.

Plaintiffs' sparse "new" allegations in the SAC do not save their claims.  Most of the new allegations introduce information about Apple or Samsung products released long after Plaintiffs' purchases and thus could not as a matter of law (or common sense) support their "expectations" about iOS 8 when they bought (or upgraded) their devices.  For example, Plaintiffs point out that Apple's new iPhone X and iPad 10.5 have a higher "base memory" (64 GB) than earlier Apple models, while "the size of iOS 11 has decreased" relative to iOS 8.  SAC ¶ 1.  But Plaintiffs do

---

[12] That Plaintiffs apparently dispute the meaning of Apple's disclosure that the "actual formatted capacity" of its devices is "less" than 16 GB is beside the point.  *See* SAC ¶¶ 2, 27.  The Court already held "no reasonable consumer could have read [Apple's] materials" with this disclosure "and concluded that an entire 16 GB would be available for personal use on a 16 GB iPhone." Order at 8.  And in any event, Plaintiffs' disputed meaning does not support their theory of "fraud" premised on their "expectation" about the relative size of iOS 8.

not—and cannot—explain how allegations about Apple products released in 2017 could possibly have affected their "expectations" about the size of iOS 8 when they bought their devices three to five years earlier, in 2012 and 2014. *See id.* ¶¶ 16-21. Similarly, Plaintiffs state that Samsung's current disclaimer for the Galaxy S8 says that "User memory is less than the total memory due to the storage of the operating system and software used to operate the features." *Id.* ¶ 2. But statements from a different manufacturer about a different device—that likewise was released in 2017—are irrelevant to Plaintiffs' purported "expectations" held 3-5 years earlier about the size of iOS 8. Nor do Plaintiffs contend they ever saw or relied upon Samsung's disclosure in any event. And the Court already held that Apple was clear to consumers that "the 'actual formatted capacity' of [its] devices would be 'less' than the full 16 GB." *See* Order at 8. (*See also* RJN, Exs. O-R Nothing about Apple's (much less Samsung's) newer devices has any bearing on Plaintiffs' expectations about iOS 8 in 2012 and 2014, and thus cannot support their "fraud" claims.

Finally, Plaintiffs repeat their old allegations that Apple "forces consumers to retain applications that many consumers do not want, but are unable to delete"—now adding an example in the SAC that the "Apple Watch" was "a required application" in iOS 8.2 that "could not be deleted." SAC ¶ 2. But the fact that "iPhones and iPads … come pre-installed with an operating system ***and applications***" is something "[c]onsumers know and expect." *See* Order at 8 (emphasis added). And providing examples of certain applications that cannot be deleted does not change this conclusion. More fundamentally, the Apple Watch (released in 2015) did not even exist at the time Plaintiffs bought their devices and thus, again, could not possibly support their contemporaneous expectations about the size of iOS 8.

In sum, the SAC still falls far short of explaining the basis for Plaintiffs' "expectations" about the size of iOS 8 or otherwise "allow[ing] Apple to pinpoint which of its representations (or materials containing omissions) gave rise to the alleged mistaken expectations which underlie Plaintiffs' theory of deception—i.e., that Apple deceived Plaintiffs into thinking that iOS 8 would not consume as much storage capacity as it did." *Id.* at 11; *see also Red*, 2012 WL 5504011, at *2; *Freeman*, 68 F.3d at 289; *Punian*, 2016 WL 1029607, at *15; *Daugherty*, 144 Cal. App. 4th at

838; *Baltazar*, 2011 WL 3795013, at *6. Accordingly, Plaintiffs' SAC should be dismissed for the same reasons the Court dismissed the prior complaint.

### B. Plaintiffs Suffered No Cognizable Injury as a Result of Their Mistaken "Expectation" About the Size of iOS 8

As set forth above, Plaintiffs still do not allege any facts to support their apparent belief that iOS 8 would not use between 3 and 3.5 GB of storage space. But even if they had, their claims would fail because they could not establish any resulting injury. To state a claim under the UCL, FAL, and CLRA, Plaintiffs must establish that Apple's alleged deception caused them injury. *E.g.*, Cal. Bus. & Prof. Code § 17204 (permitting claim by any "person who has suffered injury in fact and has lost money or property" from UCL violation); *id.* § 17535 (same for FAL); Cal. Civ. Code § 1780 (permitting claim by "[a]ny consumer who suffers any damage as a result" of a CLRA violation).

Here, Plaintiffs appear to allege that they "expected" an unspecified larger percentage of the 16 GB of storage to be available for personal use because Apple supposedly failed to disclose the "substantial" size of iOS 8. SAC ¶ 23; *id.* ¶¶ 1, 11, 29 (iOS 8 consumed between 2.9–3.4 GB, or 18.1–21.3%, of the 16 GB of storage). But Apple offers consumers, including Plaintiffs, 5 GB of *free storage* (RJN, Ex. S)—thus fully compensating for any "lost" storage space. Apple thus provides customers *more* total storage space than Plaintiffs' allegedly claim to have "expected." Since Plaintiffs cannot show that they suffered any tangible harm from Apple's alleged deception, their claims fail as a matter of law.

## V. SOFTWARE IS NOT COVERED BY THE CLRA

According to Plaintiffs, "[t]his case challenges storage capacity misrepresentations and omissions" related to iOS 8 (SAC ¶ 1), and "Apple's efforts to limit consumers' access to the storage Apple sold them" (*id.* ¶ 15). But iOS 8 obviously is software, and software is not a "good" under the CLRA. *E.g.*, *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *18-19 (N.D. Cal. Oct. 5, 2010) (excluding downloaded software from CLRA claims); *Lazebnik v. Apple Inc.*, 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (iTunes television show "Season Pass is not a 'good' within the meaning of the CLRA because … it is either software or a license, not a

'tangible chattel'"); *McMahon v. Take-Two Interactive Software, Inc.*, 2014 WL 324008, at *10 (C.D. Cal. Jan. 29, 2014) ("[S]oftware and online services fall outside the 'goods' and 'services' covered by the CLRA."). In addition, Plaintiffs cannot establish their "upgrade" subclass under the CLRA (SAC ¶ 42) because the iOS 8 upgrade is free. *Wofford v. Apple Inc.*, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) ("[T]his Court finds that plaintiffs fail to state a claim under the CLRA, because the free download of iOS4 on Plaintiffs' Third Generation iPhone does not meet the CLRA's 'sale or lease' requirement."). Accordingly, Plaintiffs' CLRA claim should be dismissed for this additional reason.

## VI.    CONCLUSION

For the reasons set out above, Apple respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint (Dkt. 48) with prejudice.

Dated: June 14, 2018

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
ADAM M. KAPLAN
SARAH H. TRELA

By:  /s/ Matthew D. Powers
      Matthew D. Powers

Attorneys for Defendant
APPLE INC.