MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
ADAM M. KAPLAN (S.B. #298077)
akaplan@omm.com
SARAH H. TRELA (S.B. #293089)
strela@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PAUL ORSHAN, CHRISTOPHER ENDARA, and DAVID HENDERSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:14-CV-05659-EJD<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: September 20, 2018<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor<br><br>Second Amended Complaint: May 1, 2018 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................... 1
II. THE COURT SHOULD RESOLVE THESE CLAIMS ON THE PLEADINGS ............... 3
III. PLAINTIFFS' "NEW" ALLEGATIONS DO NOT SAVE THEIR CLAIMS ................... 4
IV. PLAINTIFFS DO NOT ARTICULATE ANY PLAUSIBLE ECONOMIC HARM ......... 7
V. PLAINTIFFS' CLRA CLAIMS ARE BASED ON SOFTWARE ................................... 8
VI. APPLE'S MOTION SHOULD BE GRANTED WITH PREJUDICE ............................. 9
VII. CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

Page

**CASES**

*Baltazar v. Apple Inc.*,
  2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ................................................................. 4

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .......................................................................................... 4

*Foman v. Davis*,
  371 U.S. 178 (1962) ....................................................................................................... 9

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................................................ 4

*In re iPhone 4S Consumer Litig.*,
  2013 WL 3829653 (N.D. Cal. July 23, 2013) ................................................................ 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ............................................................................ 8

*In re Tobacco II*,
  46 Cal. 4th 298 (2009) .................................................................................................... 3

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 6

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .................................................................................................... 3

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) .......................................................................................... 9

*McKinniss v. Sunny Delight Bevs.*,
  2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ................................................................. 3

*Moore v. Apple Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ........................................................................... 8

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ............................................................... 3

*Red v. Kraft Foods*,
  2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................................................ 3

*Wanca v. Super Micro Computer, Inc.*,
  2018 WL 3145649 (N.D. Cal. June 27, 2018) ............................................................... 9

*Williamson v. McAfee, Inc.*,
  2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ............................................................... 8

*Wofford v. Apple Inc.*,
  2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ................................................................. 8

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) .................................................................................. 9

*Yastrab v. Apple Inc.*,
    2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ................................................................. 3, 9

**STATUTES**

Cal. Bus. & Prof. Code § 17204 .................................................................................................... 7

Cal. Bus. & Prof. Code § 17535 .................................................................................................... 7

Cal. Civ. Code § 1780 .................................................................................................................... 7

**RULES**

Fed. R. Civ. P. 23 .......................................................................................................................... 4

## I. INTRODUCTION

By relying on the same conclusory assertions that this Court previously rejected in dismissing Plaintiffs' prior complaint, Plaintiffs' Opposition confirms that the SAC should be dismissed with prejudice. Despite the Court's clear guidance on stating a viable claim, Plaintiffs once again argue without support that they "expected" that iOS 8 would use less than ~3-3.5 GB of storage space. (*E.g.*, Opp. at 2, 5.) Plaintiffs still never explain how much space they actually "expected" iOS 8 to use. Plaintiffs still never provide any plausible basis for that "expectation." And Plaintiffs still never identify any statement—let alone one *by Apple*—that could have reasonably created such an "expectation."

As set out in Apple's Opening Brief, nothing Apple said about iOS 8 could possibly have led to an "expectation" that iOS 8 would use less than ~3-3.5 GB of storage. Apple told many consumers *exactly* how much additional storage space iOS 8 would use. (Mot. at 13; RJN, Ex. N.) And Apple's public statements about iOS 8 strongly suggested—if not outright declared—that iOS 8 would be larger than any prior version. (*Id*. at 12-13; RJN, Ex. M.) As this Court has recognized, it would be "absurd" for Plaintiffs to believe iOS 8 would not use *any* storage on their devices. (Order at 8-9.) If their devices did not come pre-installed with an operating system and applications, Plaintiffs' iPhones and iPads would be virtually useless.

Unable to dispute these facts, Plaintiffs devote much of their Opposition to simply reciting allegations from the current complaint. (*E.g.*, Opp. at 11-12.) But the allegations that they cite are the *same* allegations that this Court already considered—and rejected—in its prior dismissal order. (*Compare, e.g.*, Opp. at 11-12 *with* Order at 11.) In short, Plaintiffs have yet to identify any concrete "facts that would make it plausible that they indeed held the belief that iOS 8 would not consume a 'substantial' amount of storage." (Order at 11 n.2.) Seeking to salvage their case, Plaintiffs do purport to rely on a handful of "new" allegations from the SAC. (Opp. at 4, 11-12.) None of those "new" allegations, however, comes close to saving their claims.

First, Plaintiffs' argument that it was deceptive for Apple to pre-install "mandatory" applications on iOS 8 that allegedly could not be deleted (*id*.) is the same argument Plaintiffs made (and the Court rejected) in the last round of briefing. (*E.g.*, FAC ¶¶ 2, 28; Dkt. 28 at 4.)

1   The only *new* allegations that Plaintiffs add on this topic are *examples* of certain "mandatory"
2   applications. (Opp. at 4, 11-12 (citing SAC ¶ 28).) But adding a few examples of pre-installed
3   applications (*e.g.*, the Apple Watch app and the calculator app) does not change the fact that all
4   consumers "know and expect" that their devices "come pre-installed with an operating system
5   and applications." (Order at 8.) That is especially true here, since Plaintiffs never allege or argue
6   that the examples they identify had a significant impact on the overall size of iOS 8.

7   Second, Plaintiffs' attempt to manipulate the term "format" to dispute the meaning of
8   Apple's disclosure that the "actual formatted capacity" of its devices will be "less" than 16 GB
9   should be rejected. (Opp. at 4, 11 (citing SAC ¶ 27).) Specifically, Plaintiffs argue the disclosure
10  is "ambiguous" and thus presents "a question of fact" that should not be resolved on a motion to
11  dismiss. (*Id*. at 4.) But regardless of how "formatted capacity" might be interpreted, there is no
12  question Apple expressly told Plaintiffs and all other consumers that the actual capacity of their
13  devices would be "less" than 16 GB. As this Court already held, "no reasonable consumer could
14  have read [this disclosure] and concluded that the entire 16 GB would be available for personal
15  use[.]" (*See* Order at 8.) Nor do Plaintiffs ever argue (or allege) that *they personally* understood
16  "formatted capacity" in any particular way, or that they interpreted "formatted capacity" to mean
17  they would be able to use the entire 16 GB to store their personal data. By refusing to articulate
18  what their specific expectations about the size of iOS 8 even were, much less identify a valid
19  basis for those "expectations," Plaintiffs repeat the deficiencies on which this Court based its
20  prior dismissal order.

21  The other arguments in Plaintiffs' Opposition should also be rejected. For example, their
22  conclusory assertion that they suffered economic harm fails because, as Plaintiffs admit, Apple
23  provides all customers 5 GB of *free* iCloud storage space—more than making up for the ~3-3.5
24  GB that Plaintiffs contend was "lost" due to iOS 8. Plaintiffs' suggestion that iCloud space is
25  "less valuable" to them (Opp. at 14) is beside the point: Plaintiffs do not contend or allege that
26  they purchased iCloud storage or even reached the storage limits on their devices. Plaintiffs'
27  argument that their CLRA claims do not involve "software" fails as well. Even a cursory review
28  of the SAC makes clear that Plaintiffs' claims are based on the "unexpectedly large" size of iOS

8, not the physical attributes of their devices.  (*E.g.*, SAC ¶ 1.)  Finally, Plaintiffs' contention that the "reasonableness" of their "expectations" should not be resolved on the pleadings should be rejected out of hand.  This Court previously rejected Plaintiffs' claims based on their purported "expectations" in response to Apple's last motion to dismiss, and it should do so again here since Plaintiffs have failed to fix the problems the Court identified.

When this Court granted Apple's last motion, the Court "allow[ed] amendment" so that Plaintiffs could try to identify specific facts to plausibly support their assertion that they were "deceived into thinking that iOS 8 would not consume as much storage capacity as it did." (*See* Order at 12); *cf. Yastrab v. Apple Inc.*, 2015 WL 1307163, at *5 (N.D. Cal. Mar. 23, 2015) (Davila, J.) ("[w]ithout more detail describing the marketing materials Plaintiff reviewed before purchase, left unanswered is whether it was reasonable for Plaintiff to believe" an iPhone would meet his specific expectations); *Red v. Kraft Foods*, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012); *McKinniss v. Sunny Delight Bevs.*, 2007 WL 4766525, at *3-4 (C.D. Cal. Sept. 4, 2007); *Punian v. Gillette Co.*, 2016 WL 1029607, at *15 (N.D. Cal. Mar. 15, 2016).  But Plaintiffs are apparently incapable of doing so—nowhere in their Opposition do they identify any new facts that could plausibly justify their "expectations."  Given the futility of further amendment, the Court should dismiss Plaintiffs' claims with prejudice.

## II. THE COURT SHOULD RESOLVE THESE CLAIMS ON THE PLEADINGS

Plaintiffs cannot avoid resolution of their claims on the pleadings.  Their assertion that whether a business practice is "deceptive" cannot "usually" be resolved on a motion to dismiss misses the point.  Plaintiffs must plead specific facts to show *both* that they personally relied on a misrepresentation or omission *and* that their reliance was reasonable under the circumstances (*i.e.*, the "reasonable consumer test").  *E.g.*, *In re Tobacco II*, 46 Cal. 4th 298, 328 (2009) ("We conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of [the UCL]."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).  Thus, Plaintiffs must plausibly articulate the specific sources and factual bases for their *personal* "expectation" regarding the size of iOS 8 and explain why the products they purchased failed to satisfy that "expectation."  *Id.*; *Yastrab*, 2015 WL 1307163, at *5; (Order at 6 n.1 ("consumer expectations"

are an element of Plaintiffs' claims).) But as detailed in Apple's Opening Brief and discussed below, Plaintiffs' "allegations regarding their beliefs are merely conclusory statements, which do not raise [their] right to relief above the speculative level." (Order at 11 n.2.)

Even if Plaintiffs had pleaded facts to show their own personal expectations and reliance, dismissal under the "reasonable consumer" test is still appropriate on the pleadings because "a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." (*Id.* at 6-7); *Baltazar v. Apple Inc.*, 2011 WL 3795013, at *6 (N.D. Cal. Aug. 26, 2011) ("[I]f an alleged misrepresentation would not deceive a reasonable consumer …, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss."). Given the statements that Apple *did* make about iOS—including telling consumers exactly how much space iOS 8 used, explaining the "actual" capacity of the devices was "less" than 16 GB, and touting iOS 8 as a big release with new features and functionality—it is unreasonable as a matter of law for Plaintiffs to have believed that iOS 8 would be smaller than prior iOS versions or would use less ~3-3.5 GB. *See infra* Section III; (Mot. at 12-15); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (affirming dismissal of claims under reasonable consumer test where alleged deception was inconsistent with statements defendant actually made); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016).[1]

## III. PLAINTIFFS' "NEW" ALLEGATIONS DO NOT SAVE THEIR CLAIMS

Plaintiffs' Opposition relies largely on the same vague allegations this Court has squarely rejected. Although Plaintiffs highlight nine allegations (listed in bullet points) that purportedly support their claims (Opp. at 11-12)—focusing mostly on Apple's "16 GB" statement—seven of them (Nos. 1-5, 8-9) were either copied verbatim or are substantively identical to the allegations in the FAC. (*Compare* Opp. at 11-12 *with* Redline, Dkt. 52-1 ¶¶ 15, 16, 18-21, 22-23, 24, 26, 31-32.) Plaintiffs still have alleged "no facts that would make it plausible that they indeed held the

---

[1] Plaintiffs note that some consumers upgraded their devices "using the wired protocol." (Opp. at 6 n.5.) Even if true, that hardly negates the fact that all consumers who upgraded wirelessly were told exactly how much storage space iOS 8 would consume. And that some consumers may be situated differently in this regard only foreshadows the significant hurdles that Plaintiffs would face at class certification. *See* Fed. R. Civ. P. 23 (requiring, among other things, that common issues predominate over individualized issues).

belief that iOS 8 would not consume a 'substantial' amount of storage." (Order at 11 n.2 (citing FAC ¶¶ 18, 20, 23); *see also id.* (criticizing Plaintiffs for alleging "in a conclusory fashion that [Plaintiffs] believed that iOS 8 would not consume as 'substantial' a portion of the storage space as it did, but providing no facts that would render these beliefs plausible").) Thus, just as before, the "facts" Plaintiffs cite "regarding their beliefs [are] merely conclusory statements, which d[o] not 'raise [their] right to relief above the speculative level.'" (*Id.*)[2]

Sandwiched within Plaintiffs' recycled allegations are two bullet points—Nos. 6 and 7 of their Opposition (Opp. at 11-12)—that try to pass for "new" facts. But neither of those "new" allegations saves Plaintiffs' claims.

First, in an attempt to stretch the meaning of the term "format," Plaintiffs take the untenable position that Apple's disclosure (that the "actual formatted capacity" of its devices is "less" than 16 GB) is "ambiguous." (*Id.* at 4.) Specifically, Plaintiffs contend that their claims should survive because Apple did not explicitly state "how much less" space would be available and because the term "format" supposedly has a technical dictionary definition. (Opp. at 4, 11 (citing SAC ¶ 27).) Whatever the potential meaning of "formatted capacity" might be, however, there can be no doubt that Apple unambiguously communicated to consumers that the "actual" capacity of the devices would be "less" than 16 GB. (Order at 8.) That the disclosure does not say exactly "how much less" space is beside the point: In light of the disclosure, neither Plaintiffs nor any other consumer could possibly have believed the full 16 GB would be available to store personal data. Again, if Plaintiffs contend the size of iOS 8 was inconsistent with their purported "expectations," then they must plead facts that "would make it plausible that [they] indeed held the belief that iOS 8 would not consume a 'substantial' amount of storage." (*Id.* at 11 n.2.) But Plaintiffs do not contend (or allege) that they *personally* understood "formatted capacity" in a way that communicated that 100% of the 16 GB (or close to it) would be available. Nor could

---

[2] Contrary to Plaintiffs' suggestion that Apple "does not contest that the Devices pre-installed with iOS 8 have far less storage capacity than the 16 GB advertised" (Opp. at 2), Apple stated explicitly in its motion that the devices *do* have 16 GB of storage capacity—a fact that Plaintiffs cannot seriously dispute. (Mot. at 12.) Instead, the dispute here is over how some of that storage space is used—*i.e.*, whether it is "fraudulent" to ship a device with pre-installed operating software and applications.

APPLE'S REPLY ISO MTD SAC
NO. 5:14-CV-05659-EJD

1   they plausibly do so: everything else Apple communicated to the public about iOS 8 made it very
2   clear (*e.g.*, the specific disclosure to wireless upgraders) or strongly suggested (*e.g.*, Apple's
3   marketing statements) that iOS 8 would be larger than prior versions of the operating systems.
4   (*See* Mot. at 12-13; RJN, Exs. M, N.)[3]

5   Second, Plaintiffs repeat their failed argument that it was improper for Apple to pre-install
6   certain "mandatory" applications on iOS 8. (*See* Opp. at 4, 11 (citing SAC ¶ 28).) As this Court
7   has already held, reasonable consumers "know and expect" that their iPhones and iPads are "fully
8   functional devices that come pre-installed with an operating system *and applications*." (Order at
9   8 (emphasis added).) The only *new* allegations in the SAC on this topic are examples of these
10  "mandatory" applications—such as the Apple Watch app, and the "calculator, calendar, camera,
11  clock, compass, [and] FaceTime" apps. (Opp. at 4.) But simply listing some examples of certain
12  "mandatory" applications does nothing to rebut the Court's prior conclusion that all consumers
13  "know and expect" that devices come with software pre-installed. That is particularly true here,
14  since Plaintiffs never argue (much less allege in their SAC) that these programs used a substantial
15  amount of storage or otherwise explain how the cited examples support their "expectation" about
16  the size of iOS 8. Indeed, some of the applications—including the Apple Watch app (SAC ¶ 2)—
17  were released long *after* Plaintiffs bought their devices and thus could not possibly have affected
18  their "expectations" at the time of their purchases.[4]

---

[3] Plaintiffs also continue to assert the size of iOS 8 was part of some "complicated" scheme to sell iCloud space. (*E.g.*, Opp. at 2, 6.) Again, that argument makes no sense. There is no dispute that the first 5 GB of iCloud storage has always been free for consumers, and the free 5 GB more than covers the ~3-3.5 GB that Plaintiffs argue was used by iOS 8. (RJN, Ex. S.) In fact, Plaintiffs' assertion that "the outcome of this motion turns upon" Apple's "targeted ads" related to this "scheme" (Opp. at 1) is essentially an admission that Apple's motion must be granted. Plaintiffs have never: (1) identified the "ads" they refer to; (2) explained what language in those "ads" was false or misleading; or (3) alleged that they personally saw or relied on such "ads" before buying their devices. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to "specify what the television advertisements or other sales material specifically stated … when he was exposed to them or which ones he found material … [and] which sales material he relied upon in making his decision to buy a [] vehicle").

[4] Plaintiffs' assertion that they "upgraded to iOS 8 because the latest iOS indicated that it allegedly provided Plaintiffs with important security updates and functionality" (Opp. at 4) has nothing to do with Plaintiffs' purported "expectation" about the size of iOS 8. Plaintiffs never argue or allege that any statement they saw about "important security updates and functionality" suggested that iOS 8 would not consume as much storage space. In any event, Plaintiffs do not

APPLE'S REPLY ISO MTD SAC
NO. 5:14-CV-05659-EJD

In sum, Plaintiffs have yet to identify a single statement by Apple that could lead a reasonable consumer to believe that iOS 8 would use less than ~3-3.5 GB, and they still refuse to explain exactly how big they "expected" iOS 8 would be (let alone detail a plausible basis for such an "expectation"). Their claims thus fail for the same reasons as before.

### IV. PLAINTIFFS DO NOT ARTICULATE ANY PLAUSIBLE ECONOMIC HARM

Plaintiffs' allegations of economic harm—in the face of a *free* operating system that Apple supplements with *free* storage—should be summarily rejected. They base their economic harm argument on the fact that Apple's free iCloud storage is not exactly the same as the storage on a device's hard drive. (Opp. at 14.) But that does not mean Plaintiffs were *injured*. Apple never promised iCloud would be literally identical to hard drive storage, and whether device storage and iCloud storage are identical is beside the point—the issue is whether Plaintiffs were induced to spend money (or otherwise suffered a tangible economic loss) as a result of Apple's alleged conduct. *See* Cal. Bus. & Prof. Code § 17204 (UCL); *id.* § 17535 (FAL); Cal. Civ. Code § 1780 (CLRA).

Here, Apple provided iOS 8 to all users *for free*, and gives users *more* free iCloud storage space (5 GB) than the "unexpectedly large" amount of storage space that Plaintiffs say was "lost" due to iOS 8 (~3-3.5 GB). (*See* RJN, Ex. S.) Plaintiffs do not allege that they were induced to buy their devices because of any promise about the size of iOS 8 or the nature of iCloud storage space. They do not allege they ever ran out space on their devices or that the difference between local and iCloud storage had any impact on their use of the devices. Nor do Plaintiffs contend that they were forced to buy more iCloud storage, or that they could have purchased other devices with more efficient operating systems from another company.[5] Under the circumstances, the only way Plaintiffs could potentially have been "injured" would be if they reasonably expected that iOS 8 would be smaller than ~3-3.5 GB (which, again, they have been unable to allege) ***and*** they

---

contend that iOS 8 failed to deliver the "important security updates and functionality" that they were promised.

[5] In fact, "Apple's smartphones are actually among the most frugal in using up storage" relative to competing products. (*See* Mot. at 3 n.3, 13 (citing SAC ¶ 30); *see also, e.g.*, RJN, Ex. L ("Apple is one of the most efficient users of storage space on its devices like the iPhone and iPad—much more so than Android phones, Samsung and especially Microsoft.").)

1  could allege that the difference in storage was so significant that it exceeded the benefits of the 5
2  GB of iCloud space Apple provides for free.  Of course, they have not alleged anything even
3  close to those facts and thus have no cognizable economic harm.

4  V.     **PLAINTIFFS' CLRA CLAIMS ARE BASED ON SOFTWARE**

5       Because there is no dispute that the CLRA does not cover software, and iOS 8 is clearly
6  software, Plaintiffs' CLRA claims cannot survive.  (Mot. at 15-16; Opp. at 14-16); *Williamson v.*
7  *McAfee, Inc.*, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014).  Nevertheless, in an attempt to
8  salvage their CLRA claims, Plaintiffs argue that this case is *really* about the purchase of iPhones
9  and iPads ("goods") rather than iOS 8 itself.  (Opp. at 15.)  Not so.  Plaintiffs' own complaint is
10 clear that the underlying reason that they claim to have been "defrauded" is the size of the iOS 8
11 software.  (*E.g.*, SAC ¶ 1 ("iOS 8 used an unexpectedly large percentage of the storage capacity
12 on 16 GB iPhones and iPads.").)  But for the alleged "inordinate amount of space consumed by
13 Apple's iOS 8," Plaintiffs would have no claims at all.  (*Id.*; *see also id.* ¶ 32 ("Apple fails to
14 disclose that upgrading from iOS 7 to iOS 8 will cost a Device user between [0.6]-1.3GB of
15 storage space[.]").)  Indeed, the members of Plaintiffs' proposed "Upgrade" classes (*id.* ¶ 41)—
16 including Plaintiffs Orshan and Henderson (*id.* ¶¶ 18, 22)—were allegedly injured because they
17 downloaded (free) iOS 8 software to devices they had purchased years earlier.  Their claims
18 depend *exclusively* on that software download—Plaintiffs do not argue that the sale of the devices
19 themselves, with iOS 7, was improper in any way.[6]  The central issue in this case is the size of
20 (and statements about) iOS 8—and since the central claims at issue are over *software*, the CLRA
21 does not apply.  *E.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.
22 Supp. 2d 942, 972 (S.D. Cal. 2012) (no CLRA claim for online video-game network, even if such
23 network was intended to be used with a physical device).[7]

---

[6] As Plaintiffs admit, "one cannot purchase iOS 8 because it is free." (*See* Opp. at 15.)  This admission is fatal to the claims by the proposed Upgrade CLRA Subclass (SAC ¶ 41). *E.g.*, *Wofford v. Apple Inc.*, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) (where iOS software upgrade was "free of charge," the CLRA did not provide a cause of action); *cf. Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1201-02 (N.D. Cal. 2014) (iPhone purchase seven months before allegedly deceptive iOS upgrade lacked causal link to state CLRA claim).

[7] The cases Plaintiffs cite are distinguishable.  In *In re iPhone 4S Consumer Litigation*, 2013 WL 3829653, at *13 (N.D. Cal. July 23, 2013), the court permitted a CLRA claim premised on a

## VI. APPLE'S MOTION SHOULD BE GRANTED WITH PREJUDICE

Finally, Plaintiffs' request for permission to file yet another amended complaint should be rejected. Leave to amend should be denied where, as here, Plaintiffs fail to "cure deficiencies by amendment previously allowed." *E.g.*, *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 982 (N.D. Cal. 2016) (Davila, J.); (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008); *Wanca v. Super Micro Computer, Inc.*, 2018 WL 3145649, at *9 (N.D. Cal. June 27, 2018) (Davila, J.) (same); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (same). Here, as in *Yastrab* and *Wanca*, Plaintiffs have failed "to remedy the deficiencies identified by the Court in the prior order dismissing these same claims." *Yastrab*, 173 F. Supp. 3d at 982; *Wanca*, 2018 WL 3145649, at *9. For the reasons described above and in Apple's Opening Brief, the allegations in Plaintiffs' SAC "still do not satisfy Rule 9(b)'s heightened pleading standard and fail to establish a plausible claim" that Plaintiffs reasonably "expected" iOS 8 to use less than ~3-3.5 GB of storage space. *See Yastrab*, 173 F. Supp. 3d at 982; (Order at 10-11.) Accordingly, "permitting further amendment would be futile," and the SAC should be dismissed, this time with prejudice. *Yastrab*, 173 F. Supp. 3d at 982.

## VII. CONCLUSION

Apple respectfully requests that this Court dismiss Plaintiffs' Second Amended Complaint (Dkt. 48) with prejudice.

Dated: August 22, 2018

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
ADAM M. KAPLAN
SARAH H. TRELA

By: /s/ Matthew D. Powers
Matthew D. Powers

Attorneys for Defendant
APPLE INC.

---

defect in the functionality of an iPhone feature (Siri), whereas Plaintiffs challenge the size of the iOS 8 software itself. And in *Yastrab*, 2015 WL 1307163, at *5, the plaintiff's claims were "directed at the inoperability of his phone, not a problem with the iOS 7 software itself." Here, by contrast, Plaintiffs' core challenge is to the "unexpectedly large" size of the iOS 8 software. (*E.g.*, SAC ¶ 1.)