1  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
2  ANDREW J. WEISBERG (S.B. #307519)
   aweisberg@omm.com
3  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
4  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
5  Facsimile:    (415) 984-8701

6  Attorneys for Defendant
   Apple Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAUL ORSHAN, CHRISTOPHER ENDARA, DAVID HENDERSON, and STEVEN NEOCLEOUS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:14-CV-05659-EJD<br><br>**JOINT STATEMENT OF DEFENDANT APPLE INC. AND PLAINTIFFS PAUL ORSHAN, CHRISTOPHER ENDARA, DAVID HENDERSON, AND STEVEN NEOCLEOUS REGARDING APPLE'S MOTION TO COMPEL FURTHER RESPONSES IN RESPONSE TO INTERROGATORIES (SET TWO)**<br><br>Consol. Am. Compl.<br>Filed:           July 17, 2020<br>Trial Date:    None Set<br><br>Judge:                       Hon. Edward J. Davila<br>Magistrate Judge:   Hon. Nathanael M. Cousins |

Pursuant to the Court's Civil Standing Order dated March 15, 2019, Defendant Apple Inc. ("Apple") and Plaintiffs Paul Orshan, Christopher Endara, David Henderson, and Steven Neocleous (collectively, "Plaintiffs") submit this joint statement regarding Apple's motion, pursuant to Fed. R. Civ. P. ("FRCP") 37, to compel Plaintiffs' production of further responses in regard to Apple's Second Set of Interrogatories ("SIs") Nos. 2 and 4-9.

I.      **DESCRIPTION OF UNRESOLVED ISSUES**

Apple served its SIs on August 27, 2021, directing a different set of substantially similar interrogatories to each Plaintiff. SI 2 asks each Plaintiff to "state the amount of storage that was being used on the [iOS device(s)] that [he] identified in the [Consolidated Amended Complaint ("CAC" or "Complaint")] [ ] on December 30, 2014, the date [he] filed [his] initial complaint in this case." SIs 4-5 ask each Plaintiff, for each iOS device he identified in the Complaint, to state the date of each backup, the method/device used to conduct each backup, and the amount of storage in use on that iOS device at the time of each backup.[1] SIs 6-9 ask each Plaintiff, for 3-9 listed devices not named or referenced in the Complaint but associated with his Apple ID, to state the amount of storage currently being used on each device, the methods used to back up each device (*e.g.,* iTunes or iCloud), the date each backup of the device occurred and the method used for each backup, and the amount of storage in use on the device at the time of each backup.[2]

Plaintiffs served Initial Responses on October 4, 2021. The parties then engaged in a substantial meet-and-confer process, and Plaintiffs served Supplemental Responses on December 22, 2021. Apple believes those Supplemental Responses remain insufficient. Plaintiffs disagree.

---

[1] SI 4 asks "[f]or the device[s] you identified in the CAC [ ], please state the date that each back-up occurred and explain the method and/or device that was used to create the back-up." SI 5 asks "[f]or each of the back-ups you identified in Your response to Interrogatory No. 4, please state the amount of storage that was in use on the device [ ] at the time of each back-up."

[2] SI 6 asks "[p]lease state the amount of storage that is currently being used on the following devices that you purchased, used, or otherwise associated with your Apple ID," and then lists between 3 and 9 devices, not named in the Complaint, associated with each Plaintiff's Apple ID. SI 7 asks "[f]or each of the devices listed in Interrogatory No. 6, please identify and describe all methods that were used to back up the device, including but not limited to backing the device up with iCloud, backing the device up by connecting it to a laptop or desktop computer and creating a back-up using iTunes, or any other method of backing up that device." SI 8 asks "[f]or each of the back-ups you identified in Your response to Interrogatory No. 7, please state the date that each back-up occurred and explain the method and/or device that was used to create the back-up." SI 9 asks "[f]or each of the back-ups you identified in Your response to Interrogatory No. 8, please state the amount of storage that was in use on each device at the time of each back-up."

## II. APPLE'S POSITION AND PROPOSED COMPROMISE

In this putative consumer class action, the named Plaintiffs allege that iOS 8 used 2-3 GB of storage space on their Apple devices (Dkt. 80 ¶ 42)—a fact that, had they known it ahead of time, purportedly would have led each of them to make different purchase and upgrade decisions.[3]  Accordingly, each Plaintiff's *actual* use of the storage space on his iOS devices (both those directly at issue in the Complaint and others that he owned)—before, during, and after filing suit—is relevant because it speaks to whether Plaintiffs were actually using the space they supposedly "lost" to iOS 8, as well as how (if at all) that "lost" space impacted their future purchases and/or decisions to upgrade iOS.  *Synchronoss v. Dropbox*, 2018 WL 4613151, at *5 (N.D. Cal. Sept. 26, 2018) (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) ("relevance" encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").  Among other reasons, if Plaintiffs (a) were not using the space they "lost" to iOS 8 or (b) knew iOS occupied space, that impacts their ability to represent the class.  *See, e.g., Gen. Tel. v. Falcon,* 457 U.S. 147, 156 (1982) (plaintiffs must "possess the same interest and suffer the same injury" as unnamed class members).  **First**, whether or not Plaintiffs were using the space they "lost" to iOS 8 bears on causation of their purported "injury" (*In re Tobacco II,* 93 Cal. Rptr. 3d 559, 582 (2009)), and the veracity of their claims.  For example, evidence that a given Plaintiff only used 4 GB on his 16 GB iOS device at issue bears on his claim that he was injured by the 2-3 GB that iOS 8 occupied, and that he would have acted differently regarding his device(s) (*e.g.*, not purchased, etc.) had he known about it.  And a plaintiff whose personal data never occupied more than a few GB on his 16 GB devices

---

[3] Plaintiffs' arguments below intentionally misconstrue their own First Amended Complaint ("FAC").  While Plaintiffs now claim this case is generally "about Plaintiffs not receiving the storage capacity that they believed they purchased," the FAC shows otherwise, repeatedly alleging that Plaintiffs received less space on their devices than they purportedly expected because of the size of iOS 8.  *See, e.g.,* Dkt. 80 ¶¶ 44 ("Apple's misrepresentations and omissions are deceptive and misleading because they omit material facts that an average consumer would consider in deciding whether to purchase its products, namely, that when using iOS 8, as much as 3.7 GB of the represented storage capacity on a device represented to have 16 GB of storage capacity is, in fact, not available to the purchaser for storage."); ¶ 45 ("In addition to making material misrepresentations and omissions to prospective purchasers of Devices with iOS 8 pre-installed, Apple also makes misrepresentations and omissions to owners of Devices with predecessor operating systems. [. . .] Apple fails to disclose that upgrading from iOS 7 to iOS 8 will cost a Device user between 600 MB and 1.3 GB of storage space – a result that no consumer could reasonably anticipate.").  Indeed, Plaintiffs' proposed classes are all limited to iOS 8.  *Id.* ¶ 55 (listing proposed classes).  There would be no basis for an "upgrade class," for example, if the FAC's claims were just about receiving less than 16GB unrelated to iOS 8.

cannot credibly claim that the 2-3 GB used by iOS 8 (out of 16 GB total) was "material" to his purchase decision. Plaintiffs' backup files are also relevant because they are a snapshot in time showing the storage then being used.[4]  ***Second***, Plaintiffs' storage use on their other iOS devices is also relevant because all iOS devices (like any smartphone) allegedly suffer from the same supposed "issue" Plaintiffs are suing over (*i.e.,* that the operating system occupies some of the storage space). Accordingly, Plaintiffs' previous ownership/use of iOS devices would have made them aware of this "issue," and their subsequent purchases of iOS devices bear on their claim that they would have made different purchase/upgrade decisions if they had known the "truth."[5]

Plaintiffs nevertheless object to SI 2 and 4-9, arguing that information about the amount of space used on Plaintiffs' iOS devices over time is irrelevant and too burdensome to provide. For Plaintiffs Orshan and Endara, those objections are an apparent distraction from the fact that they *discarded their iOS devices at issue in the Complaint after they filed suit*—leaving Apple to ask about related iOS devices because the devices Plaintiffs are suing over are inaccessible. And, as to all Plaintiffs, these objections are simply inapt. As discussed above, the information sought bears directly on Plaintiffs' claims and class certification issues. Further, the requests are not "burdensome." Plaintiffs should already know much of this information if the allegations in their Complaint are accurate. And if Plaintiffs have their devices, the information takes only a few "clicks" to obtain. *See, e.g.*, https://support.apple.com/en-us/HT204215.[6] If Plaintiffs have discarded those iOS devices, they should explicitly say so and explain what happened. Plaintiffs' other objections, including that this information sought is equally accessible to Apple,[7] fail too.

For all the foregoing reasons, Plaintiffs' objections should be overruled and Plaintiffs should be ordered to respond in full to Apple's SI Nos. 2 and 4-9.

---

[4] Information about the method(s) used to create back-ups would facilitate discovery (if needed) about the backups.

[5] Setting aside the problems with Plaintiffs' analogy below between underfilled egg cartons and iOS devices (unlike a useless empty dimple in a carton, the storage space "missing" from Plaintiffs' devices was hosting and running the iOS operating system), it highlights the relevance of the information sought. If a plaintiff claimed he was injured because his carton only contained nine eggs instead of twelve, evidence that he only used three eggs before throwing the box away, that he had previously purchased "underfilled" cartons and kept doing so, or that he continued purchasing "underfilled" cartons afterward would all be relevant to the materiality and veracity of his claim.

[6] Plaintiffs' burden objection also fails because burden claims must be stated "with specificity," (FRCP 33(b)(4)), which Plaintiffs fail to do. Plaintiffs rely on rhetoric, focusing on the quantity of information requested but making no showing that determining it would actually be particularly burdensome. As Apple explained during meet-and-confer discussions, retrieving it only requires a few "clicks" and the process is explained on the Apple Support site.

[7] Apple does not have the devices and cannot remotely determine the amount of storage used on Plaintiffs' devices.

### III. PLAINTIFFS' POSITION AND PROPOSED COMPROMISE

Apple's SIs suffer from two independent infirmities. First, they seek discovery irrelevant to this case, which is about Plaintiffs not receiving the storage capacity that they believed they purchased. Second, the discovery that they seek is not proportional to the needs of this case.

SIs 2 and 4-5 ask for historical data points of the total amount of storage capacity used on the iOS devices that Plaintiffs referenced in the Complaint. These data points are not relevant to the question of whether, at the time of purchase, Plaintiffs received the 16 GB of storage capacity that they thought they paid for. By way of analogy, if a consumer thinks that they bought a dozen eggs, but only actually received nine eggs, how many eggs that consumer actually ate is not relevant to whether, at the time of contracting, that consumer received the benefit of their bargain.

SIs 6-9 ask for the same historical data points, but from devices that are not the devices that Plaintiffs specifically referenced in the Complaint—which are the devices that Plaintiffs specifically alleged had a damaging lack of storage capacity well below that which they thought they purchased. To extend the above analogy, similarly irrelevant is how many eggs the consumer ate from different cartons, some of which were purchased more than a decade ago.

Plaintiffs' "individualized circumstances" regarding use of storage capacity are "not relevant to the question" of whether Apple misrepresented how much capacity they would receive. *In re Wells Fargo Residential Mortg. Lending Discrim. Litig.*, 2009 U.S. Dist. LEXIS 130344, at *20 (N.D. Cal. Mar. 3, 2009). And SIs 6-9 seek "information about" many devices that are "irrelevant to this litigation." *Sun Microsystems, Inc. v. Network Appliance*, 2009 U.S. Dist. LEXIS 122779, at *25 (N.D. Cal. Dec. 21, 2009). Apple has "not shown how Plaintiffs' . . . purchases . . . of other [iOS devices] . . . are relevant to the determination about whether Plaintiffs relied on [Apple's] alleged misrepresentations." *In re : Coca-Cola Prods. Mktg. & Sales Practices Litig. No. II*, 2015 U.S. Dist. LEXIS 113352, at *11-12 (N.D. Cal. Aug. 26, 2015). Information "about [devices] other than the one[s] at issue in this case" is "irrelevant and not discoverable." *Fang-Yuh Hsieh v. Stanford Univ.*, 2011 U.S. Dist. LEXIS 74299, at *10 (N.D. Cal. July 11, 2011). *See also Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) ("[T]he fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether

they purchased Kashi products specifically because they were supposedly healthy and natural.").

And as for burden, Plaintiffs are individual consumers, but the above SIs treat them as Apple's well-resourced corporate rivals. SIs 4 and 5 seek (1) the date of each and every backup, of sometimes multiple devices (three for Mr. Orshan; one for the other three Plaintiffs) over a nearly seven-year period of time, (2) the method or device used to create each and every backup, and (3) the amount of storage in use on the device at the time of each and every backup. And SIs 6-9 likewise seek an exhaustive amount of information. They ask Plaintiffs to search for (1) the amount of storage currently used, (2) all methods that were used to back up the device, (3) the date of each and every backup, (4) the method of each and every backup, and (5) the amount of storage in use at the time of each and every backup, *across a host of devices* (*three* for Orshan, *nine* for Mr. Endara, *eight* for Mr. Neocleous, *seven* for Mr. Henderson), the newest of which was purchased (according to Apple) *over seven* years ago for three Plaintiffs (for Mr. Neocleous, over a year ago), and the oldest of which was purchased (according to Apple) *over twelve* years ago.

Interrogatories such as these, which are "designed to force an exhaustive or oppressive catalogue of information[,] are generally improper." *Romero v. Fla. Light & Power Co.*, 2010 U.S. Dist. LEXIS 149426, at *6-7 (M.D. Fla. June 8, 2010).[8] These "broadly framed" interrogatories are "burdensome and not proportional to the needs of the case," especially as they "could be considered to consist of multiple interrogatories within a single interrogatory." *Colony Ins. Co. v. Mt. Hawley Ins. Co.*, 2018 U.S. Dist. LEXIS 197157, at *4 (N.D. Cal. Nov. 19, 2018). Apple's SIs are "well beyond the scope and purpose of this action," placing an undue burden on Plaintiffs to collect irrelevant information. *Brown's Crew Car of Wyo. LLC v. State Transp. Auth.*, 2009 U.S. Dist. LEXIS 39469, at *14-15, 18-19 (D. Nev. May 1, 2009). SIs 6-9 are exceptionally burdensome, as they ask Plaintiffs to "provide detailed information about [devices that were] not part of this litigation." *Brown v. Stroud*, 2010 U.S. Dist. LEXIS 94492, at *24-25 (N.D. Cal. Aug. 24, 2010); *see also Unicolors, Inc. v. Kohl's Dep't Stores, Inc.*, 2018 U.S. Dist. LEXIS 226050, at *14 (C.D. Cal. Mar. 6, 2018) (information on fabrics other than the "fabric at issue" in the case was not "relevant and/or proportional"). Plaintiffs need not answer the above SIs 2, 4-5, and 6-9.

---

[8] This is especially true here, as in Plaintiffs' view, Apple already has access to much of the information requested. For example, Apple has produced a spreadsheet showing all the space available among different iOS devices.

| | | |
|---|---|---|
| 1 | Dated: February 10, 2022 | O'MELVENY & MYERS LLP |
| 2 | | MATTHEW D. POWERS |
| | | ANDREW J. WEISBERG |

By:  /s/ Matthew D. Powers
       Matthew D. Powers

*Attorneys for Defendant*
APPLE INC.

Dated: February 10, 2022

By:  /s/ William H. Anderson
       William H. Anderson

WILLIAM H. ANDERSON (Pro Hac Vice)
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (844) 300-1852
wanderson@hfajustice.com

CLAYTON HALUNEN (Pro Hac Vice)
AMY BOYLE (Pro Hac Vice)
CHRISTOPHER MORELAND (Pro Hac Vice)
HALUNEN & ASSOCIATES
80 South Eighth Street, Suite #1650
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
halunen@halunenlaw.com
boyle@halunenlaw.com
moreland@halunenlaw.com

JON M. HERSKOWITZ (Pro Hac Vice)
BARON & HERSKOWITZ
9100 S. Dadeland Blvd., Suite 1704
Miami, Florida 33156
Telephone: (305) 670-0101
Facsimile: (305) 670-2393
jon@bhfloridalaw.com

MICHAEL MCSHANE (SBN 127944)
LING Y. KUANG (SBN 296873)
KURT D. KESSLER (SBN 327334)
AUDET & PARTNERS, LLP
711 Van Ness Ave., Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com
kkessler@audetlaw.com

MATTHEW K. HANDLEY (Pro Hac Vice)
STEPHEN PEARSON (Pro Hac Vice)
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Floor
Washington, DC 20001
Telephone: (303) 800-9109
mhandley@hfajustice.com
spearson@hfajustice.com

REBECCA P. CHANG (Pro Hac Vice)
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
Telephone: (303) 800-9109
rchang@hfajustice.com

CHARLES J. LADUCA (Pro Hac Vice)
C. WILLIAM FRICK (Pro Hac Vice)
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, N.W., Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charlesl@cuneolaw.com
bill@cuneolaw.com

ROBERT SHELQUIST (Pro Hac Vice)
REBECCA PETERSON (SBN 241858)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**Local Rule 5-1(h)(3) Attestation**

I hereby attest, pursuant to Northern District of California Local Rule 5-1(h)(3), that the other signatories listed, on whose behalf this filing is submitted, have concurred in the filing of this document.

Dated: February 10, 2022

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
ANDREW J. WEISBERG

By:  */s/ Matthew D. Powers*
         Matthew D. Powers

*Attorneys for Defendant*
APPLE INC.

Case 5:14-cv-05659-EJD     Document 117     Filed 02/10/22     Page 10 of 10