United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL ORSHAN, et al.,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No. 5:14-cv-05659-EJD

**ORDER DENYING MOTION FOR CLASS CERTIFICATION; GRANTING MOTION TO STRIKE REPLY DECLARATION**

Re: ECF Nos. 124, 149

Plaintiffs Paul Orshan, Steven Neocleous, and Christopher Endara[1] bring this putative class action against Defendant Apple Inc., alleging that Apple misled consumers regarding the storage capacity of certain smartphone and tablet devices running its iOS 8 operating system. Before the Court are Plaintiffs' motion for class certification ("Mot.") (ECF No. 124) and Apple's motion to strike the reply declaration of Dr. Andreas Groehn, Plaintiffs' survey and damages expert (ECF No. 149). After careful consideration of the pleadings, the record, the parties' briefs,[2] and argument at the hearing on February 23, 2023, the Court DENIES WITHOUT PREJUDICE the motion for class certification and GRANTS the motion to strike Dr. Groehn's reply declaration.

[1] David Henderson is identified as a named plaintiff but is not seeking to serve as a class representative.

[2] The Court is disappointed that Apple's opposition to class certification and its two evidentiary briefs contain over 100 single-spaced footnotes, many of which are substantive and significant in length. This misuse of footnotes is especially egregious considering that the Court already granted the parties' stipulation to extend the page limit for Apple's opposition by ten additional pages. Footnotes are not a tool for circumventing page limits. Apple is admonished that in future briefing, the Court expects it to exercise better judgment regarding footnotes and to adhere to the Court's Standing Order requiring footnotes to be double-spaced.

## I. BACKGROUND

Plaintiffs are consumers who either purchased 16 GB Apple devices with iOS 8 preinstalled, or who owned 16 GB Apple devices that they upgraded to iOS 8 following purchase. Decl. of Paul Orshan ("Orshan Decl."), ECF No. 124-32 ¶¶ 2-3; Decl. of Steven Neocleous ("Neocleous Decl."), ECF No. 124-33 ¶¶ 2-3; Decl. of Christopher Endara ("Endara Decl."), ECF No. 124-34 ¶¶ 2-3. Plaintiffs assert that, based on Apple's representations, they expected to receive 16 GB of storage space for personal use and were unaware that iOS 8 took up a significant portion of the devices' 16 GB capacity. Orshan Decl. ¶¶ 4-5; Neocleous Decl. ¶¶ 4-5; Endara Decl. ¶¶ 4-5. Had they known how much space iOS 8 required, Plaintiffs contend, they would not have purchased their 16 GB Apple devices. Orshan Decl. ¶ 5; Neocleous Decl. ¶ 5; Endara Decl. ¶ 5. On this basis, Plaintiffs filed suit individually and on behalf of two proposed nationwide subclasses, bringing three claims under California consumer protection laws: (1) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; and (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. Consolidated Compl., ECF No. 80 ¶¶ 63-88.

Plaintiffs now propose two subclasses. First, they propose a "Preinstall Subclass" consisting of "[a]ll persons who purchased new [16 GB iPhones and iPads] in the United States during the Class Period with iOS 8 preinstalled." Mot. at 1, 15. Second, they propose an "Upgrade Subclass" consisting of "[a]ll persons who purchased new [16 GB iPhones and iPads] in the United States during the Class Period with a predecessor operating system (iOS) and subsequently installed iOS 8." *Id.* As used in their class definitions, "Class Period" means "up to and including September 30, 2016." *Id.* at 1.

## II. EVIDENTIARY OBJECTIONS

Before the Court turns to Plaintiffs' motion for class certification, it first addresses the parties' objections to expert witnesses. Opinion testimony by experts is permissible only if the party offering the expert shows that (1) the expert is qualified; (2) the expert's opinions are

relevant; and (3) the expert evidence rests on a reliable foundation. *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378, at *3 (N.D. Cal. Apr. 5, 2021) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993); *Young v. Cree Inc.*, No. 4:17-CV-06252-YGR, 2021 WL 292549, at *4 (N.D. Cal. Jan. 28, 2021)). On a motion for class certification, the Court need not conduct a full *Daubert* analysis. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012). Instead, the Court assesses expert evidence to determine if it is "useful in evaluating whether class certification requirements have been met." *Id.* (citation omitted). Thus, the Court "scrutinize[s] the reliability of the expert [evidence] in light of the criteria for class certification and the current state of the evidence." *Id.* (first alteration in original) (citation omitted).

**A. Dr. Andreas Groehn**

Plaintiffs submit the report of Dr. Andreas Groehn for two purposes. Groehn Rep., ECF No. 124-31. First, Plaintiffs offer Dr. Groehn as a survey expert providing opinions about consumer perceptions and preferences regarding storage space. *Id.* ¶¶ 16-61. Second, they offer Dr. Groehn to provide a potential model for calculating damages on a classwide basis. *Id.* ¶¶ 62-80. The Court addresses Apple's objections to each category of opinions in turn.

**1. Survey Opinions**

Apple makes two primary objections to Dr. Groehn's survey evidence. First, it argues that Dr. Groehn's survey questions are flawed because the questions were leading, unclear, untethered to issues relevant to this case, or inappropriately relied on a Likert scale (*i.e.*, asked respondents to rank importance on a scale from 1 to 7). Apple's Evidentiary Objs., ECF No. 129-9, at 6-10. Second, Apple argues that Dr. Groehn surveyed the wrong population because he did not target his population to putative class members and many of his survey's respondents were aware of this litigation. *Id.* at 10-12.

Under Ninth Circuit precedent, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *see also Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156

United States District Court
Northern District of California

(9th Cir. 1982) ("Technical unreliability goes to the weight accorded a survey, not its admissibility."). That is because "[u]nlike novel scientific theories, a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997). Apple's objections go precisely to methodological and technical questions, and courts have rejected analogous objections. *See, e.g.*, *id.* at 1143 (rejecting arguments about inappropriate survey population and leading questions); *Skinner v. Tuscan, Inc.*, No. CV-18-00319-TUC-RCC, 2020 WL 5946897, at *5 (D. Ariz. Oct. 7, 2020) (arguments about ambiguous terms in questions go to weight).

Accordingly, the Court overrules Apple's objections to Dr. Groehn's survey.

**2. Damages Model**

Apple takes issue with a litany of supposed defects in Dr. Groehn's damages model, mostly related to how the model would compensate consumers who were not injured or who had different degrees of injury, and it also argues that the model is not tied to Plaintiffs' price premium theory of damages. Apple's Evidentiary Objs. at 12-19. But the more fundamental problem is that Dr. Groehn's model does not reliably calculate that which it purports to measure. *See* Opp'n to Mot. ("Opp'n"), ECF No. 129, at 25 n.25. Specifically, Dr. Groehn purports to measure the "implicit price" of a gigabyte of storage space. Groehn Rep. ¶¶ 71-75 & tbl.4. To do so, he calculates the difference in price between a 16 GB Apple device and a device of the same model but with a higher storage capacity. *Id.* ¶ 72. Dr. Groehn assumes that the devices are identical in all respects except for storage capacity, and on that assumption, he then determines the implicit price per gigabyte by dividing the difference in price by the difference in storage capacity. *Id.* ¶¶ 71-72. According to Dr. Groehn, he can calculate the amount of damages by multiplying this implicit price by the amount of storage capacity taken up by iOS 8. *See id.* ¶¶ 73-74.

Two flaws are obvious on the face of that methodology. First, Dr. Groehn's approach implicitly assumes that the price of storage space increases linearly. In other words, it assumes that each additional gigabyte of storage is worth the same amount as every previous gigabyte of

storage. That is plainly inaccurate. For example, with respect to the iPad 2 (Wifi only), the price of a 16 GB version is $499 while the 32 GB version is $599, so the value of an additional 16 GB of storage is $100. *Id.* tbl.4. If Dr. Groehn is correct to assume that each additional gigabyte is worth the same amount, then 32 additional gigabytes of storage would be worth $200. Yet, the difference in price between the 32 GB version and 64 GB version of the iPad 2 (Wifi only) is still only $100. *Id.* In practice, the failure of this assumption of linearity means that Dr. Groehn's method produces different implicit prices for the same model of Apple device depending on the storage capacities being compared. Continuing with the iPad 2 (Wifi only) example, the implicit price is $6.25 per gigabyte when comparing 16 GB to 32 GB, $3.13 per gigabyte when comparing 32 GB to 64 GB, and $4.17 per gigabyte when comparing 16 GB to 64 GB. *See id.* Neither Plaintiffs nor Dr. Groehn offer any justification for these variances.

Second, there are other unexplained discrepancies that arise from this approach, such as how the implicit price for an iPad mini 3 (Wifi only) is $2.08 per gigabyte, but the implicit price for an iPad mini 3 (Wifi + Cellular) is $6.25 per gigabyte. *Id.* Again, neither Plaintiffs nor Dr. Groehn have offered a satisfactory explanation for why there is such a stark difference between the implicit prices for two models that appear to differ only by presence of cellular service.

For these reasons, the Court sustains Apple's objections to Dr. Groehn's damages model.

**B. Larry Londre**

Plaintiffs also submit the report of Larry Londre in support of their motion for class certification. Londre Rep., ECF No. 123-11. Mr. Londre is a marketing consultant whose opinions are being offered to argue that Apple's representations regarding its 16 GB devices were likely to mislead a reasonable consumer about the amount of storage capacity available for her use. *Id.* at 1, 16-20. Apple objects to Mr. Londre's expert report on the grounds that his opinions are irrelevant and speculative, and that his methodology is unreliable. Apple's Evidentiary Objs. at 19-25.

The Court finds that, under the abbreviated *Daubert* analysis conducted at the class certification stage, Mr. Londre's report is admissible. His opinions regarding the marketing

techniques employed by Apple, and the messages that those techniques were meant to convey to consumers, are relevant to the materiality of Apple's representations. *See Cohen v. Trump*, No. 3:13-cv-2519-GPC-WVG, 2016 WL 4543481, at *8-9 (S.D. Cal. Aug. 29, 2016) (opinions analyzing a marketing scheme were relevant to materiality). Further, the fact that Mr. Londre did not conduct independent surveys or market research to determine how consumers would interpret Apple's representations does not render his opinions inadmissibly speculative—his opinions describing how Apple emphasized certain information while deemphasizing other information are more than conjecture and can assist the Court in determining whether common issues surrounding materiality predominate. And finally, Mr. Londre's methodology of reviewing relevant literature and Apple documents in light of his experience in marketing is sufficiently reliable to pass muster at this point. *See In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2022 WL 1814440, at *4 (N.D. Cal. June 2, 2022) (finding that "experience, review of relevant literature, and review of the record" constituted a sufficient methodology to qualify marketing experts under *Daubert*). Apple's arguments that Mr. Londre should or should not have considered different documents, Apple's Evidentiary Objs. at 24-25, go to weight, not admissibility. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to . . . faults in [an expert's] use of [a particular] methodology . . . go to the weight, not the admissibility, of his testimony." (second alteration in original) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995))). However, to the extent Mr. Londre attempts to opine on technical details surrounding the use of storage space on Apple's devices, such as with his opinion that "[t]he shortfall in available storage capacity is not the result of formatting," Londre Rep. at 18, the Court finds that he is not qualified as an expert on those topics and excludes those opinions.

To conclude, the Court overrules Apple's objections as to Mr. Londre's marketing opinions but sustains them as to Mr. Londre's opinions about the use of storage space on Apple's devices. The Court will not consider the latter opinions.

United States District Court
Northern District of California

**C. Dr. Justin McCrary**

Apple offers Dr. Justin McCrary as a damages expert to challenge Dr. Groehn's damages model and Plaintiffs' theory of damages. McCrary Rep., ECF No. 129-7. Plaintiffs object on the grounds that Dr. McCrary's opinions are irrelevant to their theory of damages, include discussion of survey data outside Dr. McCrary's scope of expertise, and are not based on sufficient facts or data. Plaintiffs' Evidentiary Objs., ECF No. 146, at 4-12. The Court finds that none of Plaintiffs' objections justify excluding Dr. McCrary's report.

Although Plaintiffs may disagree with Dr. McCrary's criticisms of their theory of damages, that does not make Dr. McCrary's opinions irrelevant. Apple is entitled to argue that Plaintiffs' theory is legally invalid and may rely on expert opinions to do so. Whether Apple is correct is a matter to be resolved on the merits of Plaintiffs' motion for class certification, not in an evidentiary objection seeking to exclude evidence completely. The Court also finds that experts in Dr. McCrary's field would reasonably rely on survey evidence, so there is no issue with Dr. McCrary's discussion of surveys conducted in this case. *See PersonalWeb Techs. LLC v. IBM Corp.*, No. 16-cv-01266-EJD, 2017 WL 8186294, at *3 (N.D. Cal. July 25, 2017) (non-survey experts may rely on survey evidence if other experts in the field would do so). Finally, the Court finds that Dr. McCrary has relied on sufficient facts and data, and Plaintiffs' contentions to the contrary go to weight, not admissibility.

The Court therefore overrules Plaintiffs' objections to Dr. McCrary's report.

**D. Sarah Butler**

Apple also offers the report of Sarah Butler, its survey expert, to challenge Dr. Groehn's survey opinions and to provide its own survey evidence. Am. Butler Rep., ECF No. 151-3. Plaintiffs object that Ms. Butler made a calculation error in her original report, that her survey results were inconsistent, that her survey questions were not tailored to the issues in this case, and that she failed to define certain terms used in her survey. Plaintiffs' Evidentiary Objs. at 12-21. Their argument regarding Ms. Butler's calculation error is not grounds for excluding her report. *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, No. C 02-03378 EDL, 2007 WL 607792,

at *6 (N.D. Cal. Feb. 23, 2007) (calculation errors are not necessarily the type of fundamental methodological error requiring exclusion under *Daubert*). Ms. Butler corrected her report as the federal rules require. Fed. R. Civ. P. 26(e)(2). Further, the correction was minor and did not change the gravamen of Ms. Butler's opinions. *See* Redlined Butler Rep., ECF No. 151-4 ¶ 79. The Court does not consider this a basis for excluding Ms. Butler's report. Plaintiffs' remaining critiques fall under the umbrella of methodological and technical challenges that go to weight, not admissibility. *See Wendt*, 125 F.3d at 814.

Therefore, the Court overrules Plaintiffs' objections to Ms. Butler's report.

* * *

The Court's rulings on these objections are without prejudice to the parties' ability to re-raise their objections at a later stage in litigation, and the Court expresses no opinion on the admissibility of any expert report under a full *Daubert* analysis in later proceedings.

## III. MOTION TO STRIKE

Apple moves to strike the reply declaration of Dr. Groehn (ECF No. 142-62) as new evidence presented for the first time with Plaintiffs' reply. Mot. to Strike, ECF No. 149. Plaintiffs respond that the reply declaration was necessary to address Ms. Butler's miscalculations, that rebuttal expert reports are permissible, and that Apple could respond when it opposed Plaintiffs' evidentiary objections. Resp. to Mot. to Strike, ECF No. 150. None of Plaintiffs' arguments support departure from the rule that new evidence submitted with a reply should not be considered. *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993). Ms. Butler's errors were minor and did not change the core of her opinions. Redlined Butler Rep. ¶ 79. In any case, the reply declaration cannot be justified as only a response to Ms. Butler's calculation errors because it addresses other topics and seeks to defend Dr. Groehn's report as well. Moreover, the ability of parties to provide rebuttal expert reports *in discovery* has no bearing on whether evidence can be introduced for the first time on reply *in motion briefing*, and Apple's ability to respond to Plaintiffs' evidentiary objections does not afford it an opportunity to make a fulsome response to the reply declaration. As such, the Court GRANTS Apple's motion to strike and will

United States District Court
Northern District of California

not consider Dr. Groehn's reply declaration.

## IV. REQUEST FOR JUDICIAL NOTICE

Apple seeks judicial notice of several publications about the size of iOS 8 as well as particular facts that Apple believes to be readily ascertainable. Req. for Judicial Notice ("RJN"), ECF No. 134. Plaintiffs largely do not oppose the request, except to challenge the notice of Exhibits JJ and UU of the Declaration of Matthew D. Powers ("Powers Decl."), ECF No. 129-2. *See* Opp'n to RJN, ECF No. 147.

Courts may take judicial notice of publications for the purpose of determining "what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (citation omitted). Although Plaintiffs contest the facts contained in Exhibit JJ (an article regarding iOS 8), Apple offers the news articles identified in its request for judicial notice solely to show the information that was in the public realm. RJN at 2-3. Therefore, the Court GRANTS Apple's request as to the publications it offers. The Court will take notice that the publications presented certain information publicly, but it will not take notice of the truth of any facts within those publications.

The remainder of Apple's request seeks judicial notice of particular facts. Courts may take notice of facts only if they are generally known or capable of accurate and ready determination from sources that cannot reasonably be questioned. Fed R. Evid. 201(b). Plaintiffs do not dispute Apple's proffered facts about the release dates of iOS versions and Apple devices, the presence of certain disclosures on Apple's website and product packaging, or the presence in Apple's online user guide of directions for checking storage availability. *See* RJN at 3-4. The Court therefore GRANTS Apple's request as to those facts. Plaintiffs do contest, however, the facts that Apple proffers from Exhibit UU: that "(i) an operating system is the software that manages many computing devices in order to make them functional for users; (ii) operating systems usually come pre-loaded on computing devices at time of purchase; and (iii) operating systems have been sold on computing devices since the mid-1980s." RJN at 4. The Court does not find these facts to be controversial and therefore GRANTS Apple's request as to these facts as well.

**V. MOTION FOR CLASS CERTIFICATION**

A plaintiff seeking class certification has the burden of satisfying the requirements of Federal Rule of Civil Procedure 23. *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021). First, she must show that the requirements of Rule 23(a) are met. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Namely, she must show "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Once the plaintiff has done so, she must then establish that at least one of three grounds under Rule 23(b) applies. *Olean*, 31 F.4th at 663. In this case, Plaintiffs have moved to certify classes under Rule 23(b)(3), which requires them to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court must conduct a rigorous analysis of Rule 23 in considering Plaintiffs' motion for class certification. *Olean*, 31 F.4th at 664. In that analysis, the Court may consider the merits of Plaintiffs' claims "to the extent they overlap with the Rule 23 requirements." *MacBook Keyboard*, 2021 WL 1250378, at *8 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011)). Only if Plaintiffs have demonstrated that each of Rule 23's prerequisites have been met by a preponderance of the evidence may the Court certify their proposed classes. *Olean*, 31 F.4th at 664-65.

**A. Class Definition**

Although Apple does not contend that Plaintiffs' class definitions are flawed, the Court finds them ambiguous in two respects. First, the Class Period appears open-ended. This creates a lack of clarity as to how early the classes extend. Second, the definition of the Upgrade Subclass does not make clear whether a consumer must upgrade to iOS 8 within the Class Period. As the

definition reads now, only the purchase of the 16 GB Apple device must fall within the Class Period. In any future motion for class certification, Plaintiffs should correct those issues.

**B. Rule 23(a)**

**1. Numerosity**

Numerosity is typically satisfied if the proposed class consists of forty or more members. *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 543 (N.D. Cal. 2021) (citation omitted). Apple does not contest that class members are sufficiently numerous, and evidence shows that the forty-member threshold has been met. Decl. of Robert Shelquist., ECF No. 124-1, Exs. 34-35. The Court therefore concludes that Plaintiffs have met the numerosity requirement.

**2. Commonality**

To satisfy commonality, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions are those that are "capable of classwide resolution" and generate "common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The requirement has "been construed permissively." *Ellis*, 657 F.3d at 981 (citation omitted). Plaintiffs need not show that *all* questions are common because "a single common question will do." *Wal-Mart*, 564 U.S. at 359 (cleaned up). Here, for example, there are common factual questions about how much storage space iOS 8 took up on Apple's devices and about what representations Apple made regarding the size of iOS 8. Apple argues that issues surrounding the materiality of its representations and injuries experienced by class members are individualized, but those arguments are better addressed to predominance under Rule 23(b)(3), which the Court turns to below. Plaintiffs have demonstrated that at least one common question exists, so they have met their burden to show commonality.

**3. Typicality and Adequacy**

Plaintiffs offer Mr. Orshan and Mr. Neocleous as class representatives for the Upgrade Subclass and offer Mr. Endara as the class representative for the Preinstall Subclass.[3]

[3] It is not clear from Plaintiffs' moving papers which subclass each named plaintiff is intended to serve as class representative for. If Plaintiffs file a subsequent motion for class certification, they should make clear which named plaintiff represents which proposed class.

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." The question posed by this requirement is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). A class representative's claims "need not be substantially identical" to those of absent class members; typicality requires only that "they are reasonably coextensive." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). But if "there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it," a court should not certify a class. *Hanon*, 976 F.2d at 508 (citation omitted).

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." This criterion is satisfied if (1) the named plaintiffs and their counsel do not have conflicts of interest with the rest of the class and (2) will vigorously prosecute the action on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

**a. Paul Orshan**

Apple argues that Mr. Orshan is not typical because he was aware from past ownership of Apple devices that Apple's operating systems occupied storage space, he upgraded one of his 16 GB devices to iOS 8 after filing suit in this action, and he purchased a 64 GB device with iOS 8 preinstalled after filing suit in this action. Opp'n at 27; Powers Decl., Ex. D ("Orshan Tr.") at 53:6-14, 56:23-57:14, 87:16-88:3, 104:4-10, 119:14-120:20, 126:9-127:14. None of these potential defenses defeats typicality.

Apple's first argument is that Mr. Orshan previously owned Apple devices and may have seen certain screens containing information about the size of predecessors to iOS 8. Opp'n at 27. But this does no more than demonstrate Mr. Orshan may have known iOS 8 took up *some* space. The Ninth Circuit, though, has previously held in this case that a key question is whether a

consumer knew *how much* space iOS 8 occupied. Ninth Circuit Mem., ECF No. 66, at 3. There is no indication that Mr. Orshan was aware of the latter before he upgraded the Apple device at issue here, so questions about the extent of Mr. Orshan's knowledge regarding iOS 8's size do not render him atypical. Nor do Apple's remaining arguments. Mr. Orshan's purchase of a 64 GB device, if anything, reinforces his claims because it supports an inference that, after realizing iOS 8 occupied more storage space than he originally believed, Mr. Orshan decided to purchase a device with a greater storage capacity so he would not run out of space. And Mr. Orshan's explanation for why he might have upgraded one of his 16 GB devices after filing suit—that he was concerned about security on his device, Orshan Tr. at 97:1-11—while not fully refuting Apple's argument, mitigates the issue enough such that the Court is not worried Mr. Orshan will be unable to represent the class. *See In re Tobacco II Cases,* 46 Cal. 4th 298, 328 (2009) ("[T]he plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct."). The Court is not concerned that "absent class members will suffer [because] their representative is preoccupied with defenses unique to it," *Hanon*, 976 F.2d at 508, so it finds Mr. Orshan to be typical.

Apple also contends that Mr. Orshan is inadequate due to credibility concerns. Courts have found that such concerns can render a proposed class representative inadequate, but only if "there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Mendez v. R+L Carriers, Inc.*, No. C 11-2478 CW, 2012 WL 5868973, at *14 (N.D. Cal. Nov. 19, 2012) (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)). This is a high bar, and courts disqualify class representatives on credibility grounds only in "rare circumstances." *Id.* Apple's arguments about Mr. Orshan's credibility amount to criticisms of errors and imprecisions in the complaint, and alleged discrepancies between his deposition testimony and declaration. As to the latter, mere "inconsistency between [Mr. Orshan's] deposition testimony and statements in a declaration is not sufficient" to render him inadequate. *Cruz v. Dollar Tree Stores, Inc.*, Nos. 07-2050 SC, 07-4012 SC, 2009 WL 1458032, at *7 (N.D. Cal. May 26, 2009).

As to the former, even though the errors may show that Mr. Orshan could have been more diligent in preparing his complaint, it appears that any misconceptions were corrected, and there is no indication that Mr. Orshan attempted to conceal those errors during discovery. These circumstances do not meet the high bar for finding Mr. Orshan inadequate on credibility grounds, so the Court concludes that Mr. Orshan is adequate.

**b. Steven Neocleous**

Apple argues that Mr. Neocleous is not typical because he never upgraded his 16 GB device to iOS 8 and is therefore not part of any proposed class. Opp'n at 27; *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class." (citation omitted)). According to Apple's records, Mr. Neocleous's iPhone was upgraded directly from a version of iOS 7 to a version of iOS 10 on September 29, 2021, fully bypassing iOS 8. Decl. of Tim O'Neil, ECF No. 129-3 ¶ 34. Plaintiffs have not produced any evidence in rebuttal, so the Court finds that they have failed to demonstrate typicality as to Mr. Neocleous.

Further, Apple argues that Mr. Neocleous is not adequate because he failed to preserve evidence. Opp'n at 12. On August 27, 2021, Apple served interrogatories to Mr. Neocleous, seeking information about the amount of storage used on the iPhone at issue in his case. Powers Decl., Ex. R, at 1, 4. Mr. Neocleous responded on October 4, 2021 that he had "not thus far been able to access the information." *Id.* at 4, 10. During an October 25, 2021 meet-and-confer call, Plaintiffs' counsel informed Apple's counsel that Mr. Neocleous was unable to access the information because his iPhone was "Activation Locked," which meant that Mr. Neocleous needed to enter his password to access the device. Powers Decl. ¶ 19. It was not until several months later, on March 11, 2022, that Plaintiffs' counsel apprised Apple that the Activation Lock had been removed. *Id.* ¶ 20. Along with that communication, Plaintiffs' counsel included an image of Mr. Neocleous's iPhone screen indicating that the phone had been reset and wiped. *Id.* ¶ 20 & Ex. S; Decl. of Rainer Tenhunen, ECF No. 129-6 ¶¶ 7-9.

The Court has significant concerns about this sequence of events. Mr. Neocleous was under an obligation to preserve evidence "[a]s soon as a potential claim [was] identified," let alone

once the opposing party directly asked for certain evidence in discovery. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (first alteration in original) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). Yet he failed to do so when he wiped his phone. To be clear, the Court does not find that Mr. Neocleous or his counsel acted in bad faith or that spoliation sanctions are appropriate, and nothing in this Order should be taken as an expression of the Court's view on those topics. The issue of potential spoliation has not been fully briefed, and it may be that these events stemmed from an honest mistake. The Court's only concern at this stage is whether Mr. Neocleous is an adequate representative, and on these facts, the Court concludes that he is not. Other courts in this district have found plaintiffs to be inadequate when potential spoliation, "even in the absence of bad faith, . . . risks becoming a focus in the litigation." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 358 (N.D. Cal. 2018) (citing *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012)). The Court finds that to be the case here.

**c. Christopher Endara**

Finally, Apple argues that Mr. Endara is inadequate because there are spoliation concerns surrounding his conduct as well, namely that he traded in the iPhone at issue in his case over a year after this action was filed. Opp'n at 12; Powers Decl., Ex. C ("Endara Tr.") at 146:12-19. In doing so, he failed to preserve evidence, and the Court finds that he is inadequate for the same reasons that Mr. Neocleous is inadequate.

* * *

In sum, the Court finds that only Mr. Orshan is typical and adequate.[4] Neither Mr. Neocleous nor Mr. Endara may serve as class representatives.

---

[4] The Court also briefly notes two reservations it has about proposed class counsel, though it makes no ruling about the adequacy of representation. First, with the withdrawal of one law firm from the group of lead counsel, ECF No. 169, Plaintiffs now propose five firms as class counsel. It is not clear to the Court that it serves the proposed classes' interest in efficient representation to appoint five firms in an action of this size. Second, Plaintiffs' counsel represented at hearing that Mr. Neocleous's iPhone was in the possession of one of the five proposed firms when it was wiped, and the Court has concerns about the participation of that firm as class counsel.

**C. Rule 23(b)(3)**

**1. Predominance**

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citation omitted). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). An individual question requires evidence that varies between class members. *Id.* A common question is one that is susceptible to classwide proof, or for which the same evidence can be used to make a prima facie showing as to each class member. *Id.*

Apple contends that individual questions predominate four issues: choice of law, materiality, injury, and damages. Opp'n at 16-26, 30-35.

**a. Choice of Law**

A court must undertake a choice-of-law analysis before making a predominance determination because there may be variations in applicable state law. *Stromberg*, 14 F.4th at 1067. If there are significant variations in state law, that may "overwhelm common issues and preclude predominance for a single nationwide class." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled on other grounds by Olean*, 31 F.4th 651. As Plaintiffs have brought state claims, the Court applies California choice-of-law rules. *See Stromberg*, 14 F.4th at 1067.

Plaintiffs focus their choice-of-law argument on the choice-of-law clause in Apple's iOS Software License Agreement for iOS 8 ("SLA"), https://www.apple.com/legal/sla/docs/iOS8.pdf. They argue paragraph 12 of the SLA provides that the license "will be governed by and construed in accordance with the laws of the State of California." In their view, all iOS users fall within the scope of this clause because they were required to accept the terms of the SLA before using their Apple device or upgrading to iOS 8. Mot. at 20-21. Apple replies that the scope of the choice-of-law clause is not so broad, and that Plaintiffs' claims fall outside the clause because they relate to

purchase and upgrade decisions, not the use of iOS 8. Opp'n at 29.

"The scope of the choice-of-law clause is a matter of contract interpretation, which is governed by the law of the jurisdiction chosen by the parties to govern their agreement." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *3 (N.D. Cal. Dec. 5, 2013) (citing *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010)). In California, *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459 (1992) supplies the analytical framework for determining scope. *See O'Connor*, 2013 WL 6354534, at *3 n.2. In *Nedlloyd*, the California Supreme Court held that "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized." 3 Cal. 4th at 470.

Here, the SLA contains language similar to that in *Nedlloyd*. *Compare* SLA ¶ 12 ("This License will be governed by and construed in accordance with the laws of the State of California."), *with Nedlloyd*, 3 Cal. 4th at 468-69 ("This agreement shall be governed by and construed in accordance with Hong Kong law."). As such, the question is whether Plaintiffs' claims arise from or are related to the SLA. That question is easily answered as to the Upgrade Subclass because the SLA explicitly provides, "The terms of this License will govern any iOS Software Updates provided by Apple . . . ." SLA ¶ 1(b). Claims regarding a consumer's decision to upgrade to iOS 8 thus fall under the SLA even if they are not contractual in nature. Because Apple does not argue the choice-of-law clause is unenforceable, California law applies to the Upgrade Subclass.

It is less clear that the Preinstall Subclass's claims fall within the scope of the choice-of-law clause. The SLA governs the *use* of iOS 8, but Plaintiffs do not allege any problem with the functionality of iOS 8. Rather, their grievance is over the storage space on Apple devices and the alleged misrepresentations about how much storage space is available, something underscored by the fact that they raise claims only as to 16 GB devices while excluding devices with greater storage capacity. This is similar to the situation in *In re Hyundai and Kia Fuel Economy Litigation*, where the Ninth Circuit declined to apply a choice-of-law clause because the plaintiffs'

United States District Court
Northern District of California

claims "ar[o]se from the automakers' advertising misrepresentations, not the sales contracts." 926 F.3d 539, 561 n.5 (9th Cir. 2019). So too here. Plaintiffs bring claims based on alleged misrepresentations, meaning that they do not arise from the SLA. And they have not demonstrated a connection between their claims and the SLA that is strong enough for the Court to otherwise conclude the choice-of-law clause applies. Their argument that the SLA applies because consumers were required to accept the license terms before using their Apple devices is unavailing. Plaintiffs offer no authority supporting the proposition that the manner of acceptance sets the scope of a contract, and were the Court to accept the argument that the SLA governs all use of Apple devices, then any claim regarding those devices, even hardware claims, would seem to fall under the SLA's choice-of-law provision. That plainly is not the case.

Accordingly, the Court finds that California law applies to the Upgrade Subclass, so choice-of-law issues do not defeat predominance. The choice-of-law provision does not apply to the Preinstall Subclass. Because Plaintiffs have not conducted any other choice-of-law analysis, they have failed to meet their burden on predominance as to that subclass.

**b. Materiality**

Plaintiffs argue that common questions predominate their UCL, FAL, and CLRA claims because "reliance can be inferred when [a misrepresentation] is material and materiality is determined using a reasonable consumer standard." Mot. at 26 (internal quotation marks omitted) (quoting *Arris*, 327 F.R.D. at 365). Apple acknowledges the reasonable consumer standard for these claims, but it asserts that materiality becomes an individualized inquiry when a defendant presents evidence demonstrating that consumers would not behave differently if alleged misrepresentations were corrected. Opp'n at 16-18. It argues that such evidence exists here. *Id.*

**i. UCL and FAL**

The Court begins with Plaintiffs' UCL and FAL claims. Neither of those claims requires a plaintiff to prove "materiality" as Apple describes it; that is, neither claim requires a plaintiff to show that class members would have acted differently absent the alleged misrepresentations. Instead, under the UCL and FAL, "it is necessary *only* to show that members of the public are

likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th at 312 (cleaned up and emphasis added); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (same); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (same), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). To determine whether the public is likely to be deceived, Courts apply a "reasonable consumer" standard. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009). In the class action context, "restitution is available to absent class members without individualized proof of deception, reliance, or injury." *Mazza*, 666 F.3d at 595 (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320).

Thus, Apple's argument about how individual consumers would behave in reaction to the alleged misrepresentations is not germane to the elements of a UCL or FAL claim and does not illustrate that individual questions predominate as to those claims. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (predominance analysis depends on the elements of the underlying cause of action). To the extent that Apple's arguments regarding materiality refer to the likelihood of deception, the Court finds that Plaintiffs have shown likelihood of deception is amenable to classwide proof. Dr. Groehn's survey provides evidence that the public understood Apple's representations about its 16 GB devices to mean that a purchaser would have 16 GB of storage for her personal use. Groehn Rep. ¶¶ 52-55. This is sufficient to satisfy predominance for the Preinstall Subclass.

The situation is different for the Upgrade Subclass. Even under the UCL and FAL, predominance might be defeated if class members lack "cohesion" due to being "exposed to quite disparate information from various representatives of the defendant." *Stearns*, 655 F.3d at 1020. Apple's argument that different class members viewed different upgrade screens when updating to a new version of iOS touches on this point. Opp'n at 22. When installing a new version of iOS wirelessly, users would be shown an upgrade screen indicating how much data would be downloaded as part of the upgrade as well as how much temporary space was necessary to complete the upgrade. Decl. of Eric Harmon ("Harmon Decl."), ECF No. 129-4 ¶¶ 9-10 & Ex. C. By contrast, it appears that those who upgraded through another method would not see such

United States District Court
Northern District of California

screens. As far as Apple argues that upgrade screens involving updates to versions of iOS predating iOS 8 defeat predominance, the Court rejects that argument. Upgrade screens for prior versions of iOS would not convey information about the size of iOS 8, and as the Ninth Circuit held earlier in this case, it is knowledge of the size of iOS 8 that matters, not the mere knowledge that operating systems take up some amount of space generally. Ninth Circuit Mem. at 3. But the upgrade screens for updates to iOS 8 are relevant because they provide information regarding the size of iOS 8. A significant proportion of upgrades to iOS 8 occurred wirelessly, Harmon Decl. ¶ 13, meaning that, as to members of the Upgrade Subclass, there are stark differences in the information received by those who upgraded wirelessly and those who did not. The Court finds that this lack of cohesion defeats predominance for the Upgrade Subclass.[5]

**ii. CLRA**

Unlike the UCL and FAL, the CLRA permits recovery only by a consumer who "suffers damage as a result of" an unlawful practice. *Vioxx*, 180 Cal. App. 4th at 129. Consequently, plaintiffs raising a CLRA claim must "show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Mass. Mutual Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1292 (2002). The requirement of causation, sometimes referred to as reliance, can be inferred from materiality. *Id.* at 1292-93.

Apple appears to have merged the materiality and reliance elements, so the Court interprets Apple's argument as an assertion that evidence exists to rebut the presumption of reliance. The Court agrees. Survey evidence from Ms. Butler shows that a sizeable proportion of consumers who were unaware of the amount of storage space taken up by iOS 8 would still have bought the same 16 GB device if told the size of iOS 8. Am. Butler Rep. tbls.13 & 14. As a result, determination of reliance would depend on individual questions. Dr. Groehn's survey asking respondents to choose between 16 GB and 12.6 GB Apple devices that were otherwise identical does not alter that conclusion. *See* Groehn Rep. ¶¶ 56-61. It is unsurprising for Dr. Groehn to find

---

[5] Further dividing the Upgrade Subclass based on method of upgrade may resolve the issue, but because Plaintiffs did not propose that approach in its moving papers, the Court does not further address that possibility in this Order.

that consumers would prefer more storage if there were no corresponding trade-offs or sacrifices, *see id.*, but that finding offers no insight into how the alleged misrepresentations affected consumer behavior, as an inquiry into reliance requires. If "the issue of reliance 'would vary from consumer to consumer[,]' the class should not be certified." *Stearns*, 655 F.3d at 1023 (quoting *Vioxx*, 180 Cal. App. 4th at 129). Accordingly, the Court finds that predominance has not been met as to the CLRA claims for either proposed subclass.

**c. Injury**

Apple claims that the proposed classes contain many consumers who were not injured for a variety of reasons, and that this creates individualized determinations as to whether any given class member was injured at all. Opp'n at 18-21.

First, Apple argues that those "who knew how much space iOS 8 would occupy, and upgraded/purchased anyway, got what they expected and cannot have been injured." *Id.* at 18. Courts have explicitly rejected this "benefit of the bargain" defense when the alleged misrepresentations are deemed material. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332-33 (2011)). An alleged misstatement is material, in turn, "if a reasonable consumer would attach importance to it." *Id.* Both Dr. Groehn and Ms. Butler have supplied survey evidence that consumers find storage space to be an important factor in their purchasing decisions, even if not the single most important factor. *See* Groehn Rep. ¶¶ 46-51; Am. Butler Rep. ¶ 79. This is enough to establish materiality at the class certification stage and show that Apple's first category of allegedly uninjured consumers does not raise individualized issues.

Second, Apple argues that those who would have purchased 16 GB devices even after being told about the size of iOS 8 were not injured. Opp'n at 18-19. This repeats Apple's reliance and materiality arguments, and as explained above, it defeats predominance only as to the CLRA claims.

Third, Apple argues that those who never ran out of storage space, or who purchased 16 GB devices for reasons unrelated to storage capacity, were uninjured. Opp'n at 19-20. This

argument is unavailing because Plaintiffs rely on a price premium theory based on the idea that consumers overpaid for features that were not available. Mot. at 28-30. From this perspective, consumers were harmed even if they fell into Apple's third category because they paid more than they would have absent the alleged misrepresentations. A simple example illustrates this point: A consumer chooses to buy a 1 TB external hard drive, perhaps because she likes the backup software that comes with the hard drive. In her use of the hard drive, she never uses more than 200 GB of space. Despite all this, she would have been harmed if, instead of a 1 TB hard drive, she received a 512 GB hard drive. Even though she never ran out of space and did not decide her purchase based on the advertised storage space, the 512 GB hard drive she received is worth less than the 1 TB hard drive she paid for and expected to receive.

In response, Apple suggests that the price premium theory of injury is invalid, Opp'n at 24, but courts have regularly accepted the theory. *See e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."); *Pulaski*, 802 F.3d at 989 ("[T]he focus [of the damages calculation] is on the value of the service at the time of purchase."); *Johnson v. Nissan N. Am.*, No. 3:17-cv-00517-WHO, 2022 WL 2869528, at *24 (N.D. Cal. July 21, 2022) (applying a price premium theory when analyzing the plaintiffs' damages model); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) ("Because *all* Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class."). Therefore, this third category of consumers does not generate individualized issues either.

Finally, Apple argues that consumers who could have returned their devices but did not, or who could have downgraded their devices from iOS 8 back to an older version of iOS but did not, were not injured. Opp'n at 19-20. Even assuming that were true, the argument does not defeat predominance. The time periods during which a consumer could do so were highly restricted—fourteen days from receipt of a device for returns, and from September 17, 2014 through

September 26, 2014 to revert to an earlier version of iOS. McCrary Rep. ¶¶ 35-36 & nn.51-52. Given the limited opportunity to return or revert, it is unlikely that there were significant numbers of unharmed consumers, and a class can be certified even if it potentially includes more than a de minimis number of uninjured class members. *Olean*, 31 F.4th at 669. None of the categories of purportedly uninjured consumers, including this last category, defeat predominance.

**d. Damages**

"[T]o meet the predominance requirement, the plaintiff must proffer a damages model showing that 'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Vizcarra*, 339 F.R.D. at 553 (quoting *Comcast*, 569 U.S. at 35). Because the Court excluded Dr. Groehn's damages model in response to Apple's evidentiary objections, Plaintiffs have failed to do so, and they therefore fail to establish predominance.[6]

**2. Superiority**

The superiority requirement calls for courts to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Apple does not contest this requirement. The Court finds that a class action is superior to other modes of adjudication because it would be efficient and because class members do not have sufficient incentive to pursue individual litigation. *See Vizcarra*, 339 F.R.D. at 556.

**D. Rule 23(c)(4)**

In the alternative, Plaintiffs seek certification of a liability-only class under Rule 23(c)(4). Mot. at 32-35. "Issue certification requires that common questions predominate over individual questions with respect to only the specific issue that is certified." *Stickles v. Atria Senior Living, Inc.*, No. C 20-09220 WHA, 2021 WL 6117702, at *7 (N.D. Cal. Dec. 27, 2021) (citing *Valentino*

[6] The Court also notes, but does not decide, that it is unclear whether a price premium calculation properly applies to the Upgrade Subclass because it is not apparent how consumers could have overpaid at the point of purchase when they bought devices without iOS 8 preinstalled.

*v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Because Plaintiffs have failed to establish predominance with respect to the questions of choice of law, materiality, and reliance, the Court declines to certify a liability-only class.

## VI. CONCLUSION

The Court DENIES Plaintiffs' motion for class certification WITHOUT PREJUDICE, and it GRANTS Apple's motion to strike the reply declaration of Dr. Groehn. The Court GRANTS Plaintiffs leave to amend for the sole purpose of substituting named plaintiffs.

The parties shall meet and confer regarding a schedule for this case, including deadlines for any future class certification briefing and a deadline for Plaintiffs to amend their complaint. By April 24, 2023, they shall file a stipulation or joint statement regarding their proposed schedule.

**IT IS SO ORDERED.**

Dated: March 31, 2023

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California